## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AVENUE STORES, LLC, *et al.*,[1] | Case No. 19-11842 (____) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS, PURSUANT TO SECTIONS 105(a), 363(b), 1107(a) AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (III) GRANTING RELATED RELIEF

Avenue Stores, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, these "Chapter 11 Cases") hereby move the Court (this "Motion") for entry of an interim order (the "Interim Order") and a final order (the "Final Order"), substantially in the forms annexed hereto as Exhibit A and Exhibit B respectively, pursuant to sections 105(a), 363, 503(b)(9), 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing, but not directing, the Debtors, in their sole discretion, to pay certain prepetition claims of critical vendors (collectively, the "Critical Vendor Claims") in accordance with the procedures proposed in this Motion, (b) authorizing banks and other financial institutions to honor and process related checks and transfers, and (c) granting related relief.  In support of this Motion, the Debtors rely on the *Declaration of David Rhoads in Support of Chapter 11 Petitions and Requests for First Day*

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Avenue Stores, LLC (0838); Ornatus URG Holdings, LLC (1146); Ornatus URG Real Estate, LLC (9565); and Ornatus URG Gift Cards, LLC (9203).  The Debtors' headquarters are located at 365 West Passaic Street, Suite 230, Rochelle Park, New Jersey 07662.

*Relief* (the "First Day Declaration"), which was filed contemporaneously with this Motion and is incorporated herein by reference.  In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over these Chapter 11 Cases and this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of these Chapter 11 Cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are sections 105(a), 363, 503(b)(9), 1107, and 1108 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

**A.      General Background**

3.      On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  To date, no trustee, examiner or statutory committee

has been appointed in these Chapter 11 Cases.  Additional factual background relating to the Debtors' business, capital structure and the commencement of these Chapter 11 Cases is set forth in detail in the First Day Declaration.

4.     Prior to the Petition Date, the Debtors commenced store closing sales (the "Store Closing Sales") at all of their retail locations, and intend to vacate applicable premises upon conclusion of the Store Closing Sales.  Simultaneously, the Debtors have initiated a bidding and sale process for, among other things, their e-commerce business, inventory stored in their Texas distribution center, and their intellectual property (the "Going Concern Sale Process").

**B.     The Critical Vendors**

5.     In the ordinary course of business, the Debtors engage a limited number of providers (collectively, the "Critical Vendors") for certain services that the Debtors depend upon to provide the level of service and product that the Debtors' customers have come to expect. Any interruption in the supply of these services—however brief—risks materially disrupting the Debtors' operations and could cause irreparable harm to their business, goodwill, and customer base, and may hinder the Debtors' ability to realize maximum proceeds from the Store Closing Sales and Going Concern Sale Process.

6.     The Critical Vendors provide critical services including marketing, sales reconciliation, customer relationship management, and technology infrastructure services that are vital to the Debtors' day-to-day operations.  In many instances, the Critical Vendors provide unique services or are the only vendors able to produce the volume or quality of certain materials or products sufficient to meet the Debtors' operational needs.  Without these Critical Vendors, the Debtors may experience material interruptions in their business operations, and the Debtors would have a difficult time procuring replacement vendors at in the outset of the Store Closing

01:24743055.2

Sales and the Going Concern Sale Process.  Even assuming that the Debtors could replace the Critical Vendors, the time and expense required to do so would have a detrimental impact on the Debtors' business and brand, thereby adversely impacting the Debtors' ability to maximize value from the Going Concern Sale Process.

**C.     The Debtors' Process for Identifying Critical Vendors**

7.     To identify Critical Vendors, the Debtors reviewed their accounts payable and prepetition vendor lists to identify those creditors most essential to the Debtors' operations pursuant to the following criteria: (i) whether certain quality specifications or customer expectations prevent the Debtors from obtaining a vendor's products or services from alternative sources within a reasonable timeframe; (ii) whether, if a vendor is not a single-source supplier, the Debtors have sufficient product in inventory to continue their operations while a replacement vendor is put in place; and (iii) whether a vendor meeting the foregoing criteria is able or likely to refuse to provide services to the Debtors postpetition if its prepetition balances are not paid.

8.     As the Debtors conduct the Store Closing Sales and the Going Concern Sale Process unfolds, the Debtors intend to, among other things, dispose of and consolidate inventory in a manner that maximizes value while minimizing the accrual of administrative expenses, all while continuing to market the Debtors' assets for sale.  Each of these initiatives will require the continued cooperation of, and assistance from, the Debtors' Critical Vendors.

