# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AVENUE STORES, LLC, *et al.*,[1] | Case No. 19-11842 (LSS) |
| Debtors. | (Jointly Administered) |
| | Docket Ref. No. 13 |

**ORDER (I) AUTHORIZING THE DEBTORS, ON AN INTERIM BASIS, TO (A) OBTAIN POST-PETITION FINANCING, (B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS TO POST-PETITION LENDERS AND (C) UTILIZE CASH COLLATERAL, (II) PROVIDING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) GRANTING RELATED RELIEF, PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363, 364 AND 507, AND (V) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-2**

Upon the motion ("**Motion**") of Avenue Stores, LLC ("**Avenue Stores**") and Ornatus URG Gift Cards, LLC ("**Ornatus Gift Cards**" with Avenue Stores collectively referred to as "**Borrower**"), Orantus URG Holdings, LLC ("**Ornatus Holdings**"), and Ornatus URG Real Estate, LLC ("**Ornatus RE**" collectively, with Borrowers and Ornatus Holdings, the "**Debtors**" and each, a "**Debtor**") in the above-captioned Chapter 11 cases (collectively, "**Cases**"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507(b) of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* ("**Bankruptcy Code**") and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") and Rule 2002-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure ("**Local Rules**") of the United States Bankruptcy Court for the District of Delaware (this "**Court**") seeking entry of an interim order (this "**Interim Order**") and a final order (the "**Final Order**")

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Avenue Stores, LLC (0838); Ornatus URG Holdings, LLC (1146); Ornatus URG Real Estate, LLC (9565); and Ornatus URG Gift Cards, LLC (9203).  The Debtors' headquarters are located at 365 West Passaic Street, Suite 230, Rochelle Park, New Jersey 07662.

granting the following relief to be provided on an interim basis until the date that a Final Order has been entered (such interim period being the "**Interim Period**"):

1.      authorization and approval for the Debtors to obtain up to $12,000,000 in post-petition financing (the "**DIP Facility**") pursuant to and in accordance with the terms and conditions of a certain Debtor-In-Possession Credit Agreement (as it may be amended, modified, supplemented, extended, restated or replaced from time to time, the "**DIP Credit Agreement**"), substantially as filed with the Court, by and among the Debtors, as borrowers, PNC Bank, National Association, in its capacity as administrative agent and collateral agent, (in such capacity, "**DIP Agent**") and the financial institutions from time to time party thereto, as lenders, (collectively, including any financial institution that may issue letters of credit on behalf of any Debtor, "**DIP Lenders**" and together with the DIP Agent, the "**DIP Secured Parties**"), which may, inter alia, be used for the following purposes:

a)      for general operating and working capital purposes in accordance with the DIP Financing Documents and as limited by the Approved Budget (as defined below);

b)      for making adequate protection payments and other payments as provided in this Interim Order;

c)      for making payment of transaction expenses as well as fees, costs and other expenses as provided in this Interim Order; and

d)      upon entry of the Final Order, in the DIP Agent's sole discretion, making payment in full of all outstanding amounts owing under the Pre-Petition ABL Credit Agreement (as defined below) (the "**Final Roll-Up**").

2.      approval of and authorization and direction for Debtors to (a) enter into, execute and perform under (i) the DIP Credit Agreement and (ii) all security agreements, pledge

agreements, notes, guarantees, mortgages, deeds of trust, control agreements, Uniform Commercial Code financing statements, certificates, reports and other agreements, documents and instruments either or both executed and/or delivered with or to the DIP Agent and/or the DIP Lenders in connection with or related thereto (collectively, as amended, modified, supplemented, extended, restated or replaced from time to time, the "**DIP Financing Documents**") and (b) take and perform all other acts and steps as may be required or contemplated by or in connection with the DIP Financing Documents and this Interim Order;

3.      granting to the DIP Agent, for itself and on behalf of the DIP Lenders, first priority, priming, valid, perfected and enforceable Liens (as defined in section 101 (37) of the Bankruptcy Code) in and upon all of the DIP Collateral (as defined below), subject only to the Carve-Out (as defined below) and any Senior Liens (as defined below), to secure all existing and future obligations and liabilities of every kind or nature (including without limitation bank products, reimbursement obligations in respect of letters of credit, and indemnity obligations) under or in connection with the DIP Financing Documents, whether due or to become due, absolute or contingent, (collectively, the "**Post-Petition Obligations**") as provided by and more fully defined in, the DIP Financing Documents;

4.      granting to the DIP Agent and the DIP Lenders allowed superpriority administrative expense claim status for the Post-Petition Obligations, subject only to the Carve-Out, in accordance with the terms of this Interim Order;

5.      authorizing the Debtors' use in accordance with the terms of the DIP Financing Documents and as limited by the Approved Budget of "cash collateral" ("**Cash Collateral**") as such term is defined in section 363 of the Bankruptcy Code and shall include, without limitation, all cash and cash equivalents of the Debtors, whenever or wherever acquired, and the proceeds of

all collateral pledged to the Pre-Petition ABL Agent (as defined below) and to the DIP Agent, as well as the Pre-Petition Subordinated Lender, all in accordance with the terms set forth herein;

6.    granting adequate protection, including without limitation Adequate Protection Liens, First Lien Adequate Protection Claims, and First Lien Adequate Protection Payments (each as defined below) to (a) PNC Bank, National Association, in its capacity as administrative agent and collateral agent, (in such capacities, the "**Pre-Petition ABL Agent**") under that certain Revolving Credit and Security Agreement dated as of April 12, 2019 (as amended, modified, supplemented, or extended from time to time, the "**Pre-Petition ABL Credit Agreement**") by and among the Debtors, the Pre-Petition ABL Agent and the financial institutions party thereto from time to time (collectively, the "**Pre-Petition ABL Lenders**", and together with the Pre-Petition ABL Agent, sometimes collectively referred to as the "**Pre-Petition ABL Secured Parties**") and all security agreements, pledge agreements, notes, mortgages, guarantees, control agreements, collateral access agreements, subordination agreements, and related agreements and documents (collectively, with the Pre-Petition ABL Credit Agreement, as amended, modified, supplemented, extended, restated or replaced from time to time, the "**Pre-Petition ABL Financing Documents**"), (b) the Pre-Petition ABL Lenders, and (c) Ornatus URG Funding, LLC (the "**Pre-Petition Subordinated Lender**") under that certain Master Subordinated Note dated as of April 12, 2019 (as amended, modified, supplemented, or extended from time to time, the "**Pre-Petition Subordinated Note**") made by Ornatus Holdings, as Payor, Avenue Stores, Ornatus Gift Cards, and Ornatus URG Real Estate, LLC, as Obligors, and payable to Pre-Petition Subordinated Lender, as Payee, and acknowledged by the Pre-Petition ABL Agent, and all related agreements and documents, including, but not limited to the Liquidity Support Agreement dated as of April 12, 2019 by and among Avenue Stores, LLC, Ornatus Gift Cards,

Ornatus Holdings, and Pre-Petition Subordinated Lender (collectively, with the Pre-Petition Subordinated Note, as amended, modified, supplemented, extended, restated or replaced from time to time, the "**Pre-Petition Subordinated Financing Documents**"), all such adequate protection with the priority set forth in this Interim Order and otherwise in accordance with the terms set forth in this Interim Order, with respect to the use and aggregate diminution in the value of their respective interests in the Pre-Petition Collateral (as defined below), including the Cash Collateral;

7.    approving the application of collections and proceeds of all of the Pre-Petition Collateral (as defined below) and DIP Collateral (as defined below) and the payment of Pre-Petition Obligations (as defined below) and Post-Petition Obligations in the manner and on the terms set forth in this Interim Order (and, as applicable, by the Final Order);

8.    solely upon entry of the Final Order, the waiver by the Debtors of (a) any right to surcharge the DIP Collateral and the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code, (b) any rights under the "equities of the case" exception in section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral and the Prepetition Collateral;

9.    modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Bankruptcy Rules 4001(a)(3);

10.    waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Interim Order: and

11.    scheduling a final hearing on the Motion ("**Final Hearing**") for entry of a Final Order authorizing the post-petition financing and use of cash collateral contemplated hereby on a

final basis and granting such other relief as is requested in the Motion and approving the form of notice with respect to the Final Hearing.

Notice of the Motion, the relief requested therein, and the Interim Hearing (as defined below) ("**Notice**") having been served by the Debtors in accordance with Bankruptcy Rule 4001(c) on: (i) the United States Trustee for the District of Delaware ("**U.S. Trustee**"); (ii) the Internal Revenue Service and all taxing authorities of states in which the Debtors are doing business; (iii) counsel to the Pre-Petition ABL Agent and the DIP Agent; (iv) counsel to the Pre-Petition Subordinated Lender; (v) the holders of the twenty (20) largest unsecured claims against the Debtors' Estates; (vi) all parties known to the Debtors who hold any liens or security interests in the Debtors' assets, including those parties who have filed UCC-1 financing statements against the Debtors, or who, to the Debtors' knowledge, have asserted any liens on any of the Debtors' assets; (vii) all landlords and warehouseman of the Debtors; (viii) all guarantors of the Pre-Petition Obligations or Pre-Petition Subordinated Obligations; (ix) all creditors known to the Debtors to be holding a judgment against any of the Debtors; (x) any governmental bodies holding a claim against the Debtors; (xi) any other parties claiming an interest in the Pre-Petition Collateral; and (xii) all other parties entitled to receive notice pursuant to the Bankruptcy Rules and the Local Rules (collectively, the "**Noticed Parties**").

The initial hearing on the Motion having been held by this Court on August 20, 2019 ("**Interim Hearing**").

Based upon the record made by the Debtors at the Interim Hearing, including the Motion, the Declaration of David Rhoads filed contemporaneously with the Motion (the "**First Day Declaration**"), and the filings and pleadings in the Cases, with all objections, if any, to the entry of the Interim Order having been withdrawn, resolved or overruled, and after due deliberation

and consideration, and good and sufficient cause appearing therefor:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]

A.    Petition.  On August 16, 2019 ("**Petition Date**"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 cases and no official committee of unsecured creditors (a "**Committee**"), or any other statutory committee has been appointed in these Chapter 11 cases.

B.    Jurisdiction and Venue.  The Court has jurisdiction of these Cases, the Motion, this Interim Order and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Notice.  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 after notice was provided to the Notice Parties in accordance with Bankruptcy Rule 4001(b) and (c).

D.    Debtors' Acknowledgments and Agreements.  Without prejudice to the rights of certain non-Debtor parties specifically set forth in Section IX below, the Debtors admit, stipulate, acknowledge, and agree that:

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Any statements of the Court from the bench at the Interim Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Interim Order to the extent not inconsistent herewith.

(1)    <u>Pre-Petition ABL Financing Documents</u>.  Prior to the commencement of the Cases, the Pre-Petition ABL Secured Parties made loans, advances and provided other financial accommodations pursuant to the Pre-Petition ABL Financing Documents to the Borrower. Ornatus RE ("**Pre-Petition ABL Guarantor**") guaranteed the Pre-Petition Obligations (as defined below) of the Borrower under the Pre-Petition ABL Credit Agreement as provided in Article XVII of the Pre-Petition ABL Credit Agreement. The Pre-Petition Obligations (as defined below) shall be deemed to have been automatically accelerated on the Petition Date as a result of the commencement of the Cases in accordance with the terms of the Pre-Petition ABL Financing Documents and all commitments of the Pre-Petition ABL Secured Parties have been terminated.