<u>**RELIEF REQUESTED**</u>

9.     The Debtors seek entry of the Interim Order and the Final Order authorizing the Debtors to pay, in their discretion, the Critical Vendor Claims in an amount up to $500,000 (the "<u>Critical Vendor Claims Cap</u>").  Specifically, the Debtors seek authority to pay, in their

discretion, up to $250,000 under the Interim Order and, upon entry of the Final Order, up to $500,000 in the aggregate to Critical Vendors.

10.     The Debtors propose to send a letter to the Critical Vendors, along with a copy of the Interim or Final Order, as applicable, setting forth the following information and proposing the following terms as a basis for the parties' post-petition trade relationship (the "Trade Agreement"):

a.      The amount of such Critical Vendor's estimated prepetition claim (after accounting for any setoffs, other credits, and discounts thereto), which shall be mutually determined in good faith by the Critical Vendor and the Debtors. Such amount shall be used only for purposes of the Interim or Final Order and shall not be deemed a claim allowed by the Court. Further, the rights of all parties in interest to object to a claim of a Critical Vendor shall be fully preserved until further order of the Court;

b.      The Critical Vendor's agreement to be bound by the Customary Trade Terms (as defined in the Interim Order) (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability, and other applicable terms and programs) favorable to the Debtors and in effect between such Critical Vendor and the Debtors on a historical basis within one (1) year of the Petition Date, or such other trade terms as mutually agreed to by the Debtors and such Critical Vendor;

c.      The Critical Vendor's agreement to provide services to the Debtors based upon Customary Trade Terms, and the Debtors' agreement to pay the Critical Vendor in accordance with such terms;

d.      The Critical Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates, or any of their respective assets or property (real or personal) any lien (a "Lien") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Critical Vendor by the Debtors arising from services provided to the Debtors prior to the Petition Date. To the extent the Critical Vendor has previously obtained such a Lien, the Critical Vendor shall immediately take all necessary actions to release such Lien;

e.      The Critical Vendor's acknowledgment that it has reviewed the terms and provisions of the Interim Order or, if entered, the Final Order, and consents to be bound thereby;

f.      The Critical Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims;

01:24743055.2

g.    The Critical Vendor's agreement that nothing in the Trade Agreement grants an allowed claim with respect to any unpaid amounts, and that the Critical Vendor retains responsibility to file a timely proof of claim with respect to any amounts that are alleged to remain unpaid; and

h.    The Critical Vendor's acknowledgement that, if it subsequently refuses to supply services to the Debtors on Customary Trade Terms, the Debtors reserve all rights to recover sums paid in excess of post-petition obligations in the event a Trade Agreement is terminated.

Once agreed to and accepted by a Critical Vendor, the Trade Agreement shall govern the parties' post-petition trade relationship.

11.    The Debtors hereby seek authority to enter into Trade Agreements with the Critical Vendors to the extent that the Debtors determine, in their discretion, that such agreements are necessary to their postpetition operations.  In the event that the Debtors do not or are unable to enter into a Trade Agreement with any Critical Vendor, however, the Debtors nevertheless seek authority to pay such Critical Vendor's claim if the Debtors determine, in their sole discretion, that such payment is necessary to prevent irreparable harm to the Debtors' business operations.

12.    Finally, the Debtors seek relief authorizing banks and other financial institutions to receive, process, honor, and pay checks or electronic transfers used by the Debtors to pay the foregoing and to rely on the representations of such Debtors as to which checks are issued and authorized to be paid in accordance with any relief granted in connection with this Motion.

## BASIS FOR RELIEF REQUESTED

## I.    PAYMENT OF THE CRITICAL VENDOR CLAIMS IS WARRANTED PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE

13.    The Court may authorize payment of the Critical Vendor Claims pursuant to section 363 of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides that a debtor may "after notice and a hearing, use, sell, or lease, other than in the ordinary course of

business, property of the estate." 11 U.S.C. § 363(b)(1).  A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of that debtor.  *See Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Co. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court determining an application pursuant to section 363(b) must find from the evidence a good business reason to grant such application); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (standard for determining a section 363(b) motion is whether the debtor has a "good business reason" for the requested relief); *In re James A. Phillips, Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (authorizing a contractor to pay prepetition claims of some suppliers who were potential lien claimants pursuant to section 363 because the payments were necessary for the general contractors to release funds owed to the debtors).  "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

14.    Numerous courts have also used their equitable powers, arising under section 105(a) of the Bankruptcy Code, applying the necessity of payment doctrine to authorize payment of a debtor's prepetition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of chapter 11 reorganization.  *See, e.g.*, *In re Lehigh Co. & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus").  The "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a

debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor," which is consistent with the paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). *See also In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized'").