(2)    <u>Pre-Petition Obligations</u>.

a)    As of the Petition Date, the aggregate amount of all Obligations (as defined in the Pre-Petition ABL Credit Agreement) owing by Pre-Petition Borrower to the Pre-Petition ABL Secured Parties under and in connection with the Pre-Petition ABL Financing Documents was not less than (a) $15,262,763.08, consisting of Revolving Advances outstanding under (and as defined in) the Pre-Petition ABL Credit Agreement, plus interest accrued and accruing thereon at the rate in effect on the Petition Date, plus (b) outstanding letters of credit in the aggregate amount of $1,006,246.23, plus (c) accrued and accruing fees, plus (d) all accrued and accruing costs and expenses (including attorneys' fees and legal expenses), plus (e) all accrued and accruing charges and obligations in respect of Cash Management Products and Services (as defined in the Pre-Petition ABL Credit Agreement), plus (f) any other charges and liabilities accrued, accruing or chargeable, whether due or to become due, matured or contingent, under the Pre-Petition ABL Credit Agreement (collectively, "**Pre-Petition Obligations**";

together with the Post-Petition Obligations, the "**ABL Obligations**"). Without limiting the foregoing, the Pre-Petition Obligations shall include all indemnification obligations of Borrower and Guarantors to the Pre-Petition ABL Secured Parties arising under the Pre-Petition ABL Financing Documents, including without limitation the indemnitee and other protections provided to indemnitees under the obligations arising under the Pre-Petition ABL Credit Agreement which survive payment in full of the Pre-Petition Obligations.

b)      The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable, and non-avoidable obligations of Pre-Petition Borrower and Pre-Petition ABL Guarantor, and are not subject to any offset, deduction, defense, counterclaim, avoidance, recovery, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors do not possess and shall not assert any claim, counterclaim, setoff, deduction, or defense of any kind, nature or description which would in any way impair, reduce, or affect the validity, enforceability, and nonavoidability of any of the Pre-Petition Obligations.

(3)      Pre-Petition Collateral (for Pre-Petition Obligations).

a)      As of the Petition Date, the Pre-Petition Obligations were secured pursuant to the Pre-Petition ABL Financing Documents by valid, binding, perfected, enforceable and non-avoidable first priority security interests and liens ("**Pre-Petition ABL Liens**") granted by Borrower to the Pre-Petition ABL Agent, for the benefit of itself and the Pre-Petition ABL Lenders, upon the Collateral (as defined in the Pre-Petition ABL Credit Agreement, hereafter "**Pre-Petition Collateral**"), subject only to any valid, perfected and unavoidable lien or security interest otherwise existing as of the Petition Date which are acknowledged to be senior in priority under the Pre-Petition Credit Agreement (collectively, "**Prior Permitted Liens**" and

each a "**Prior Permitted Lien**"). The Prior Permitted Liens together with (i) any valid, perfected, and unavoidable lien or security interest otherwise existing as of the Petition Date, which is senior in priority to the liens granted to the Pre-Petition ABL Secured Parties in the Pre-Petition Collateral, and (ii) any valid and unavoidable lien or security interest, which is senior in priority to the liens granted to the Pre-Petition ABL Secured Parties in the Pre-Petition Collateral that is validly perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b), shall be collectively referred to in this Interim Order as "**Senior Liens**".

b)      The Pre-Petition ABL Agent, on behalf of the Pre-Petition ABL Lenders, has a valid, binding and perfected nonavoidable and first priority security interest and lien in all of Borrower's Cash Collateral, including all amounts on deposit in all of Borrower's banking, checking or other deposit accounts with each of the Pre-Petition ABL Secured Parties, whether as original collateral or proceeds of other Pre-Petition Collateral, and all such Cash Collateral is part of the Pre-Petition Collateral.

c)      The Debtors do not possess and will not assert any claim, counterclaim, setoff, deduction, or defense of any kind, nature or description which would in any way impair, reduce, or affect the validity, enforceability and non-avoidability of any of the Pre-Petition ABL Secured Parties' liens, claims or security interests in the Pre-Petition Collateral, which liens and security interests are not subject to subordination or avoidance pursuant to the Bankruptcy Code or any other applicable law.

(4)      Pre-Petition Subordinated Financing Documents.      Prior to the commencement of the Cases, the Pre-Petition Subordinated Lender made certain loans (the "**Pre-Petition Subordinated Loan**") to Ornatus Holdings pursuant to the Pre-Petition Subordinated Financing Documents.  Avenue Stores, Ornatus Gift Cards, and Ornatus URG Real Estate, LLC

(collectively, "**Pre-Petition Subordinated Guarantors**") guaranteed the obligations of Ornatus Holdings under the Pre-Petition Subordinated Note as provided in the Pre-Petition Subordinated Note, which was executed by each of the Pre-Petition Subordinated Guarantors.

(5)    Pre-Petition Subordinated Obligations.

a)    As of the Petition Date, the aggregate amount of all Subordinated Obligations (as defined in the Pre-Petition Subordinated Note) owing by the Payor (as defined in the Pre-Petition Subordinated Note) to the Pre-Petition Subordinated Lender under and in connection with the Pre-Petition Subordinated Financing Documents was not less than (a) $38,903,531.80 in respect of the Pre-Petition Subordinated Note, plus interest accrued and accruing thereon at the rate in effect on the Petition Date, plus (b) accrued and accruing fees, plus (c) all accrued and accruing costs and expenses (including attorneys' fees and legal expenses), plus (d) any other charges and liabilities accrued, accruing or chargeable, whether due or to become due, matured or contingent, under the Pre-Petition Subordinated Note (collectively, "**Pre-Petition Subordinated Obligations**").

b)    The Pre-Petition Subordinated Obligations constitute allowed, legal, valid, binding, enforceable, and non-avoidable obligations of the Ornatus Holdings and Pre-Petition Subordinated Guarantors, and are not subject to any offset, deduction, defense, counterclaim, avoidance, recovery, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors do not possess and shall not assert any claim, counterclaim, setoff, deduction, or defense of any kind, nature or description which would in any way impair, reduce, or affect the validity, enforceability, and nonavoidability of any of the Pre-Petition Subordinated Obligations.

(6)    Pre-Petition Collateral (for Pre-Petition Subordinated Obligations).

a)      As of the Petition Date, the Pre-Petition Subordinated Obligations were secured pursuant to the Pre-Petition Subordinated Financing Documents by valid, binding, perfected, enforceable and non-avoidable second priority security interests and liens granted by the Debtors to the Pre-Petition Subordinated Lender upon the Collateral (as defined in the Pre-Petition Subordinated Note and hereafter, the "**Subordinated Collateral**"), subject and junior in priority only to (i) the liens of the Pre-Petition ABL Secured Parties and (ii) the Senior Liens.

b)      The Pre-Petition Subordinated Lender has a valid, binding and perfected nonavoidable and second priority security interest and lien in all of each Debtor's Cash Collateral, including all amounts on deposit in all of each Debtor's banking, checking or other deposit accounts subject and junior in priority only to the liens therein held by the Pre-Petition ABL Secured Parties.

c)      The Debtors do not possess and will not assert any claim, counterclaim, setoff, deduction, or defense of any kind, nature or description which would in any way impair, reduce, or affect the validity, enforceability and non-avoidability of any of the Pre-Petition Subordinated Lender's liens, claims or security interests in the Collateral (as defined in the Pre-Petition Subordinated Note), which liens and security interests are not subject to subordination (other than as set forth in the Pre-Petition Subordinated Note and herein to the Pre-Petition ABL Secured Parties) or avoidance pursuant to the Bankruptcy Code or any other applicable law.

(7)      For the purposes hereof, the Pre-Petition ABL Secured Parties and Pre-Petition Subordinated Lender are sometimes collectively referred to herein as the "**Pre-Petition Secured Parties**."

E.      <u>Adequate Protection</u>.

(1)      <u>Adequate Protection Obligations</u>. The Debtors acknowledge and agree that the Pre-Petition ABL Secured Parties and the Pre-Petition Subordinated Lender are each entitled to and being provided with adequate protection resulting from (1) the provisions of this Interim Order granting either or both first priority and priming liens on the Pre-Petition Collateral to the DIP Agent, for the benefit of the DIP Lenders, with respect to the DIP Facility, (2) use of the Cash Collateral, (3) use, sale, lease, decrease, or depreciation or other diminution in value of the Pre-Petition Collateral and the Subordinated Collateral, (4) the subordination to the Carve-Out, and (5) the imposition of the automatic stay under Bankruptcy Code section 362(a) or otherwise pursuant to Bankruptcy Code sections 361(a), 363(c), 364(c), and 364(d)(1); and

(2)      The amount of the aggregate diminution in value in the Pre-Petition ABL Secured Parties' and the Pre-Petition Subordinated Lender's respective interests in the Pre-Petition Collateral and the Subordinated Collateral resulting from (1) the provisions of this Interim Order granting first priority and priming liens on the Pre-Petition Collateral to the DIP Agent, for the benefit of the DIP Lenders, (2) use of Cash Collateral, (3) use, sale, lease, decrease or depreciation or other diminution in value of the Pre-Petition Collateral, and (4) the imposition of the automatic stay under Bankruptcy Code section 362(a) or otherwise pursuant to Bankruptcy Code sections 361(a), 363(c), 364(c), and 364(d)(1) is collectively referred to in this Interim Order as "**Adequate Protection Obligations**". In exchange for such adequate protection, the Pre-Petition ABL Secured Parties and the Pre-Petition Subordinated Lender have each agreed to the Debtors' use of Cash Collateral on the terms set forth in this Interim Order and to the imposition of the Carve-Out as set forth herein.

(3)      <u>Necessity for Adequate Protection</u>. The adequate protection and other treatment agreed to be provided by the Debtors pursuant to Section IV below of this Interim

Order are authorized by the Bankruptcy Code, will minimize disputes and litigation over use of the Cash Collateral, is consistent with the Debtors' need for a DIP Facility and will facilitate the Debtors' ability to continue their business operations.

F.    <u>Prior Liens</u>.  Nothing herein contained is intended to (1) subordinate, invalidate, negate, avoid, or prejudice the holders of Senior Liens, (2) find or rule that any Senior Liens (or any other liens, excepting only (x) the liens of the Pre-Petition ABL Agent in the Pre-Petition Collateral and (y) the liens of the Pre-Petition Subordinated Lender in the Collateral (as defined in the Pre-Petition Subordinated Note), subject only to Section IX below in the case of the liens identified in clauses (x) and (y)) are valid, binding, perfected, enforceable, non-avoidable or senior, or (3) prejudice the right of any party-in-interest, including without limitation the Debtors, any Committee, the Pre-Petition ABL Agent, the Pre-Petition Subordinated Lender or DIP Agent, from challenging the validity, enforceability, perfection, extent or priority of any Senior Lien (or any other liens, excepting only the liens of the Pre-Petition ABL Agent in the Collateral (as defined in the Pre-Petition Subordinated Note) and the liens of the Pre-Petition Subordinated Lender in the Pre-Petition Collateral, subject only to Section IX below).

G.    <u>Findings Regarding the Post-Petition Financing</u>.

(1)    <u>Request for Post-Petition Financing</u>.  Borrower and Pre-Petition ABL Guarantor have requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend, certain loans, advances, and other financial accommodations, as more particularly described, and subject to the terms and conditions set forth, in this Interim Order and the DIP Financing Documents.