15.    The Debtors respectfully submit that similar relief is warranted in these Chapter 11 Cases.  As the foregoing authority provides, where the ability to promptly pay prepetition claims of Critical Vendors is necessary to prevent disruption to the Debtors' business operations, courts are fully empowered to authorize such payments.  Further, the satisfaction of the prepetition claims of the Critical Vendors will enable the Debtors to preserve the value of their estates and safeguard the confidence and goodwill of their service providers.  Without the requested relief, which is based on a rational exercise of the Debtors' business judgment, the Debtors' efforts to maximize the value of these estates will be jeopardized.  The relief requested in this Motion contemplates the payment of Critical Vendor Claims of those Critical Vendors who agree to provide postpetition services to the Debtors on Customary Trade Terms or other terms acceptable to the Debtors, and is therefore consistent with, and appropriate under, section 363 of the Bankruptcy Code.

16.    As detailed above, unanticipated delays in the Debtors' ability to meet their customers' needs would result in substantial and irreparable harm to the Debtors and would impair the Debtors' efforts to preserve and maximize the value of their estates during these Chapter 11 Cases.  It is, therefore, critical that the Debtors receive services without interruption so as to allow the Store Closing Sales and the Going Concern Sale Process to run their course

and generate maximum value for the estates.  Similarly, the timely receipt of services is critical to the maintenance and preservation of the Debtors' business infrastructure, which will preserve value for the Debtors' go forward business.

17.     In addition, and as also detailed above, the Debtors have conducted an extensive analysis and review of the Debtors' immediate trade needs and supplier base and have concluded that there is a significant risk that the Critical Vendors will cease doing business with the Debtors unless their Critical Vendor Claims are paid.  Should any Critical Vendor stop supplying services to the Debtors, their businesses would be adversely affected as a result for the reasons outlined herein.  The Debtors and their advisors closely analyzed the Debtors' needs during the projected sale timelines, and determined the Critical Vendors Claim Cap with those needs in mind.  As such, the Debtors submit that the amount of the Critical Vendor Claims Cap pales in comparison to the likely damage to the Debtors' businesses and estates should the relief requested herein not be granted.  In light of the foregoing, the Debtors submit that payment of the Critical Vendor Claims is in the best interests of their estates and creditors.

18.     Additionally, the Debtors' calculation of the Critical Vendor Claims Cap is also reasonable.  To determine the amount of the Critical Vendor Claims Cap, the Debtors considered, among other things, which service providers: (a) are absolutely needed to continue to operate without disruption; (b) would be prohibitively expensive or difficult to replace under the circumstances; and (c) would present an unacceptable risk to the Debtors' business should they threaten to discontinue providing services postpetition.  Once the Debtors gathered this information, they estimated the amounts that would be required to pay each Critical Vendor to ensure the continued supply of services.  The Critical Vendor Claims Cap comprises this estimated amount.

19.     The critical services provided by the Critical Vendors are vital to the Debtors' continuing business operations and their ability to maximize estate assets.  If the relief sought in this Motion is not granted, Critical Vendors may attempt to assert their considerable leverage and deny the Debtors essential services going forward.   Accordingly, in the Debtors' business judgment, the payment of the Critical Vendor Claims as set forth herein is necessary to prevent the immediate and irreparable harm that would arise from a disruption to the Debtors' business operations.