(2)    <u>Need for Post-Petition Financing</u>.  The Debtors do not have sufficient available sources of working capital to operate the Debtors' businesses in the ordinary course

without the DIP Facility and the ability to use Cash Collateral as described in this Interim Order. The Debtors' ability to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and to otherwise fund their operations is essential to the viability of the Cases.   The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed DIP Facility and the use of Cash Collateral on the terms set forth in the DIP Financing Documents and this Interim Order is vital to the preservation and maximization of the going concern value of one or more of the Debtors' currently operating businesses pending sale(s) of the Debtors' assets.   Accordingly, the Debtors have an immediate need to obtain funds from the DIP Facility and authorization to use Cash Collateral for the limited purposes set forth herein in order to, among other things, permit the orderly operation and winddown of their retail business, support a process for a going concern sale of their E-Commerce Business Assets, minimize disruption of their business operations, and manage and preserve the assets of the Debtors' bankruptcy estates (as defined under Bankruptcy Code section 541, the "**Estates**") in order to maximize the recoveries to creditors of the Estates.

(3)     No Credit Available on More Favorable Terms.  Consistent with the First Day Declaration, the Debtors are unable to procure financing in the form of unsecured credit allowable under Bankruptcy Code section 503(b)(1), as an administrative expense under Bankruptcy Code section 364(a) or (b), or in exchange for the grant of an administrative expense priority pursuant to Bankruptcy Code section 364(c)(1), without the grant of liens on all or substantially all of Borrower's and Guarantors' assets pursuant to Bankruptcy Code sections 364(c) and (d).  Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Agent and the DIP Lenders pursuant to the DIP Financing Documents and this Interim Order.

(4)    <u>Budget</u>. Based upon the record presented to the Court by the Debtors, (a) Debtors have prepared and delivered the Budget (as defined in the DIP Credit Agreement (a copy of such Budget being annexed hereto as **<u>Exhibit 1</u>** (the "**<u>Approved Budget</u>**")), (b) the Budget has been thoroughly reviewed by the Debtors and their management and (c) the Budget sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby.  The Debtors believe in good faith that the Budget is achievable and will allow the Debtors to operate in Chapter 11 without the accrual of unpaid administrative expenses during the term of the Budget.  The Pre-Petition Secured Parties and the DIP Secured Parties are relying upon the Debtors' compliance with the Budget in determining to consent to the use of Cash Collateral for the limited purposes expressly set forth herein and to enter into (or as the case may be, consent to) the DIP Facility provided for herein.

(5)    <u>Business Judgment and Good Faith Pursuant to Section 364(e) and Section 363 (m).</u>  Based on the record before this Court, including the Debtors' stipulations, (a) the Debtors and each of the Pre-Petition Secured Parties and the DIP Secured Parties have negotiated at arms' length and in good faith regarding the terms of the DIP Financing Documents, the DIP Facility, and the Debtors' use of Cash Collateral, respectively, all subject to the terms of this Interim Order and (b) the terms of the DIP Credit Agreement, the other DIP Financing Documents and the DIP Facility are fair and reasonable, reflect Borrower's and Guarantors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration. Any credit extended under the terms of this Interim Order shall be deemed to have been extended in "good faith" (as that term is used in Bankruptcy Code sections 364(e) and 363(m)) by the Pre-Petition Secured Parties and the DIP Lenders.

(6)    <u>No Objection</u>.  The Pre-Petition Secured Parties have no objection to the DIP Facility and the use of Cash Collateral on the terms and conditions set forth in this Interim Order.  Nothing in this Interim Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Pre-Petition Secured Parties are or will be adequately protected with respect to any non-consensual use of Cash Collateral.

(7)    <u>Good Cause</u>.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' efforts for the orderly operation and winddown of their retail business and support a process for a going concern sale of their E-Commerce Business Assets, (b) preserve and maximize the value of the Debtors' Estates, and (c) avoid immediate and irreparable harm to the Debtors, their respective businesses, employees, and assets.

(8)    <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(c)(2).  No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Interim Order, or any objections that were made (to the extent such objections have not been resolved or withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

## I.    <u>Authorization and Terms of Financing</u>.

A.    <u>Motion Granted</u>.  The Motion is granted in accordance with Bankruptcy Rule

4001(c)(2) under the terms and conditions provided in this Interim Order.

B.     <u>Authorization to Borrow</u>.  Borrower is hereby authorized to immediately borrow and obtain Revolving Advances (and, at the discretion of the DIP Agent and the DIP Lenders, Letters of Credit (which term shall include letters of credit issued under the Pre-Petition ABL Financing Documents and which letters of credit shall be deemed to have been issued under the DIP Financing Documents) and Borrower and Guarantors are hereby authorized to incur indebtedness and obligations owing to the DIP Agent and the DIP Lenders on the terms and subject to the conditions (including without limitation borrowing formulae, sublimits and availability restrictions) set forth in the DIP Financing Documents and this Interim Order up to the maximum amount of $12,000,000, subject, as applicable, to the Approved Budget (with any variances permitted thereto under the terms and conditions of the DIP Credit Agreement) and to entry of the Final Order.

C.     <u>Financing Documents</u>.

(1)     <u>Authorization</u>.  Borrower and Guarantors are hereby authorized to (a) enter into, execute, deliver, perform, and comply with all of the terms, conditions, and covenants of the DIP Financing Documents, including without limitation, the DIP Credit Agreement, and all security and pledge agreements, (b) execute and deliver all certificates, reports, statements and other agreements and documents required or contemplated by the DIP Financing Documents (including without limitation documents required for the Debtors' performance of their obligations under the DIP Financing Documents and creation and perfection of liens granted or contemplated therein, and (c) pay all obligations incurred under or described in (whether principal, interest, fees, costs, expenses, indemnities or otherwise) and perform all other undertakings and acts required or contemplated by the DIP Financing Documents.

(2)     <u>Approval of DIP Facility</u>.   The DIP Facility is approved subject to the terms and provisions of the DIP Financing Documents and this Interim Order.

(3)     <u>Amendment of DIP Financing Documents</u>.   The Debtors, the DIP Agent, and the DIP Lenders are hereby authorized to approve and implement, in accordance with the terms of the DIP Financing Documents, any modification of the DIP Financing Documents; <u>provided,</u> <u>however</u>, that any material modification or amendment to the DIP Financing Documents shall be subject to providing notice of such material modification or amendment to counsel to any Committee and the U.S. Trustee each of whom shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment unless the Committee and U.S. Trustee agree in writing to a shorter period, which modification shall be filed with the Court.  Unless the Committee or the U.S. Trustee timely objects to any material modification or amendment to the DIP Financing Documents, then such modification or amendment shall become effective upon the expiration of the aforementioned notice period. If a timely objection is interposed, the Court shall resolve such objection prior to such modification or amendment becoming effective.

(4)     <u>Budget Maintenance</u>.   The use of extensions of credit under the DIP Facility shall be in accordance with the Approved Budget, subject to the Permitted Variances (as defined in the DIP Credit Agreement) and as provided in Section 6.15 of the DIP Credit Agreement. The budget shall be updated by the Debtors no less frequently than every four (4) weeks in accordance with the terms and provisions of Section 9.6 of the DIP Credit Agreement A copy of any updated Approved Budget shall be filed with the Court within one (1) Business Day after it has been approved by the DIP Agent.

(5)     <u>Application of DIP Facility Proceeds</u>.   The advances under the DIP

Facility shall be used in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), solely as follows:

a)       to pay fees, costs, and expenses as provided in the DIP Financing Documents, including amounts incurred in connection with the preparation, negotiation, execution and delivery of the DIP Credit Agreement and the other DIP Financing Documents;

b)       for general operating and working capital purposes, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, and other lawful corporate purposes of the Debtors;

c)       for making other payments as provided in this Interim Order;

d)       upon entry of a Final Order, for payment, in whole or in part, at the discretion of the DIP Agent, of the Final Roll-Up (subject to Section IX below); and

e)       to fund the Carve-Out Reserve Account (as defined below).

(6)    <u>Conditions Precedent</u>.  The DIP Lenders shall have no obligation to make any loan or advance (or issue any letter of credit) under the DIP Credit Agreement unless the conditions precedent to make such loan or extension of credit under the DIP Credit Agreement have been satisfied in full or waived in accordance with the DIP Credit Agreement.

D.    <u>Payments and Application of Payments</u>.  The Debtors are authorized to make all payments and transfers of the Debtors' Estates property to the DIP Agent and the DIP Lenders as provided, permitted or required under the DIP Financing Documents and this Interim Order, which payments and transfers shall not be avoidable or recoverable from the DIP Lenders under

Bankruptcy Code section 547, 548, 550, 553, or any other section thereof, or be subject to any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law, or otherwise.  Without limiting the generality of the foregoing, Borrower and Guarantors are authorized and directed, without further order of this Court, to (i) pay all principal, interest, fees and indemnities, when due, under the DIP Financing Documents and (ii) pay or reimburse the DIP Agent and the DIP Lenders, in accordance with the DIP Financing Documents, for all present and future costs and expenses, including, without limitation, all reasonable and documented professional fees, consultant fees, and legal fees and expenses paid or incurred by the DIP Agent and the DIP Lenders in connection with the financing transactions as provided in the DIP Financing Documents and this Interim Order, regardless of whether such amounts are in the Budget, all of which shall be and are included as part of the principal amount of the Obligations (as defined in the DIP Credit Agreement) under the DIP Financing Documents and secured by the DIP Collateral (as defined below); provided that DIP Agent shall send a redacted summary invoice of such fees and expenses (subject in all respects to applicable privilege or work product doctrines) to Debtors, the U.S. Trustee and, if appointed, the Committee or its counsel and such invoices shall be promptly paid by Debtors if no objection has been raised within ten (10) days, and to the extent there is an objection, the Court may resolve the objection.

E.    <u>Interest and Fees</u>.    The rate(s) of interest to be charged for the Revolving Advances under the DIP Facility pursuant to the DIP Credit Agreement shall be the rates set forth in the DIP Credit Agreement and shall be calculated in the manner and payable at the times set forth in the DIP Credit Agreement.  The fees charged under the DIP Facility shall be those set forth in the DIP Credit Agreement and shall be unconditionally payable in the amounts and at the

times set forth in the DIP Credit Agreement, including without limitation the Closing Fee, which is absolutely and unconditionally earned upon execution of the DIP Credit Agreement, and shall be non-refundable.

F.       Interim Period Application of Collections.   During the Interim Period, all cash, collections, and proceeds of the Prepetition Collateral and DIP Collateral, including all proceeds realized in connection with any and all asset sales, shall be immediately paid to the DIP Agent for application in reduction of the Pre-Petition Obligations (subject to Section IX) and the Post-Petition Obligations in accordance with the terms of the DIP Financing Documents and this Interim Order, in such order and manner determined by the DIP Agent, including, without limitation, applying all payments, proceeds and other amounts either to the Pre-Petition Obligations (subject to Section IX) or to the Post-Petition Obligations in the DIP Agent's and Pre-Petition Agent's sole and absolute discretion.