## II.   THE COURT MAY ALSO AUTHORIZE PAYMENT OF THE CRITICAL VENDOR CLAIMS AS A VALID EXERCISE OF THE DEBTORS' FIDUCIARY DUTIES

20.     The Debtors, operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ*, 273 BR. 487, 497 (Banks. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including operating business's going-concern value." *Id.*

21.     It has been noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only by the preplan satisfaction of a prepetition claim."  The *CoServ* court specifically noted that pre-plan of reorganization satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate" and also when the payment was to "sole suppliers of a given product." *Id.* at 497-98. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

22.     Payment of the Critical Vendor Claims meets the test set forth in *CoServ*.  As described above, the Debtors have narrowly tailored the Critical Vendor Claims Cap to encompass only those Critical Vendors which are essential to the Debtors' business and operations.  The harm that would stem from the failure to pay of any of the Critical Vendors is disproportionate to the amount of the prepetition claims that the Debtors are seeking to pay hereunder.  Moreover, with respect to each Critical Vendor, the Debtors have examined other options short of payment of such Critical Vendor Claims and have determined that to avoid significant disruption of the Debtors' business operations, there exists no practical or legal alternative to payment of the Critical Vendor Claims.  Therefore, the Debtors believe that their fiduciary duties are exercised by payment of the Critical Vendor Claims.

## III.     THE COURT SHOULD AUTHORIZE APPLICABLE BANKS TO HONOR CHECKS AND ELECTRONIC FUND TRANSFERS IN ACCORDANCE WITH THE MOTION

23.     In connection with the foregoing, the Debtors respectfully request that the Court (a) authorize all applicable banks and other financial institutions (collectively, the "Banks") to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with any relief granted in connection with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such banks and

other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

## IMMEDIATE RELIEF IS NECESSARY

24.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtors submit that for the reasons set forth above and in the First Day Declaration, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## WAIVER OF STAY OF ANY STAY

25.     To implement the foregoing, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

26.     Nothing contained herein is intended to be or should be construed as an admission of the validity of any claim against the Debtors; a waiver of the Debtors' rights to dispute any claim; or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their rights to contest any invoice or claim in accordance with applicable law and to assume or reject any agreements with such

01:24743055.2

parties in accordance with the applicable provisions of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made in connection therewith is not intended to be and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

27.     Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to PNC Bank, National Association; (iii) counsel to the Pre-Petition Subordinated Lender; (iv) holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (v) the Banks; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

01:24743055.2

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of the Interim Order and the Final

Order, substantially in the forms attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, (i) granting the

relief requested herein, and (ii) granting such other relief as is just and proper.


Dated:    August 16, 2019              YOUNG CONAWAY STARGATT & TAYLOR, LLP
          Wilmington, Delaware

                                       */s/ Ashley E. Jacobs*
                                       Robert S. Brady (No. 2847)
                                       Andrew L. Magaziner (No. 5426)
                                       Ashley E. Jacobs (No. 5635)
                                       Allison S. Mielke (No. 5934)
                                       Betsy L. Feldman (No. 6410)
                                       Rodney Square
                                       1000 North King Street
                                       Wilmington, Delaware 19801
                                       Tel:    (302) 571-6600
                                       Fax:    (302) 571-1253
                                       Email: rbrady@ycst.com
                                               amagaziner@ycst.com
                                               ajacobs@ycst.com
                                               amielke@ycst.com
                                               bfeldman@ycst.com

                                       *Proposed Counsel to the Debtors and Debtors in
                                       Possession*

## **EXHIBIT A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AVENUE STORES, LLC, *et al.*,[1] | Case No. 19-11842 (____) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. ___** |

## INTERIM ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 1107(a) AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (III) GRANTING RELATED RELIEF

Upon the *Debtors' Motion for Interim and Final Orders, Pursuant to Sections 105(a), 363(b), 1107(a) and 1108 of the Bankruptcy Code, (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors; (II) Authorizing Banks to Honor and Process Check and Electronic Transfer Requests Related Thereto; and (III) Granting Related Relief* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and upon consideration of the First Day Declaration; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and this Court having found that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that notice of the Motion has been given as set forth in the Motion and that such

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Avenue Stores, LLC (0838); Ornatus URG Holdings, LLC (1146); Ornatus URG Real Estate, LLC (9565); and Ornatus URG Gift Cards, LLC (9203).  The Debtors' headquarters are located at 365 West Passaic Street, Suite 230, Rochelle Park, New Jersey 07662.

[2]    All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

notice is adequate and no other or further notice need be given; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having found that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      Objections to entry of an order granting the Motion on a final basis must be filed by _____, 2019 at 4:00 p.m. (ET) and served on: (i) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Robert S. Brady, Esq. (rbrady@ycst.com) and Andrew L. Magaziner, Esq. (amagaziner@ycst.com); (ii) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn: Linda Casey, Esq. (linda.casey@usdoj.gov);   and (iii) counsel to any statutory committee appointed in these Chapter 11 Cases.   A final hearing, if required, on the Motion will be held on _____, 2019 at _____.m. (ET).  If no objections are filed to the Motion, this Court may enter a final order without further notice or hearing.