G.       Continuation of Pre-petition Procedures.    All pre-petition practices and procedures for the payment and collection of proceeds of Pre-Petition Collateral and DIP Collateral, as applicable, the turnover of cash, the delivery of property to the Pre-Petition ABL Secured Parties, and the funding pursuant to the Pre-Petition ABL Credit Agreement, including use of any lockbox or blocked depository bank account arrangements, will be unchanged, remain in place and be identical under the DIP Financing Documents for the benefit of the DIP Agent and the DIP Lenders and are hereby approved and shall continue without interruption after the commencement of the Cases, provided that the practices and procedures are otherwise consistent with the terms of the Order approving the *Debtors Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Cash Management System; (II) Authorizing Use of Prepetition Bank Accounts and Certain Payment Methods; (III) Waiving the Requirements of 11 U.S.C.*

*§ 345(B)  on an Interim Basis; and (IV) Granting Related Relief.*

H.     Final Roll-Up.  Upon entry of the Final Order, and subject to the rights of parties set forth in Section IX below, at the option of DIP Agent, the Debtors may use the proceeds of the next advance (or deemed advance) under the DIP Credit Agreement to satisfy all Pre-Petition Obligations in full in accordance with the terms of the Prepetition Credit Agreement.  The Final Roll-Up will be without prejudice to the rights of any third party, including, without limitation, any Committee, to seek any appropriate remedy from the Court in the event of a successful Challenge (as defined below).

II.     **Collateralization and Superpriority Administrative Claim Status**.

A.     Collateralization.

(1)     DIP Lien Grant.  To secure the prompt payment and performance of any and all Post-Petition Obligations of Borrower and Guarantors to the DIP Agent and the DIP Lenders of whatever kind, nature, or description, absolute or contingent, now existing or hereafter arising, the DIP Agent, for the benefit of itself and the DIP Lenders, shall have and is hereby granted, effective nunc pro tunc as of the Petition Date, valid, binding, enforceable, continuing, non-avoidable and perfected first priority (subject only to any Senior Liens and the Carve-Out), security interests and liens in and upon (such security interests and liens collectively, "**DIP Liens**") all property and rights and interests in property of each of the Debtors of any kind or nature whatsoever in existence as of the Petition Date as well as thereafter created or acquired, and wherever located, including without limitation, (a) all Pre-Petition Collateral, (b) all accounts and accounts receivable, inventory, chattel paper, equipment, fixtures, machinery, commercial tort claims, deposit accounts, instruments, documents, cash and cash equivalents, investment property (including without limitation all equity interests in

subsidiaries), books and records, patents, trademarks, trade names, copyrights, rights under license agreements and all other intellectual property, rights, rebates, refunds and other claims under and with respect to insurance policies, tax refunds, deposits, rebates, contract rights and other general intangibles, software, letter of credit rights, money and inter-company claims or receivables (whether or not evidenced by notes) at any time owing to each Debtor, (c) all real property, leaseholds, rents and profits and proceeds thereof; (provided, however, that as to a lien on all fee, leasehold, and other real property interests and the proceeds thereof: (i) with respect to non-residential real property leases, no liens or encumbrances shall be granted or extended to such leases under this Interim Order, except as permitted by the applicable lease or pursuant to applicable law, but if any such restriction applies, liens shall then be deemed to extend only to the economic value of proceeds of any sale or other disposition of, and any other proceeds or products of, such leasehold interests; and (ii) should any DIP Lender's internal regulatory or compliance requirements require the completion of either or both flood due diligence and obtaining evidence of applicable flood insurance with respect to any real property or leasehold interest, then until completion of such flood due diligence, the DIP Agent shall be deemed to have obtained a lien only on the economic value of, proceeds of any sale or other disposition of such real property interests), (d) if not otherwise described, all of the property or rights in property identified as Collateral (as defined in the Pre-Petition ABL Credit Agreement, and the DIP Credit Agreement), (e) (i) all causes of action (other than Avoidance Actions, as defined below) whether pursuant to federal or applicable state law, and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, and (ii) upon entry of the Final Order, all claims and causes of action under Chapter 5 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**") of the

Debtors or their Estates and proceeds thereof, and (f) as to all of the foregoing, all rents, issues, products, proceeds (including insurance policies), and profits of, from, or generated by any of the foregoing (all of the foregoing being sometimes collectively referred to in this Interim Order as "**DIP Collateral**").

        (2)      Subject, in each instance, to the Carve-Out, the DIP Liens shall be:

        a)      <u>Liens on Unencumbered Assets</u>. Pursuant to Bankruptcy Code section 364(c)(2), continuing valid, perfected, enforceable, first priority, and fully perfected liens on and security interests in all of the Debtors' right, title, and interest in, to, and under all DIP Collateral that is not otherwise encumbered by a validly perfected security interest or lien as of the Petition Date ("**Unencumbered Property**").

        b)      <u>Liens on Encumbered Assets.</u> Pursuant to Bankruptcy Code section 364(c)(3), a continuing valid, enforceable, second priority, and fully perfected lien on and security interest (other than as set forth in clause (c) below) in all of the Debtors' right, title, and interest in, to, and under all DIP Collateral which is subject to, as of the Petition Date, a Senior Lien.

        c)      <u>Priming Liens on Encumbered Assets.</u> Subject to any applicable Senior Liens, pursuant to Bankruptcy Code section 364(d), valid, enforceable, and fully perfected first priority senior priming security interests in and senior priming liens upon all of the Debtors' right, title, and interest in, to, and under all DIP Collateral, including, without limitation, priming security interests and priming liens which are senior to (i) the security interests and liens held by the Pre-Petition ABL Agent, on behalf of the Pre-Petition ABL Secured Parties; (ii) the Adequate Protection Liens (as defined below); and (iii) the security interests and liens held by the Pre-Petition Subordinated Lender.

d)    <u>Liens Senior to Certain Other Liens.</u>  Notwithstanding anything to the contrary contained in this Interim Order, except for the last paragraph of Section IX with respect to the First Lien Adequate Protection Liens (as defined below), the DIP Liens and the First Lien Adequate Protection Liens shall not be subject or subordinate to (i) Bankruptcy Code sections 510, 549, or 550; (ii) any lien or security interest that is avoided or preserved for the benefit of the Debtors or their Estates under Bankruptcy Code section 551 or (iii) any intercompany or affiliate liens of the Debtors.

(3)    <u>Post-Petition Lien Perfection.</u>  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) holding any deposit account of Borrower or any Guarantor (a "**Perfection Act**"). Notwithstanding the foregoing, if the DIP Agent, the Pre-Petition ABL Agent (on account of its First Lien Adequate Protection Liens) or the Pre-Petition Subordinated Lender (on account of its Second Lien Adequate Protection Liens) shall, in their respective sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, each of the DIP Agent, the Pre-Petition ABL Agent and the Pre-Petition Subordinated Lender (with the prior written consent of the DIP Agent) is authorized to perform such act, and Borrower and Guarantors are authorized to perform such acts to the extent necessary or required by the DIP Agent, the Pre-Petition ABL Agent and/or the Pre-Petition Subordinated Lender, which act or acts shall be deemed to have been accomplished as of the Petition Date notwithstanding the date and time actually

accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. The DIP Agent, the Pre-Petition ABL Agent and/or the Pre-Petition Subordinated Lender may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Interim Order in accordance with applicable law. Should the DIP Agent, Pre-Petition ABL Agent and/or the Pre-Petition Subordinated Lender so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the DIP Liens, the First Lien Adequate Protection Liens or the Second Lien Adequate Protection Liens granted herein by virtue of the entry of this Interim Order.

B.      Subordination of Pre-Petition Subordinated Obligations. Consistent with the terms of this Interim Order and the Pre-Petition Subordinated Note, the liens and security interests granted to the Pre-Petition ABL Agent and the DIP Agent pursuant to the Pre-Petition ABL Financing Documents, the DIP Financing Documents, and this Interim Order shall have priority over any and all liens and security interests granted to the Pre-Petition Subordinated Lender to secure the Pre-Petition Subordinated Obligations or any Subordinated Adequate Protection Liens and the rights of the parties with respect to such liens and security interests shall be governed by the Pre-Petition Subordinated Note. Without the consent of the DIP Agent or Pre-Petition ABL Agent, as applicable, until the later to occur of (i) the Payment in Full (as such term is defined in the Pre-Petition Subordinated Note) of the respective Pre-Petition Obligations and Post-Petition Obligations outstanding under the Pre-Petition Financing Documents and the DIP Financing

Documents, as applicable, and (ii) the expiration of the Challenge Period with no Challenge having been asserted or threatened, Pre-Petition Subordinated Lender shall (i) take no action to foreclose upon or otherwise exercise remedies against any DIP Collateral, (ii) be deemed to have consented to any release of DIP Collateral in connection with any disposition of any DIP Collateral authorized under the Pre-Petition Financing Documents or the DIP Financing Documents or otherwise consented to by the DIP Lenders and, effective upon such release, be deemed to automatically release the Pre-Petition Subordinated Lender's liens therein (but not the proceeds of such DIP Collateral that are in excess of Payment in Full (as such term is defined in the Pre-Petition Subordinated Note) of the respective Pre-Petition Obligations and Post-Petition Obligations secured by the liens held by the Pre-Petition ABL Agent and the DIP Agent) without further notice to, consent of, or action on the part of Pre-Petition Subordinated Lender, to the same extent as the release of the liens of the Pre-Petition ABL Agent and the DIP Agent on such DIP Collateral, with any such liens of the Pre-Petition Subordinated Lender attaching to the proceeds that are in excess of Payment in Full (as such term is defined in the Pre-Petition Subordinated Note) of the respective Pre-Petition Obligations and Post-Petition Obligations secured by the liens held by the Pre-Petition ABL Agent and the DIP Agent, as applicable, of such disposition with the same validity, extent, and priority existing as immediately prior to the disposition of any such DIP Collateral.

   C. <u>Superpriority Administrative Expense</u>.

   (1) For all Post-Petition Obligations, whether now existing or hereafter arising, subject only to the Carve-Out, the DIP Agent, for the benefit of itself and the DIP Lenders, is granted an allowed superpriority administrative expense claim in Borrower's and Guarantors' Estates pursuant to Bankruptcy Code section 364(c)(1), having priority in right of

payment over any and all other obligations, liabilities, and indebtedness of any of such Debtors, whether now in existence or hereafter incurred by any of such Debtors of every kind or nature, including any and all unsecured claims, administrative expenses, adequate protection claims, priority claims or any other claims of the kind specified in, or ordered pursuant to, the Bankruptcy Code, including without limitation, *inter alia*, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507, 364(c)(1), 546(c), 726 or 1114 and, upon entry of the Final Order, sections 506(c) and 552(b) (the "**DIP Superpriority Claim**").

(2)      Other than the Carve-Out, (a) effective upon entry of the Final Order with respect to rights preserved under Section 506(c) of the Bankruptcy Code, no costs or expenses of administration, including without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Cases, and (b) no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Superpriority Claim or the Post-Petition Obligations or with any other claims of the DIP Lenders arising hereunder.

**III.    Authorization to Use Cash Collateral.**  Subject to the terms and conditions of this Interim Order, pursuant to Bankruptcy Code section 363(c)(2), the Debtors are authorized to use Cash Collateral in accordance with the DIP Financing Documents and as may be limited by the Approved Budget (subject to variances permitted under the terms and conditions of the DIP Credit Agreement).  Absent entry of the Final Order by the Court, the Debtors shall no longer be authorized to use Cash Collateral at the expiration of the Interim Period without the prior written approval of the DIP Agent.  Except for the sale of inventory in the ordinary course of Debtors' business or as may be otherwise expressly permitted herein, or in any agency arrangement between Debtors and a third party in connection with the liquidation of the DIP Collateral

approved in writing by DIP Agent and Pre-Petition Agent, nothing in this Interim Order shall be deemed to authorize the use, sale, lease, encumbrance, or disposition of any assets of the Debtors or their Estates or the use of any Cash Collateral or other proceeds resulting therefrom. Upon the later to occur of (i) the Payment in Full (as such term is defined in the Pre-Petition Subordinated Note) of the respective Pre-Petition Obligations and Post-Petition Obligations outstanding under the Pre-Petition Financing Documents and the DIP Financing Documents, as applicable, and (ii) the expiration of the Challenge Period with no Challenge having been asserted or threatened, other than funding of the Carve-Out Account in accordance with Section VI of this Interim Order, the Debtors shall be permitted to use Pre-Petition Collateral and Cash Collateral only pursuant to further agreement with and consent of the Pre-Petition Subordinated Lender.