3.      The Debtors are authorized, but not directed, in the exercise of their reasonable business judgment, to pay Critical Vendor Claims in an amount not to exceed $250,000 during the interim period from the date of this Interim Order until the date that a final order is entered in this matter, unless otherwise ordered by this Court.

4.      The Debtors are authorized, but not directed, to pay the Critical Vendor Claims in the ordinary course of business when due, not on an accelerated basis; *provided*, *however*, that any Critical Vendor that accepts payment pursuant to the authority granted in this Interim Order must agree to supply services to the Debtors post-petition on Customary Trade Terms (as defined below) or on such other favorable terms as are acceptable to the Debtors.

5.      Any Critical Vendor that accepts payment pursuant to the authority granted in this Interim Order shall be deemed to agree to the terms and provisions of this Interim Order

6.      The Debtors shall condition the payment of Critical Vendor Claims on the agreement of a Critical Vendor to continue supplying services to the Debtors on terms that are as or more favorable to the Debtors as the most favorable trade terms, practices, and programs in effect between the Critical Vendor and the Debtors in the one (1) year period preceding the Petition Date (the "Customary Trade Terms"), or such other trade terms as are agreed to by the Debtors and the Critical Vendor.

7.      The Debtors may, in their sole discretion, declare a Trade Agreement with an individual Critical Vendor terminated, together with the other benefits to the Critical Vendor as contained in this Interim Order, on the date the Debtors deliver notice to the Critical Vendor that the Critical Vendor (a) has not complied with the terms and provisions of the Trade Agreement or (b) has failed to continue to provide Customary Trade Terms to the Debtors.

8.      If a Trade Agreement is terminated as set forth above or a Critical Vendor who has received payment of a prepetition claim later refuses to continue to supply services to the Debtors on Customary Trade Terms during the pendency of these Chapter 11 Cases, the Debtors may declare (a) that the payment of such Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash

from such Critical Vendor (including by setoff against postpetition obligations), or (b) that the Critical Vendor shall immediately return the payment of its Critical Vendor Claim without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets or any type whatsoever, it being the explicit intention of this Court to return the parties to their position immediately prior to entry of this Interim Order with respect to all prepetition claims.

9.      The execution of a Trade Agreement by the Debtors shall not constitute a waiver of any other cause of action, including any avoidance action that may be held by the Debtors.

10.      Nothing herein shall prejudice the Debtors' rights to request additional authority to pay Critical Vendor Claims.

11.      Each Bank is authorized, but not directed, to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Interim Order and any other order of this Court.  Each Bank is authorized, but not directed, to rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Interim Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Interim Order.

12.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with any Critical Vendor Claims that are dishonored or rejected.

13.      Nothing in the Motion or this Interim Order, or the Debtors' payment of any claims pursuant to this Interim Order, shall be deemed or construed as:  (a) an admission as to the validity of any claim or Lien against the Debtors or their estates; (b) a waiver of the Debtors'

right to dispute any claim or Lien; (c) an approval or assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (d) an admission of the priority status of any claim, whether under section 503(b)(9) of the Bankruptcy Code or otherwise; or (e) a modification of the Debtors' rights to seek relief under any section of the Bankruptcy Code on account of any amounts owed or paid to any Critical Vendor.

14.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief granted in this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors' estates.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

17.     This Court shall retain jurisdiction over all matters arising from or related to the interpretation, implementation and enforcement of this Interim Order.

Dated: _____, 2019
          Wilmington, Delaware


                                                        _____
                                                        UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

## **Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AVENUE STORES, LLC, *et al.*,[1] | Case No. 19-11842 (____) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. ___** |

### FINAL ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 1107(a) AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (III) GRANTING RELATED RELIEF

Upon the *Debtors' Motion for Interim and Final Orders, Pursuant to Sections 105(a), 363(b), 1107(a) and 1108 of the Bankruptcy Code, (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors; (II) Authorizing Banks to Honor and Process Check and Electronic Transfer Requests Related Thereto and (III) Granting Related Relief* (the "<u>Motion</u>")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"); and upon consideration of the First Day Declaration; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and this Court having found that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that notice of the Motion has been given as set forth in the Motion and that such

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Avenue Stores, LLC (0838); Ornatus URG Holdings, LLC (1146); Ornatus URG Real Estate, LLC (9565); and Ornatus URG Gift Cards, LLC (9203). The Debtors' headquarters are located at 365 West Passaic Street, Suite 230, Rochelle Park, New Jersey 07662.