**IV.    Adequate Protection for Pre-Petition ABL Secured Parties.**  As adequate protection for the interests of the Pre-Petition ABL Agent, for the benefit of itself and the Pre-Petition ABL Lenders, on account of the Adequate Protection Obligations owed to the Pre-Petition ABL Secured Parties (the "**First Lien Adequate Protection Obligations**"), the Pre-Petition ABL Agent is being provided with adequate protection (collectively, "**First Lien Adequate Protection**").

A.    First Lien Adequate Protection Liens.  Until the indefeasible discharge of the Pre-Petition Obligations, the Pre-Petition ABL Agent, for itself and for the benefit of the Pre-Petition ABL Lenders, is hereby granted valid, binding, enforceable and perfected replacement and additional security interests in and liens ("**First Lien Adequate Protection Liens**") on all the Debtors' right, title, and interest in and to the DIP Collateral to the extent of the First Lien Adequate Protection Obligations, which liens shall be junior in all respects only to the DIP Liens, the Senior Liens and the Carve Out.

(1)     The First Lien Adequate Protection Liens shall be deemed to be fully perfected as of the Petition Date and, subject to Section IX below, not subject to subordination or avoidance for any cause or purpose in the Cases.

(2)     Except for the DIP Liens, the Senior Liens, and the Carve Out, and subject to the last paragraph of Section IX, the First Lien Adequate Protection Liens (i) shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases (unless with the consent of the Pre-Petition ABL Secured Parties); (ii) shall not be subject to Bankruptcy Code sections 506(c) (upon entry of the Final Order), 510, 549, or 550; and (iii) no lien or interest avoided and preserved for the benefit of any Estate pursuant to Bankruptcy Code section 551 shall be made *pari passu* with or senior to the First Lien Adequate Protection Liens.

B.     <u>First Lien Adequate Protection Claims.</u>  As further adequate protection, to the extent that the First Lien Adequate Protection Liens do not adequately protect the diminution in value of the Pre-Petition ABL Agent's interest in the Pre-Petition Collateral, the Pre-Petition ABL Agent, for the benefit of the Pre-Petition ABL Lenders, is hereby granted an allowed superpriority administrative expense claim ("**First Lien Adequate Protection Claim**") against the Debtors' Estates under Bankruptcy Code sections 503 and 507(b), which shall, subject only to the DIP Superpriority Claim and the Carve-Out, have priority over all other administrative expense claims, priority claims and unsecured claims against the Debtors or their Estates, which are now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses and priority or other claims of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (upon entry of the Final Order), 507(a), 507(b), 546(c) (upon entry of the Final Order),

726, 1113 and 1114.

      C.      <u>First Lien Adequate Protection Payments</u>.

      (1)      As further adequate protection, the Pre-Petition ABL Agent, for the benefit of the Pre-Petition ABL Lenders, shall be entitled to interest on account of the outstanding Pre-Petition Obligations at the default rate set forth in the Pre-Petition ABL Financing Documents, which was in effect as of the Petition Date and which shall accrue and be payable at the times and in the manner set forth in the Pre-Petition ABL Financing Documents.

      (2)      As further adequate protection, and without limiting any rights of the Pre-Petition ABL Agent, for the benefit of the Pre-Petition ABL Lenders, under Bankruptcy Code section 506(b) which are hereby preserved, the Debtors shall pay or reimburse the Pre-Petition ABL Agent ("**First Lien Adequate Protection Payments**") for any and all of its reasonable fees, costs, expenses and charges accrued and payable under the Pre-Petition ABL Financing Documents, including, without limitation, the fees and expenses of the Pre-Petition ABL Agent as provided in Section 16.9 of the Pre-Petition ABL Credit Agreement, whether accrued and unpaid pre-petition or accrued and unpaid post-petition, all without further notice, motion or application to, order of, or hearing before, this Court; provided that DIP Agent shall be permitted to include such fees and expenses in the Post-Petition Obligations and make a Revolving Advance for the purposes of effectuating such payment by the Debtors, following submission of a redacted summary invoice to the Debtors, the U.S. Trustee and, if appointed, a Committee or its counsel, of a written invoice (subject in all respects to applicable privilege or work product doctrines) provided no objection has been raised within ten (10) days, and to the extent there is an objection, the Court may resolve the objection. Such written invoices shall include the invoices of (i) Blank Rome LLP, counsel to the Pre-Petition ABL Agent, and (ii) any other

professional, advisor, or agent reasonably retained by the Pre-Petition ABL Agent or its counsel in connection with the Pre-Petition ABL Financing Documents pursuant to the Cases; provided that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by the Court or the United States Trustee Guidelines unless an objection is interposed and cannot be resolved by the parties.  No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court.  Any and all fees charged under the Pre-Petition ABL Financing Documents shall be as set forth in the Pre-Petition ABL Financing Documents and shall be payable at the times set forth in the Pre-Petition ABL Financing Documents.

**V.**    **Adequate Protection for Pre-Petition Subordinated Lender**.  As adequate protection for the interests of the Pre-Petition Subordinated Lender, on account of the Adequate Protection Obligations owed to the Pre-Petition Subordinated Lender, if any, under applicable bankruptcy law (the "**Second Lien Adequate Protection Obligations**"), the Pre-Petition Subordinated Lender is being provided with adequate protection (collectively, "**Second Lien Adequate Protection**").

A.    Second Lien Adequate Protection Liens.  Until the indefeasible discharge of the Pre-Petition Subordinated Obligations, the Pre-Petition Subordinated Lender is hereby granted valid, binding, enforceable and perfected replacement and additional security interests in and liens ("**Second Lien Adequate Protection Liens**" together with the First Lien Adequate Protection Liens, collectively, the "**Adequate Protection Liens**") on all the Debtors' right, title, and interest in and to the DIP Collateral to the extent of the Second Lien Adequate Protection Obligations, which liens shall be junior in all respects only to the DIP Liens, the Senior Liens, the Carve-Out, the First Lien Adequate Protection Liens, and the Pre-Petition ABL Liens.

B.      <u>Second Lien Adequate Protection Payments</u>.  Upon the later to occur of (i) the Payment in Full (as such term is defined in the Pre-Petition Subordinated Note) of the respective Pre-Petition Obligations and Post-Petition Obligations outstanding under the Pre-Petition Financing Documents and the DIP Financing Documents, as applicable, and (ii) the expiration of the Challenge Period with no Challenge having been asserted or threatened:

(1)      As further adequate protection, the Pre-Petition Subordinated Lender shall be entitled to interest on account of the outstanding Pre-Petition Obligations as set forth in the Pre-Petition subordinated Financing Documents, which shall accrue and be payable at the times and in the manner set forth in the Pre-Petition Subordinated Financing Documents.

(2)      As further adequate protection, and without limiting any rights of the Pre-Petition Subordinated Lender under Bankruptcy Code section 506(b) which are hereby preserved, the Debtors shall pay or reimburse the Pre-Petition Subordinated Lender for any and all of its reasonable fees, costs, expenses and charges accrued and payable under the Pre-Petition Subordinated Financing Documents, including, without limitation, the fees and expenses of the Pre-Petition Subordinated Lender, whether accrued and unpaid pre-petition or accrued and unpaid post-petition, all without further notice, motion or application to, order of, or hearing before, this Court following submission of a redacted summary invoice to the Debtors, the U.S. Trustee and, if appointed, a Committee or its counsel, of a written invoice (subject in all respects to applicable privilege or work product doctrines) provided no objection has been raised within ten (10) days, and to the extent there is an objection, the Court may resolve the objection. Such written invoices shall include the invoices of (i) Landis Rath & Cobb LLP, counsel to the Pre-Petition Subordinated Lender, and (ii) any other professional, advisor, or agent reasonably retained by the Pre-Petition Subordinated Lender or its counsel in connection with the Pre-

Petition Subordinated Financing Documents pursuant to the Cases; provided that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by the Court or the United States Trustee Guidelines unless an objection is interposed and cannot be resolved by the parties.  No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court.

(3)    Notwithstanding the forgoing, the Debtors and the Committee, if one is appointed, reserve their rights to assert that, to the extent that any cash payment of interest, fees and expenses as adequate protection to the Pre-Petition Subordinated Lender under this Section V.B. is not allowed under Bankruptcy Code section 506(b) and not allowed on any other basis, such payments may be recharacterized and applied as payments of principal owed under the Pre-Petition Subordinated Financing Documents; provided, however, that the Pre-Petition Subordinated Lender reserves its rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

**VI.    Carve Out.**

A.    Carve-Out.  The DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, and First Lien Adequate Protection Claims, and any other liens or claims granted by this Interim Order or the Final Order shall be subject only to the right of payment and priority of the following expenses (collectively, the "**Carve-Out**"), to the extent provided herein:

(1)    the allowed administrative expenses pursuant to 28 U.S.C. § 1930 for fees payable to the U.S. Trustee or to the Court, unless otherwise ordered by the Court; and

(2)    the allowed fees and expenses actually incurred by persons or firms retained by the Debtors or the Committee (if appointed) on or after the Petition Date whose retention is approved by the Bankruptcy Court pursuant to section 327, 328, 363, or 1103 of the

Bankruptcy Code (each a "**Professional**" and collectively, the "**Professionals**") in a cumulative, aggregate sum of (i) for the period prior to the occurrence of the delivery of a Carve-Out Trigger Notice (as defined below), an amount not to exceed the lesser of (A) the aggregate weekly amounts budgeted to be funded in advance for each such Professional for such week in accordance with the Approved Budget (to the extent a Carve-Out Trigger Notice is delivered mid-week, pro-rated for such week) and (B) the actual amount of such Allowed Professional Fees for each Professional incurred on or after the Petition Date up through and including the date a Carve-Out Trigger Notice is delivered ("**Allowed Professional Fees**"), subject in all respects to the terms of this Interim Order, the Final Order, and any other interim or other compensation order entered by the Bankruptcy Court (the "**Interim Compensation Procedures**").  The Carve-Out shall include all Allowed Professional Fees that are incurred or earned (i) at any time before delivery of a Carve-Out Trigger Notice, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice, subject and limited in all respects to the amounts set forth in the Approved Budget for payment of such Professionals; and (ii) beginning the first day after the delivery by the DIP Agent of written notice (which for the avoidance of doubt may be by electronic mail) of the occurrence of an Event of Default (the "**Carve-Out Trigger Notice**") to the Debtors, the Debtors' counsel, and counsel for any Committee, the fees and expenses incurred by the Professionals retained by the Debtors in an aggregate amount not to exceed $50,000 (the "**Post-EOD Carve-Out Amount**") (the aggregate amount of clauses (1) and (2), collectively, the "**Carve-Out Cap**"); *provided*, *however* the Carve-Out shall not include any bonus, sale transaction fees, success fees, completion fees, substantial contribution fees, or any other fees of similar import of any of the Professionals. Notwithstanding the foregoing, the Carve-Out Trigger Notice shall be deemed to have been

delivered to the required notice parties on the Termination Date.