[2]   All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

notice is adequate and no other or further notice need be given; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and this Court having previously entered that certain *Interim Order, Pursuant to Sections 105(a), 363(b), 1107(a) and 1108 of the Bankruptcy Code, (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors; (II) Authorizing Banks to Honor and Process Check and Electronic Transfer Requests Related Thereto; and (III) Granting Related Relief* [D.I. ___]; and this Court having found that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having found that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, in the exercise of their reasonable business judgment, to pay Critical Vendor Claims in an amount not to exceed $500,000 in the aggregate (including amounts paid pursuant to the Interim Order), respectively, unless otherwise ordered by this Court.

3.      The Debtors are authorized, but not directed, to pay the Critical Vendor Claims in the ordinary course of business when due, not on an accelerated basis; *provided*, *however*, that any Critical Vendor that accepts payment pursuant to the authority granted in this Final Order must agree to supply services to the Debtors post-petition on Customary Trade Terms (as defined below) or on such other favorable terms as are acceptable to the Debtors.

4.      Any Critical Vendor that accepts payment pursuant to the authority granted in this Final Order shall be deemed to agree to the terms and provisions of this Final Order.

5.    The Debtors shall condition the payment of Critical Vendor Claims on the agreement of a Critical Vendor to continue supplying services to the Debtors on terms that are as or more favorable to the Debtors as the most favorable trade terms, practices, and programs in effect between the Critical Vendor and the Debtors in the one (1) year period preceding the Petition Date (the "Customary Trade Terms"), or such other trade terms as are agreed to by the Debtors and the Critical Vendor.

6.    The Debtors may, in their sole discretion, declare a Trade Agreement with an individual Critical Vendor terminated, together with the other benefits to the Critical Vendor as contained in this Final Order, on the date the Debtors deliver notice to the Critical Vendor that the Critical Vendor (a) has not complied with the terms and provisions of the Trade Agreement or (b) has failed to continue to provide Customary Trade Terms to the Debtors.

7.    If a Trade Agreement is terminated as set forth above or a Critical Vendor who has received payment of a prepetition claim later refuses to continue to supply services to the Debtors on Customary Trade Terms during the pendency of these Chapter 11 Cases, the Debtors may declare (a) that the payment of such Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash from such Critical Vendor (including by setoff against postpetition obligations), or (b) that the Critical Vendor shall immediately return the payment of its Critical Vendor Claim without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets or any type whatsoever , it being the explicit intention of this Court to return the parties to their position immediately prior to entry of this Final Order with respect to all prepetition claims.

8.    The execution of a Trade Agreement by the Debtors shall not constitute a waiver of any other cause of action, including any avoidance action that may be held by the Debtors.

9.      Nothing herein shall prejudice the Debtors' rights to request additional authority to pay Critical Vendor Claims.

10.     Each Bank is authorized, but not directed, to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Final Order and any other order of this Court.  Each Bank is authorized, but not directed, to rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Final Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Final Order.

11.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with any Critical Vendor Claims that are dishonored or rejected.

12.     Nothing in the Motion or this Final Order, or the Debtors' payment of any claims pursuant to this Interim Order, shall be deemed or construed as:  (a) an admission as to the validity of any claim or Lien against the Debtors or their estates; (b) a waiver of the Debtors' right to dispute any claim or Lien; (c) an approval or assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (d) an admission of the priority status of any claim, whether under section 503(b)(9) of the Bankruptcy Code or otherwise; or (e) a modification of the Debtors' rights to seek relief under any section of the Bankruptcy Code on account of any amounts owed or paid to any Critical Vendor.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

01:24743055.2

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

15.     This Court shall retain jurisdiction over all matters arising from or related to the interpretation, implementation and enforcement of this Final Order.

Dated: _____, 2019
        Wilmington, Delaware


                                        _____

                                        UNITED STATES BANKRUPTCY JUDGE

01:24743055.2