(3)    Subject to the terms of this Interim Order, the Carve-Out Cap shall be allocated on a Professional by Professional basis based on the amounts budgeted to be funded in advance for each Professional pursuant to the Budget.

B.    <u>Excluded Professional Fees</u>.    Notwithstanding anything to the contrary in this Interim Order, neither the Carve-Out, nor the proceeds of any Revolving Advances or DIP Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:  (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief:  (i) challenging the legality, validity, priority, perfection, or enforceability of the Pre-Petition Obligations, the Post-Petition Obligations or Pre-Petition Subordinated Obligations, or the Pre-Petition ABL Agent's, DIP Agent's or Pre-Petition Subordinated Lender's respective liens on and security interests in any of the Pre-Petition Collateral, DIP Collateral, or Subordinated Collateral, as applicable, (ii) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the Pre-Petition Obligations or Pre-Petition Subordinated Obligations, or Post-Petition Obligations or the Pre-Petition ABL's, DIP Agent's or Pre-Petition Subordinated Lender's respective liens on and security interests in the Pre-Petition Collateral, the DIP Collateral, or Subordinated Collateral, as applicable, or (iii) subject to entry of a Final Order, preventing, hindering or delaying the Pre-Petition ABL Agent's, DIP Agent's or Pre-Petition Subordinated Lender's respective assertion or enforcement of any lien, claim, right, or security interest or realization upon any Pre-Petition Collateral or DIP Collateral, as applicable, in accordance with the terms and conditions of this Interim Order, (b) a request to use the Cash Collateral (as such term is defined in Bankruptcy

Code section 363) without the prior written consent of the Pre-Petition ABL Agent, the DIP

Agent and the Pre-Petition Subordinated Lender, except to the extent expressly permitted herein,

(c) a request for authorization to obtain debtor-in-possession financing or other financial

accommodations pursuant to Bankruptcy Code section 364(c) or (d), other than from the DIP

Secured Parties, without the prior written consent of the DIP Agent unless such other debtor-in-

possession financing or financial accommodation is used, in part, to indefeasibly pay and satisfy

in full all Pre-Petition Obligations and Post-Petition Obligations owed respectively to the Pre-

Petition ABL Secured Parties and DIP Secured Parties, (d) the commencement or prosecution of

any action or proceeding of any claims, causes of action, or defenses against the Pre-Petition

Secured Parties, the DIP Secured Parties, or the Pre-Petition Subordinated Lender or any of their

respective officers, directors, employees, agents, attorneys, affiliates, successors, or assigns,

including, without limitation, any attempt to avoid any claim, lien, or interest of, or obtain any

recovery from any of the Pre-Petition ABL Secured Parties, the DIP Secured Parties or the Pre-

Petition Subordinated Lender, under Chapter 5 of the Bankruptcy Code; provided, however, that,

subject to the Carve-Out Cap, an amount not to exceed $25,000.00 in the aggregate of the

indebtedness incurred pursuant to the DIP Facility may be used to pay the Allowed Professional

Fees of a Committee to investigate (but not prosecute) claims against and possible objections

with respect to the Pre-Petition Obligations and/or the Pre-Petition Subordinated Obligations,

and the pre-petition liens and security interests of, the Pre-Petition ABL Secured Parties and Pre-

Petition Subordinated Lender (including, without limitation, issues regarding validity, perfection,

priority, or enforceability of the secured claims of the Pre-Petition ABL Secured Parties and Pre-

Petition Subordinated Lender).

      C.    Carve-Out Reserve.  At the DIP Agent's sole discretion, the DIP Agent may at

any time establish (and adjust) a reserve against the amount of Revolving Advances or other credit accommodations that would otherwise be made available to the Debtors in respect of the Carve-Out, provided, however, that the setting (or adjustment) of any such reserve shall not diminish the Carve-Out Cap.  Nothing contained herein shall limit, modify, or restrict in any way the DIP Agent's rights to establish (and adjust) any other reserves in accordance with the DIP Financing Documents.

        D.       <u>Payment of Carve-Out</u>.

        (1)      The Debtors shall maintain an escrow account with Young Conaway Stargatt & Taylor ("**YCST**") for the payment of Allowed Professional Fees (the "**Carve-Out Reserve Account**") which account shall be funded by or on behalf of the Debtors, including through borrowings under the DIP Credit Agreement, in accordance with the Approved Budget on a weekly basis, in advance, until the delivery of a Carve-Out Trigger Notice, provided that for this purpose borrowing availability must exist under the DIP Credit Agreement. Upon the occurrence and during the continuance of an Event of Default, the Carve-Out Reserve Account may continue to be funded at the DIP Agent's option, up to the Carve-Out Cap.  From funds in the Carve-Out Reserve Account, YCST shall pay Allowed Professional Fees to the Professionals, as applicable, in compliance with the Interim Compensation Procedures and in the manner set forth in this Interim Order in accordance with the Budget; provided, however, that, prior to payment in full of the Pre-Petition Obligations, as applicable, and Post-Petition Obligations and termination of the Carve-Out, to the extent that Allowed Professional Fees that have accrued from the Petition Date through and including the date a Carve-Out Trigger Notice is delivered are less than the amounts funded into the Carve-Out Reserve Account, the excess amounts in the Carve-Out Reserve Account shall be applied (a) first to fund the Post EOD Carve-Out Amount,

and (b) second remitted to the DIP Agent to apply to reduce either or both the Pre-Petition Obligations and the Post-Petition Obligations at DIP Agent's sole discretion. For the avoidance of doubt, (a) in making payments from the Carve-Out Reserve Account, YCST shall be entitled to conclusively rely upon written certifications of each Professional as to the amount due and owing to such Professional from the Carve-Out Reserve Account and in accordance with the Budget and shall have no liability to any party based upon its reliance on such certifications; and (b) in no circumstances shall YCST be obligated to pay any Professional other than from funds held, from time to time, in the Carve-Out Reserve Account. Provided that the amounts DIP Agent is obligated to allocate to Professionals as required in this Section VI has been funded, all obligations of the DIP Secured Parties and Pre-Petition ABL Secured Parties with respect to the Carve-Out shall be terminated.  Notwithstanding anything to the contrary contained in this Interim Order, the Carve-Out and all obligations of the DIP Secured Parties and Pre-Petition ABL Secured Parties with respect to the Carve-Out shall be terminated upon the payment in full and satisfaction of the Pre-Petition Obligations and the Post-Petition Obligations.

(2)     The Carve-Out Cap shall be reduced on a dollar-for-dollar basis on a weekly basis by the amounts actually funded into the Carve-Out Reserve Account.  To the extent the Carve-Out Reserve Account has not been funded in accordance with the Approved Budget prior to the delivery of a Carve-Out Trigger Notice, the DIP Agent, on behalf of the DIP Lenders, shall remit the difference to the Carve-Out Reserve Account solely from DIP Collateral proceeds.  Payment of any amounts on account of the Carve-Out, whether by or on behalf of the DIP Agent or any DIP Lender, shall not and shall not be deemed to reduce the Pre-Petition Obligations or the Post-Petition Obligations, and shall not and shall not be deemed to subordinate any of the DIP Secured Parties' liens and security interests in the DIP Collateral or

the DIP Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  No DIP Secured Party shall, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Cases or Successor Cases (as hereinafter defined) under any chapter of the Bankruptcy Code, and nothing in this Section VI shall be construed to obligate any DIP Secured Party, in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

(3)     Nothing herein shall be construed as a consent to the allowance of the fees and expenses of any Professional or shall affect the right of the Pre-Petition ABL Secured Parties, the DIP Secured Parties and/or the Pre-Petition Subordinated Lender to object to the allowance and payment of such fees and expenses. So long as no Event of Default has occurred or is continuing, the Debtors shall be permitted to pay fees and expenses allowed and payable pursuant to an Order of the Bankruptcy Court, including any Order approving Interim Compensation Procedures, under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, solely to the extent set forth in the Approved Budget and not to exceed the amounts set forth in the Approved Budget, provided that any such payment shall be subject to entry of a final order of the Bankruptcy Court of each Professional's final application for allowance of such fees and expenses.

**VII.**    **Right to Credit Bid**.  Subject to entry of a Final Order, in connection with any sale of assets by any Debtor outside of the ordinary course of business, the Pre-Petition ABL Agent, on behalf of the Pre-Petition ABL Lenders, and the DIP Agent, on behalf of the DIP Lenders, as the case may be, shall be entitled to credit bid all or any part of the outstanding amount of the Pre-Petition Obligations and/or Post-Petition Obligations, as applicable, in respect of any such sale.

Subject to entry of a Final Order, upon the later to occur of (i) the Payment in Full (as such term is defined in the Pre-Petition Subordinated Note) of the Pre-Petition Obligations and Post-Petition Obligations outstanding under the Pre-Petition Financing Documents and the DIP Financing Documents, as applicable, and (ii) the expiration of the Challenge Period with no Challenge having been asserted or threatened, the Pre-Petition Subordinated Lender shall be entitled to credit bid all or any part of the outstanding amount of the Pre-Petition Subordinated Obligations, as applicable, in respect of such sale.

**VIII.**   **Default; Rights and Remedies; Relief from Stay**.

A.    Events of Default.  The following shall constitute an "Event of Default" under this Interim Order:

(1)    The occurrence of any Event of Default as defined and under the DIP Credit Agreement.

(2)    The failure of the Debtors to obtain entry of a Final Order on or before twenty-five (25) days from the Petition Date, unless otherwise agreed in writing by the Pre-Petition ABL Agent and the DIP Agent.

(3)    The sale of all or substantially all of the Debtors' Property without indefeasible payment in full of the Pre-Petition Obligations and Post-Petition Obligations.

B.    Rights and Remedies Upon Event of Default/Relief from Stay.

(1)    Upon the occurrence of and during the continuance of an Event of Default, and without the necessity of seeking relief from the automatic stay or any further Order of the Bankruptcy Court (i) the DIP Agent and DIP Lenders shall no longer have any obligation to make any Revolving Advances (or otherwise extend credit) under the DIP Facility; (ii) all amounts outstanding under the DIP Financing Documents shall, at the option of the DIP Agent,

42

be accelerated and become immediately due and payable; (iii) the DIP Agent and the Pre-Petition ABL Agent shall be entitled to immediately terminate the Debtors' right to use Cash Collateral, without further application or order of this Court, provided, however, that the Debtors shall have the right to use Cash Collateral to pay their weekly ordinary course payroll included in the Approved Budget through and including the date immediately following the date on which such Event of Default occurs, (iv) the Debtors shall be bound by all post-default restrictions, prohibitions, and other terms as provided in this Interim Order, the DIP Credit Agreement and the other DIP Financing Documents and the Pre-Petition ABL Financing Documents, (v) the DIP Agent shall be entitled to charge the default rate of interest under the DIP Credit Agreement and (vi) subject only to the notice requirement set forth in Section VIII(B)(2) below, both the DIP Agent and the Pre-Petition ABL Agent shall be entitled to take any other act or exercise any other right or remedy as provided in this Interim Order, the DIP Financing Documents, the Pre-Petition ABL Financing Documents, or applicable law, including, without limitation, setting off any Post-Petition Obligations or Pre-Petition Obligations with DIP Collateral, Pre-Petition Collateral or proceeds in the possession of any Pre-Petition ABL Secured Party or DIP Lender, and enforcing any and all rights and remedies with respect to the DIP Collateral or Pre-Petition Collateral, as applicable.

(2)    Without further notice, application or order of this Court, upon the occurrence and during the continuance of an Event of Default, and after providing five (5) business days' prior written notice thereof (which five (5) business day period only applies to the DIP Collateral enforcement remedies described below) to counsel for the Debtors, counsel for any Committee, the U.S. Trustee, and counsel to the Pre-Petition Subordinated Lender, the DIP Agent for the benefit of itself and the DIP Lenders, and the Pre-Petition ABL Agent, for the

benefit of itself and the other Pre-Petition ABL Secured Parties, as applicable, shall be entitled to take any action and exercise all rights and remedies provided to them by this Interim Order, the DIP Financing Documents or the Pre-Petition ABL Financing Documents, or applicable law, unless otherwise ordered by this Court, as the DIP Agent or the Pre-Petition ABL Agent, as applicable, may deem appropriate in their sole discretion to, among other things, proceed against and realize upon the DIP Collateral (including the Pre-Petition Collateral) or any other assets or properties of the Debtors' Estates upon which the DIP Agent, for the benefit of itself and the DIP Lenders, and the Pre-Petition ABL Agent, for the benefit of itself and the other Pre-Petition ABL Secured Parties, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible payment of all the Pre-Petition Obligations and Post-Petition Obligations. Notwithstanding the foregoing or anything in Section VIII(B)(1) above, DIP Agent may continue to apply proceeds received into the lockbox or collection account to reduce the Pre-Petition Obligations or the Post-Petition Obligations in any order at the sole discretion of the DIP Agent during such five (5) business day period. During such five business days period, either or both the Debtors and the Committee shall be entitled to seek an emergency hearing with the Court.

Additionally, upon the occurrence and during the continuance of an Event of Default and the exercise by the DIP Agent or the Pre-Petition ABL Agent of their respective rights and remedies under this Interim Order, the DIP Financing Documents, or Pre-Petition ABL Financing Documents, provided that the Debtors and the DIP Agent agree upon a mutually acceptable wind down budget, the Debtors shall cooperate with the DIP Agent in the exercise of rights and remedies and assist the DIP Agent in effecting any sale or other disposition of the DIP Collateral required by the DIP Agent, including any sale of DIP Collateral pursuant to Bankruptcy Code section 363 or assumption and assignment of DIP Collateral consisting of

contracts and leases pursuant to Bankruptcy Code section 365, in each case, upon such terms that are acceptable to the DIP Agent.

(3)    Upon the occurrence and during the continuance of an Event of Default, and subject to the five business day notice provision provided above, in connection with a liquidation of any of the DIP Collateral, the DIP Agent (or any of its employees, agents, consultants, contractors, or other professionals) shall have the right, at the sole cost and expense of the Debtors, to: (i) enter upon, occupy, and use any real or personal property, fixtures, equipment, leasehold interests, or warehouse arrangements owned or leased by the Debtors; provided, however, the DIP Agent and Pre-Petition ABL Agent may only be permitted to do so in accordance with (a) existing rights under applicable non-bankruptcy law, including, without limitation, applicable leases, (b) any pre-petition (and, if applicable, post-petition) landlord waivers or consents, or (c) further order of the Court on motion and notice appropriate under the circumstances; and (ii) upon entry of a Final Order, use any and all trademarks, tradenames, copyrights, licenses, patents, equipment or any other similar assets of the Debtors, or assets which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses, provided, however, DIP Agent may use such assets upon entry of this Interim Order to the extent permitted by applicable non-bankruptcy law. The DIP Agent and the DIP Lenders will be responsible for the payment of any applicable fees, rentals, royalties, or other amounts owing to such lessor, licensor or owner of such property (other than the Debtors) for the period of time that the DIP Agent actually occupies any real property or uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals, or other amounts owing for any period prior to the date that the DIP Agent actually occupies or uses such assets or properties).

(4)     The rights and remedies of the DIP Agent specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent and/or Pre-Petition ABL Agent may have under the DIP Financing Documents, Pre-Petition ABL Financing Documents, or otherwise and may be exercised in whole or in part in any order.   The fourteen-day stay provisions of Bankruptcy Rules 6004(h) and 4001(a)(3) are hereby waived.

(5)     Upon the later to occur of (i) the Payment in Full (as such term is defined in the Pre-Petition Subordinated Note) of the respective Pre-Petition Obligations and Post-Petition Obligations outstanding under the Pre-Petition Financing Documents and the DIP Financing Documents, as applicable, and (ii) the expiration of the Challenge Period with no Challenge having been asserted or threatened, the Pre-Petition Subordinated Lender shall succeed to the rights of the DIP Agent and/or Pre-Petition ABL Agent, as applicable, set forth in this Paragraph VIII(B).

C.     <u>Relief from Stay</u>.  For the purpose of exercising rights, options and remedies set forth in this Section VIII, upon expiration of the five business-day period set forth in Section VIII(B)(2), unless otherwise ordered by the Court, the Pre-Petition ABL Agent, on behalf of the other Pre-Petition ABL Secured Parties, and DIP Agent, on behalf of the other DIP Secured Parties, shall be automatically and completely relieved from the effect of any stay under Bankruptcy Code section 362, any other restriction on the enforcement of their liens upon and security interests in the DIP Collateral or any other rights granted to them, or any of them, pursuant to the terms and conditions of the DIP Financing Documents, the Pre-Petition ABL Financing Documents or this Interim Order.

D.     <u>Waiver Agreements.</u>  Subject to entry of the Final Order, all rights, options, and remedies granted to the Pre-Petition ABL Agent or DIP Agent in either or both of any landlord

or warehouseman's waiver and/or consent executed and delivered in connection with the Pre-Petition Obligations and Pre-Petition ABL Credit Agreement, including the right to access any premises leased by Debtors and access the Pre-Petition Collateral, shall be deemed to be continuing, enforceable and applicable to and binding upon the landlords and other parties to such waiver or consent agreements with respect to the Pre-Petition Collateral and DIP Collateral.

**IX.**     **Challenges to Pre-Petition Obligations**.

A.     The Debtors have admitted, stipulated, and agreed to the various stipulations and admissions contained in this Interim Order, including, without limitation, the stipulations and admissions included in paragraph D of the Findings of Fact and Conclusions of Law (the "**Paragraph D Stipulations**"), which stipulations and admissions are and shall be binding upon the Debtors and any successors thereto (other than with respect to a successor Trustee appointed before the expiration of the Initial Challenge Period, which successor Trustee shall be bound by the Paragraph D Stipulations upon expiration of the Challenge Period, as provided in this paragraph) in all circumstances. The stipulations and admissions contained in this Interim Order, including without limitation, the Paragraph D Stipulations, shall also be binding upon the Debtors' Estates and all other parties in interest, including the Committee or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "**Trustee**"), for all purposes unless (a) (i) any party in interest other than the Committee, no later than the date that is seventy five (75) days from entry of this Interim Order, and (ii) the Committee, no later than sixty (60) days from the appointment of the Committee (as applicable for clauses (i) and (ii), the "**Initial Challenge Period**") has properly filed an adversary proceeding as required under the Bankruptcy Rules (x) challenging the amount, validity, enforceability, priority or extent of the Pre-Petition Obligations, the liens of the Pre-Petition Agent on the Pre-Petition Collateral

securing the Pre-Petition Obligations, the Pre-Petition Subordinated Obligations or the liens of the Pre-Petition Subordinated Lender to secure the Pre-Petition Subordinated Obligations or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests or defenses against the Pre-Petition ABL Agent and/or any other Pre-Petition ABL Secured Party and/or the Pre-Petition Subordinated Lender on behalf of the Debtors' Estates ((x) and (y), collectively, referred to herein as "**Challenges**"), and (b) the Court rules in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; *provided that*, as to the Debtors, all such Challenges are hereby irrevocably waived and relinquished effective as of the Petition Date. If during the Initial Challenge Period, the Committee or other third party files a motion for standing with a draft complaint identifying and describing all Challenge(s) consistent with applicable law and rules of procedure, the Initial Challenge Period will be tolled for the Committee or other third party solely with respect to the Challenge(s) asserted in the draft complaint until three (3) business days from the entry of an order granting the motion for standing to prosecute such Challenge(s) described in the draft complaint and permitted by the Court (the "**Extended Challenge Period**", together with the Initial Challenge Period, the "**Challenge Period**"). If standing is denied by the Court, the Challenge Period shall be deemed to have expired. If no such Challenge or motion for standing, as applicable, is timely filed prior to the expiration of the Initial Challenge Period, without further order of the Court:  (1) the Debtors' stipulations, admissions and releases contained in this Interim Order (including the Paragraph D Stipulations and the releases set forth in Section X(B) below) shall be binding on all parties in interest, including the Debtors' Estates, the Committee, and any subsequently appointed Trustee, case fiduciary, or successors and assigns; (2) the Pre-Petition Obligations and Pre-Petition Subordinated Obligations shall constitute

allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in these Cases and any subsequent chapter 7 case; (3) the Pre-Petition ABL Agent's liens and the respective Pre-Petition Subordinated Lender's liens on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected, and with the priority specified in the Paragraph D Stipulations, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (4) the Pre-Petition Obligations, the Pre-Petition ABL Secured Parties' liens on the Pre-Petition Collateral, the Pre-Petition Subordinated Obligations, the Pre-Petition Subordinated Lender's liens on the Pre-Petition Collateral, as applicable; and the Pre-Petition Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by any Committee or any other party in interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors' Estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Initial Challenge Period); *provided* that if the Cases are converted to chapter 7 or a Trustee is appointed prior to the expiration of the Initial Challenge Period, any such estate representative or Trustee shall receive the full benefit of the later of (a) the expiration of the Initial Challenge Period and (b) thirty (30) days from the appointment of such estate representative or Trustee, subject to the limitations described herein. If any Challenge or motion for standing, as applicable, is timely and properly filed prior to the expiration of the Initial Challenge Period, the releases, stipulations and admissions contained in this Interim Order, including without limitation, in the Paragraph D Stipulations, of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph)

on any Committee and any other person, including any Trustee appointed in any Case(s) or any subsequently converted bankruptcy case(s) of any Debtors (collectively, the "**Successor Cases**"), as applicable, except as to any such findings and admissions that were expressly challenged in the original complaint initiating the adversary proceeding and excluding any amended or additional claims that may or could have been asserted thereafter through an amended complaint under FRCP 15 or otherwise. Nothing in this Interim Order vests or confers on any person, including any Committee, any Trustee, or any other party in interest, standing or authority to pursue any cause of action belonging to the Debtors or their Estates. This stipulation shall be binding upon the Debtors, their Estates, all parties in interest in the Cases and their respective successors and assigns, including any Trustee or other fiduciary appointed in the Cases or Successor Cases and shall inure to the benefit of the Pre-Petition Secured Parties and the Debtors and their respective successors and assigns.   For the avoidance of doubt, Challenges may be filed against one or more of the Pre-Petition ABL Secured Parties and/or Pre-Petition Subordinated Lender without filing Challenges against each of the other parties and likewise the Challenge Period may expire as to some but not all of the Pre-Petition Secured Parties if a Challenge is filed against one or more of the Pre-Petition Secured Parties but not all of them.

Notwithstanding anything to the contrary contained in this Interim Order, this Court expressly reserves the right to unwind the discretionary roll-up of the Pre-Petition Obligations into Post-Petition Obligations that is contemplated to be approved upon entry of the Final Order or to order other appropriate relief against the Pre-Petition ABL Agent and the Pre-Petition ABL Lenders in the event there is a timely (in accordance with this Section IX) and successful Challenge by any party in interest to the validity, enforceability, extent, perfection or priority of the Pre-Petition ABL Agent's liens in the Pre-Petition Collateral, or to the amount, validity,

enforceability of the Pre-Petition Obligations.

**X.**     **Debtors' Waivers and Releases**.

A.     <u>Section 506(c) Claims and 552(b) Equities</u>.  Effective upon the entry of a Final Order approving the Motion, no costs or expenses of administration which have been or may be incurred in the Cases or Successor Cases at any time shall be charged against any of the Pre-Petition Secured Parties or the DIP Secured Parties their respective claims or the DIP Collateral, Pre-Petition Collateral, as applicable, pursuant to Bankruptcy Code section 506(c) without the prior written consent of the DIP Agent (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender).  Effective upon the entry of a Final Order, the Pre-Petition Secured Parties and DIP Lenders shall each be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Pre-Petition Secured Parties and DIP Lenders with respect to proceeds, products, offspring or profits of any of the Pre-Petition Collateral or DIP Collateral, as applicable.

B.     <u>Release</u>.

(1)     In consideration of and as a condition to the DIP Agent and the DIP Lenders making Revolving Advances, consent to use of Cash Collateral (including the Pre-Petition Subordinated Lender's consent to use of Cash Collateral and further subordination of its rights as provided herein) and providing other credit and financial accommodations to the Debtors pursuant to the provisions of this Interim Order and the DIP Financing Documents, each Debtor, on behalf of itself, and successors and assigns and such Debtor's Estate (collectively, "**<u>Releasors</u>**"), subject only to Section IX above, hereby absolutely releases and forever discharges and acquits (i) each Pre-Petition ABL Secured Party, (ii) the respective successors,

participants, and assigns of each Pre-Petition ABL Secured Party, (iii) the present and former shareholders, affiliates, subsidiaries, divisions, and predecessors of each Pre-Petition ABL Secured Parties, (iv) the Pre-Petition Subordinated Lender, and (v) the directors, officers, attorneys, employees, and other representatives of the parties identified in clauses (i) through (iv) but solely in their capacity as such and not in any other capacity (the parties identified in clauses (i) through (v) being hereinafter referred to collectively as "**Releasees**") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, cross claims, defenses, rights of set-off, demands, and liabilities whatsoever (individually, a "**Pre-Petition Released Claim**" and collectively, "**Pre-Petition Released Claims**") of every kind, name, nature and description, known or unknown, foreseen or unforeseen, matured or contingent, liquidated or unliquidated, primary or secondary, suspected or unsuspected, both at law and in equity, which, including, without limitation, any so-called "lender liability" claims or defenses, that any Releasor may now or hereafter own, hold, have, or claim to have against Releasees, or any of them for, upon, or by reason of any nature, cause, or thing whatsoever which arose or may have arisen at any time on or prior to the date of this Interim Order, in respect of the Debtors, the Pre-Petition Subordinated Obligations, the Pre-Petition Obligations, the Pre-Petition ABL Financing Documents, and any Revolving Advances, Letters of Credit, or other financial accommodations under the Pre-Petition ABL Financing Documents; provided that such release shall not be effective with respect to the Debtors until entry of the Final Order, and with respect to the Debtors' Estates, until the expiration of the Challenge Period.  In addition, upon entry of the Final Order and the indefeasible payment in full of all Obligations (as defined in the DIP Credit Agreement) owed to the DIP Agent and the DIP

Lenders by the Debtors and termination of the rights and obligations arising under this Interim Order and the DIP Financing Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Agent), the DIP Agent and the DIP Lenders shall be automatically deemed absolutely and forever released and discharged from any and all obligations, liabilities, actions, duties, responsibilities, commitments, claims and causes of action arising or occurring in connection with or related to the DIP Financing Documents or this Interim Order (whether known or unknown, direct or indirect, matured or contingent, foreseen or unforeseen, due or not due, primary or secondary, liquidated or unliquidated).

(2)     Upon the entry of the Final Order, and subject to Section IX with respect to all applicable parties other than the Debtors, each Releasor hereby absolutely, unconditionally and irrevocably, covenants and agrees with each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Pre-Petition Released Claim released and discharged by each Releasor pursuant to Section X(B)(1) above.  If any Releasor violates the forgoing covenant, Debtors agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

## XI.    <u>Other Rights and Obligations</u>.

A.      <u>No Modification or Stay of this Interim Order</u>.  Based upon the record presented to the Court by the Debtors, notwithstanding any reversal or modification on appeal of the authorization to obtain credit or incur debt, or of a grant of a priority or lien under this Interim Order, the DIP Financing Documents or any term hereunder or thereunder, the DIP Agent and the DIP Lenders shall retain and be entitled to all of the rights, remedies, privileges, and benefits in favor of the DIP Agent and the DIP Lenders pursuant to Bankruptcy Code section 364(e).

Further, the liens, claims, rights, remedies, privileges, and benefits granted herein shall not be affected by Debtors' failure to obtain a Final Order pursuant to Bankruptcy Rule 400l(c)(2).

B.     <u>Power to Waive Rights; Duties to Third Parties.</u>  The Pre-Petition ABL Secured Parties, DIP Lenders and Pre-Petition Subordinated Lender shall have the right, in their respective sole discretion, to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order ("**<u>Lender Rights</u>**") with respect to each of them, as applicable, and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s).  Any waiver by any of them of any Lender Rights shall apply solely to such party and to the Lender Right so waived and shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to any Pre-Petition Secured Party, any DIP Lender or the Pre-Petition Subordinated Lender.

C.     <u>Disposition of Collateral.</u>  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without an order of this Court and the written consent of the DIP Agent, except for sales of the Debtors' inventory in the ordinary course of their business or as otherwise permitted in the DIP Credit Agreement.

D.     <u>Inventory.</u>  The Debtors shall not, without the prior written consent of the DIP Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender), (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of Bankruptcy Code section 546, or (b) consent to any creditor exercising any setoff

against any of its pre-petition indebtedness based upon any such return pursuant to Bankruptcy Code section 553(b)(l) or otherwise.

E.     <u>Reservation of Rights</u>.  The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of the Pre-Petition ABL Secured Parties or the DIP Lenders to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Financing Documents, the Pre-Petition ABL Financing Documents, or any other applicable agreement or law, including, without limitation, rights to seek either or both adequate protection and additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for either or both allowance and payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

F.     <u>Modification of the Automatic Stay.</u>  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order and the DIP Financing Documents, including without limitation the application of collections, authorization to make payments, granting of liens, and perfection of liens.

G.     <u>Binding Effect</u>.

(1)     The provisions of this Interim Order, the DIP Financing Documents, the DIP Superpriority Claim, DIP Liens, First Lien Adequate Protection Liens, Second Lien Adequate Protection Liens, First Lien Adequate Protection Claims, and any and all rights, remedies, privileges and benefits in favor of the DIP Agent, the DIP Lenders, the Pre-Petition ABL Secured Parties or the Pre-Petition Subordinated Lender, provided or acknowledged in this

Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including, without limitation, any order which may be entered confirming any plan of reorganization, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

(2)     In accordance with Bankruptcy Code sections 105 and 349, the DIP Agent's, the DIP Lenders', the Pre-Petition ABL Secured Parties, and Pre-Petition Subordinated Lender, respective, liens on and security interests in the DIP Collateral shall continue in full force and effect notwithstanding any order dismissing one or more of the Cases under Bankruptcy Code section 1112 or otherwise, until the Pre-Petition Obligations, Post-Petition Obligations, and Pre-Petition Subordinated Obligations, as applicable, owed to such parties, respectively, are indefeasibly paid and satisfied in full. This Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claim, DIP Liens, First Lien Adequate Protection Liens, Second Lien Adequate Protection Liens, and First Lien Adequate Protection Claims of the DIP Agent and the DIP Lenders in the DIP Collateral.

(3)     In the event this Court modifies any of the provisions of this Interim Order or the DIP Financing Documents following a Final Hearing; this Interim Order shall remain in full force and effect except as expressly amended or modified at such Final Hearing.

(4)     This Interim Order shall be binding upon the Debtors, their Estates, all parties in interest in the Cases and their respective successors and assigns, including any Trustee or other fiduciary appointed in the Cases or any Successor Cases of any Debtors and shall inure

to the benefit of the Pre-Petition ABL Secured Parties, the Pre-Petition Subordinated Lender, the DIP Lenders, the Debtors, and their respective successors and assigns, subject to the rights of any Trustee pursuant to Section IX above.

H.     Marshalling.   Subject to the entry of a Final Order, in no event shall the DIP Agent, the DIP Lenders, or the Pre-Petition ABL Secured Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Pre-Petition Collateral or the DIP Collateral.

I.     Proofs of Claim. Notwithstanding the entry of an order establishing a bar date in any of these Cases, or the conversion of these Cases to a case under chapter 7 of the Bankruptcy Code, the Pre-Petition ABL Secured Parties and the Pre-Petition Subordinated Lender shall not be required to file proofs of claim in any of the Cases or Successor Cases with respect to any of the Pre-Petition Obligations, Adequate Protection Obligations, Adequate Protection Liens, Post-Petition Obligations, DIP Liens, DIP Superpriority Claim, or any other claims or liens granted hereunder or created hereby. The Pre-Petition ABL Agent, for the benefit of the other Pre-Petition ABL Secured Parties, and Pre-Petition Subordinated Lender are hereby each authorized and entitled, in its respective sole and absolute discretion, but in no event is required, to file (and amend and/or supplement, as it sees fit) proofs of claim in each of the Cases on behalf of (x) all of the Pre-Petition ABL Secured Parties in respect of the Pre-Petition Obligations and, respectively, the Pre-Petition Subordinated Lender in respect of the Pre-Petition Subordinated Obligations.  Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition ABL Secured Parties, or Pre-Petition Subordinated Lender, respectively.  Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in any of the Cases will so provide.

J.      <u>Waiver of Bankruptcy Rule 6003(b), 6004(a) and 6004(h)</u>.  The 21-day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a), and the 14 day stay of 6004(h) are hereby waived.

K.      <u>Order Controls.</u>  Unless this Interim Order specifically provides otherwise, in the event of a conflict between (a) the terms and provisions of the DIP Financing Documents or the Pre-Petition ABL Financing Documents, as applicable, or the Pre-Petition Subordinated Financing Documents, or (b) the terms and provisions of this Interim Order, then in each case the terms and provisions of this Interim Order shall govern.

L.      <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

M.      <u>Objections Overruled</u>.  All objections to the entry of this Interim Order are, to the extent not resolved or withdrawn, hereby overruled.

**XII.    <u>Final Hearing and Response Dates</u>**.

The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for September 13, 2019 at 10:00 a.m. (ET) before this Court.  The Debtors shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have filed a request for notice.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801; Attn: Robert S. Brady, Esq. (rbrady@ycst.com) and Ryan M. Bartley, Esq. (rbartley@ycst.com); (b)

counsel for the Agent, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801; Attn: Regina Stango Kelbon, Esq. (Kelbon@BlankRome.com); (c) counsel to any Committee; (d) counsel for the Pre-Petition Subordinated Lender, Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801; Attn: Adam G. Landis, Esq. (landis@lrclaw.com) and Matthew B. McGuire, Esq. (mcguire@lrclaw.com); and (e) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, by no later than September 6, 2019 at 4:00 p.m. (ET).

**Dated: August 21st, 2019**
**Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**