**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| AVENUE STORES, LLC, *et al.*,[1] | Case No. 19-11842 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Ref. Docket Nos. 53, 221 & 329** |

**ORDER AUTHORIZING AND APPROVING (I) THE SALE OF E-COMMERCE
BUSINESS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS,
ENCUMBRANCES, AND OTHER INTERESTS; (II) THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; AND (III) RELATED RELIEF**

Upon consideration of the motion[2] of the above-captioned debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors"), pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014, and Local Rules 2002-1, 6004-1 and 9006-1, seeking entry of, among other things, (i) an order (the "Bid Procedures Order") (a) approving the bid procedures (the "Bid Procedures") in connection with the sale or disposition (the "Sale") of the Debtors' e-commerce business, consisting of, among other things, (x) the Debtors' intellectual property and (y) inventory stored at the Debtors' distribution facility located in Dallas, Texas (collectively, the "E-Commerce Business Assets"); (b) scheduling an auction (the "Auction") for and a hearing (the "Sale Hearing") to approve the Sale; (c) authorizing and approving certain notice procedures; (d) approving procedures for the assumption and assignment of certain executory contracts; and

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Avenue Stores, LLC (0838); Ornatus URG Holdings, LLC (1146); Ornatus URG Real Estate, LLC (9565); and Ornatus URG Gift Cards, LLC (9203).  The Debtors' headquarters are located at 365 West Passaic Street, Suite 230, Rochelle Park, New Jersey 07662.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion or the APA (as defined herein), as applicable.

(e) granting certain related relief; and (ii) an order (this "Order") authorizing and approving (a) the Sale of the E-Commerce Business Assets free and clear of all claims, liens, liabilities, rights, interests and encumbrances, (b) the assumption and assignment of certain executory contracts, and (c) related relief; and the Debtors having executed that certain *Asset Purchase Agreement* (as may be amended from time to time in accordance with the terms thereof and this Order, the "APA"), in substantially final form attached hereto as Exhibit 1, contemplating the Sale of the E-Commerce Business Assets (specifically as defined in the APA, the "Purchased Assets") to the purchaser named in the APA (the "Purchaser") free and clear of any Claims (other than any Permitted Encumbrances), as defined herein (the "Sale Transaction"); and this Court having entered the Bid Procedures Order on September 13, 2019 [Docket No. 221]; and the Auction having been held on October 3, 2019; and the Sale Hearing having been held on October 7, 2019; and this Court having reviewed and considered the relief sought in the Motion, the APA, all objections to the Motion, and the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale Transaction and the relief requested in this Order; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances of these Chapter 11 Cases and in accordance with the Bid Procedures Order; and having determined that no other or further notice need be provided; and having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and having determined that this Court has jurisdiction over this matter; and having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

**Jurisdiction and Venue**

A.       This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).    Venue of these Chapter 11 Cases and proceedings is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

**Statutory Predicates**

B.       The statutory predicates for the relief requested in the Motion are sections 105, 363 and 365 of the Bankruptcy Code.    Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014.

**Final Order**

C.       This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

**Notice of the APA, Sale Transaction, Sale Hearing, and Bid Procedures Order**

D.       On August 16, 2019 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.    Since the Petition Date, the Debtors have continued to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

E.       As evidenced by the affidavits of service and publication previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely,

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

01:25226999.2

adequate and sufficient notice of the Motion, the Bid Procedures Order, the Auction, the Sale Hearing, this Order and the Sale Transaction has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9007, 9008 and 9014, and Local Rules 2002-1 and 6004-1. The Debtors have complied with all obligations to provide notice of the Motion, the Bid Procedures Order, the Auction, the Sale Hearing, this Order and the Sale Transaction as required by the Bid Procedures Order. The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Bid Procedures Order, the Auction, the Sale Hearing, this Order or the Sale Transaction is or shall be required.

F.     A reasonable opportunity to object or be heard regarding the relief requested in the Motion and provided in this Order was afforded to all parties in interest.

### Compliance with the Bid Procedures Order

G.     As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors have complied in all material respects with the Bid Procedures Order. The Debtors and their professionals have adequately and appropriately marketed the Purchased Assets in compliance with the Bid Procedures and the Bid Procedures Order, and in accordance with the Debtors' fiduciary duties. Based upon the record of these proceedings, creditors, other parties in interest, and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Purchased Assets.

H.     The Debtors conducted the sale process without collusion and in accordance with the Bid Procedures.

I.     ~~The Bid Procedures Order is incorporated herein by reference.~~

01:25226999.2

4

J.    The Purchaser is the Successful Bidder, and the APA is the Successful Bid, for the Purchased Assets in accordance with the Bid Procedures Order.  The Purchaser has complied in all respects with the Bid Procedures Order and all other applicable orders of this Court in negotiating and entering into the APA, and the Sale Transaction and the APA likewise comply with the Bid Procedures Order and all other applicable orders of this Court.

### Business Judgment

K.    The APA, including the form and total consideration to be realized by the Debtors under the APA, (i) constitutes the highest and best offer received by the Debtors for the Purchased Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

L.    The Debtors' determination that the consideration provided by the Purchaser under the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

M.    Consistent with their fiduciary duties, the Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Sale Transaction and the performance of their obligations under the APA, including, but not limited to, the fact that (i) the consideration provided by the Purchaser under the APA will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Purchased Assets; and (ii) unless the Sale Transaction is concluded expeditiously as provided for in the Motion and pursuant to the APA, recoveries of creditors will be diminished.

**Corporate Authority**

N.      Subject to entry of this Order, each Debtor (i) has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) has all of the necessary corporate power and authority to consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts (as defined in the APA), (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, and (iv) subject to entry of this Order, needs no consents or approvals, including any consents or approvals from any non-Debtor entities, other than those expressly set forth in the APA or this Order, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

**Good Faith**

O.      The sales process engaged in by the Debtors and the Purchaser, including, without limitation, the Auction, which was conducted in accordance with the Bid Procedures and the Bid Procedures Order, and the negotiation of the APA, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.  None of the Debtors or the Purchaser has engaged in any conduct that would cause or permit the APA or the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

P.      The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision in respect of the

Sale Transaction, each term of the APA (and any ancillary documents executed in connection therewith) and each term of this Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  None of the Debtors or the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code.  The Debtors were free to deal with any other party interested in buying or selling some or all of the Purchased Assets on behalf of the Debtors' estates. The protections afforded by section 363(m) of the Bankruptcy Code are integral to the Sale Transaction and the Purchaser would not consummate the Sale Transaction without such protections.

Q.    The form and total consideration to be realized by the Debtors under the APA constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Purchased Assets.

R.    Neither the Purchaser nor any of its affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of any of the Debtors, as that term is defined under section 101(31) of the Bankruptcy Code.  No common identity of directors, managers, controlling shareholders, or members exists between the Debtors and the Purchaser.

## No Fraudulent Transfer

S.    The consideration provided by the Purchaser for the Purchased Assets pursuant to the APA (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession and the District of Columbia.

01:25226999.2

### Free and Clear

T.       Upon receipt by PNC (defined below) of the Payoff Proceeds (defined below), the transfer of the Purchased Assets to the Purchaser will be legal, valid, and effective transfers of the Purchased Assets, and will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of all claims, liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights and encumbrances, including, without limitation, the following:    all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff except for setoffs exercised prior to the Petition Date, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity not constituting governmental police powers, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, any rights of licensees or sublicensees (if any) under section 365(n) of the Bankruptcy Code or any similar statute and all other matters of any kind

and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or transferee liability or related theories (all of the foregoing, including, without limitation, liens and liabilities, but excluding Assumed Liabilities, collectively being referred to in this Order as "Claims" and, as used in this Order, the term "Claims" includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof); provided, however, that all such Claims shall attach to the proceeds of the Sale Transaction to be received by the Debtors that are not otherwise paid to PNC Bank, N.A., as Pre-Petition ABL Agent and DIP Agent ("PNC"), at Closing to indefeasibly satisfy Debtors' indebtedness then due and owing to the Pre-Petition ABL Secured Parties and DIP Secured Parties under the Pre-Petition ABL Financing Documents and DIP Financing Documents, as applicable (each as defined in the Final DIP Order[4]), with the same validity, force, priority and effect that they now have as against the Purchased Assets; and provided, further, that such transfer shall not be free and clear of any Permitted Encumbrances.

U.    Upon receipt by PNC of the Payoff Proceeds (defined below), the Debtors may transfer the Purchased Assets free and clear of all Claims, other than any Permitted

---

[4]    As used, herein, "Final DIP Order" means this Court's *Order (I) Authorizing the Debtors, on a Final Basis, to (A) Obtain Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Claims to Post-Petition Lenders and (C) Utilize Cash Collateral, (II) Providing Adequate Protection to the Pre-Petition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364 and 507* [Docket No. 223].  Terms used in this paragraph but not defined in this Order, the Motion or the APA shall have the meanings ascribed to them in the Final DIP Order.

Encumbrances, including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those (a) holders of Claims and (b) non-Debtor parties to the Assumed Contracts, who did not object or who withdrew their objections to the Motion, are deemed to have consented pursuant to section Bankruptcy Code 363(f)(2). Those (i) holders of Claims and (ii) non-Debtor parties to the Assumed Contracts who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

V. The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

W. The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (i) if the transfer of the Purchased Assets were not free and clear of all Claims (other than any Permitted Encumbrances), or (ii) if the Purchaser would, or in the future could, be liable for any such Claims (other than any Permitted Encumbrances). The Purchaser will not consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, unless this Court expressly orders that none of the Purchaser, its respective affiliates, its respective present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever (other than any Permitted Encumbrances) with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims.

X.      Not transferring the Purchased Assets free and clear of all Claims (other than any Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Claims and other interests of any kind or nature whatsoever (other than any Permitted Encumbrances) would be of substantially less benefit to the Debtors' estates.

Y.      Neither the Purchaser nor any of its affiliates is a mere continuation of the Debtors or their estates, there is no continuity or common identity between the Purchaser, any of its affiliates and any of the Debtors, and there is no continuity of enterprise between the Purchaser, any of its affiliates and any of the Debtors.  Neither the Purchaser nor any of its affiliates are holding themselves out to the public as a continuation of any of the Debtors. Neither the Purchaser nor any of its affiliates are a successor to any of the Debtors or their estates, and none of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts amounts to a consolidation, merger, or *de facto* merger of the Purchaser or any of its affiliates with or into any of the Debtors.

Z.      Without limiting the generality of the foregoing, and other than as may be set forth in the APA, none of the Purchaser, its affiliates, its and their respective present or contemplated members or shareholders will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state or local income tax liabilities, that the Debtors may incur in connection with consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment

01:25226999.2

of the Assumed Contracts, or that the Debtors have otherwise incurred prior to the consummation of the transactions contemplated by the APA.

**Validity of Transfer**

AA.    The consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the APA.

BB.    The Purchased Assets constitute property of the Debtors' estates and good title to the Purchased Assets of the Debtors is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors are the sole and lawful owners of the Purchased Assets, and no other person has any ownership right, title, or interest therein.

CC.    The sale, conveyance, assignment and transfer of any personally identifiable information pursuant to the terms of the APA and this Order complies with the terms of the Debtors' policy regarding the transfer of such personally identifiable information as of the Petition Date and, as a result, consummation of the Sale Transaction is permitted pursuant to section 363(b)(1)(A) of the Bankruptcy Code.  Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

**Assumed Contracts**

DD.    The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order and the APA is integral to the transactions contemplated by the APA and is in the

best interests of the Debtors, their estates and creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

EE.    Pursuant to the terms of the APA and this Order, on or before the Closing Date, as applicable pursuant to the terms of this Order, the Debtors or the Purchaser, as applicable, shall have, except as otherwise provided in the APA or this Order, or as otherwise expressly agreed to between the Debtors or the Purchaser, as applicable, and such counterparty:  (i) cured, or provided adequate assurance of cure of, any monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) provided adequate assurance of its future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

## Compelling Circumstances for an Immediate Sale

FF.    To maximize the value of the Purchased Assets, it is essential that the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts occur within the time constraints set forth in the APA. Time is of the essence in consummating the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

GG.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of

the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtors' estates will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis. The transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors, and therefore, do not constitute a *sub rosa* plan.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

### General Provisions

1.      The Motion is granted as provided herein, and entry into and performance under, and in respect of, the APA attached hereto as <u>Exhibit 1</u> and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts is authorized and approved.

2.      Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent or to not object to the relief granted herein.

3.      This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference.

## Approval of the APA

4.      The APA and all ancillary documents filed with the Court, the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts (but subject to the Purchaser's rights with respect thereto pursuant to the APA) and all the terms and conditions thereof, are approved.  The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the APA be authorized and approved in its entirety.

5.      The Debtors and their respective officers, employees and agents are authorized (at the reasonable request of the Purchaser) to take any and all actions necessary, appropriate or reasonably requested by the Purchaser to perform, consummate, implement and close the Sale Transaction, including, without limitation, (a) the sale to the Purchaser of all Purchased Assets, in accordance with the terms and conditions set forth in the APA and this Order; and (b) executing, acknowledging and delivering such deeds, assignments, conveyances and other assurance, documents and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying and confirming to the Purchaser, or reducing to possession, the Purchased Assets.  The Debtors are further authorized to pay, without further order of this Court, whether before, at or after the Closing Date, any expenses or costs that are required to be paid by the Debtors under the APA in order to consummate the Sale Transaction or perform their obligations under the APA; provided, however, that for the avoidance of doubt, that professional fees subject to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* shall be approved in accordance therewith.

6.      All persons and entities are prohibited from taking any action to prevent, adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the APA and this Order.

7.      The sale of the Purchased Assets to the Purchaser under the APA constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, without limitation, the laws of each jurisdiction in which the Purchased Assets are located, and the sale of the Purchased Assets to the Purchaser may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

## Transfer of the Purchased Assets Free and Clear

8.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets, shall be sold free and clear of all Claims (other than any Permitted Encumbrances), with all such Claims to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto; provided, however, that setoff rights will be extinguished (except with respect to setoffs that were validly effected prior to the Petition Date) to the extent there is no longer mutuality after the consummation of the Sale Transaction.

9.      At Closing and upon receipt by PNC of the Payoff Proceeds, all of the Debtors' rights, title and interest in and to, and possession of, the Purchased Assets shall be immediately vested in the Purchaser pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code

free and clear of any and all Claims, other than any Permitted Encumbrances.  Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Purchaser with good and marketable title to, the Purchased Assets.  All person or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser or its designees on the Closing Date or at such time thereafter as the Purchaser may request.

10.    This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the APA.  ~~The "Purchased Assets are sold free and clear of any reclamation rights.~~

11.    Except as otherwise expressly provided in the APA or this Order, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, foreign, federal, state and local governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Claims against the Debtors or the Purchased Assets arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' predecessors or affiliates, the Purchased Assets, the ownership, sale or operation of the

Purchased Assets prior to Closing or the transfer of the Purchased Assets to the Purchaser, are hereby forever barred, estopped and prohibited from asserting or prosecuting any cause of action or any process or other act or seeking to collect, offset, or recover on account of any Claims against the Purchaser, its successors or assigns, their property or the Purchased Assets solely with respect to the Sale and the transactions contemplated thereby. Following the Closing, no holder of any Claim shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim, or based on any action the Debtors may take in these Chapter 11 Cases.

12.     The Debtors are authorized (at the reasonable request of the Purchaser) to execute such documents as may be necessary to release any Claims of any kind against the Purchased Assets as such Claims may have been recorded or may otherwise exist. Except as provided below concerning the Claims in the Purchased Assets held by PNC, as Pre-Petition ABL Agent and DIP Agent, if any person or entity that has filed financing statements, *lis pendens* or other documents or agreements evidencing Claims against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, lien releases and appropriate UCC amendments with respect to those Claims that the person or entity has with respect to the Purchased Assets, (a) the Debtors are hereby authorized (at the reasonable request of the Purchaser) to execute and file such lien releases and appropriate UCC amendments with respect to those Claims against the Purchased Assets; (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Claims against the Purchaser and the applicable Purchased Assets; and (c) the Purchaser may seek in this Court or any other court to compel appropriate

parties to execute termination statements, instruments of satisfaction and releases of all such Claims with respect to the Purchased Assets (collectively, "Release Documents"); provided that, neither the Debtors nor the Purchaser is authorized to file any Release Documents with respect to the Claims held by PNC, as Pre-Petition ABL Agent and DIP Agent, in the Purchased Assets without first obtaining the express written consent of PNC and providing drafts of such Release Documents to PNC for its review and approval, which consent and approval shall be in PNC's sole discretion. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Claims (other than any Permitted Encumbrances) shall be self-executing, and none of the Debtors or the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

13.     To the maximum extent permitted under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser with respect to the Purchased Assets as of the Closing Date.

14.     No governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale Transaction to the extent that any such action by a governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code.

## No Successor or Transferee Liability

15.     Upon the Closing Date, except as provided in the APA, the entry of this Order and the APA shall mean that the Purchaser, as a result of any action taken in connection with the APA, the consummation of the Sale Transaction, or the transfer or operation of the Purchased Assets, shall not be deemed to: (a) be a legal successor or successor employer to the Debtors, or otherwise be deemed a successor to the Debtors, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated with or into the Debtors; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise(s) of the Debtors, including, in the case of each of (a)-(c), without limitation, (x) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the WARN Act (29 U.S.C. §§ 2101 et seq.) ("WARN"), Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, et seq. (the "NLRA") or (y) in respect of (i) any environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, (ii) any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without

limitation, filing requirements under any such laws, rules or regulations), or (iii) any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

16.    Without limiting the generality of the foregoing, and except as otherwise provided in the APA and this Order, neither the Purchaser nor any of its affiliates shall have any responsibility for (a) any liability or other obligation of the Debtors or related to the Purchased Assets or (b) any Claims against the Debtors or any of their predecessors or affiliates. By virtue of the Purchaser's purchase of the Purchased Assets, neither the Purchaser nor any of its affiliates shall have any liability whatsoever with respect to the Debtors' businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental (including, but not limited to CERCLA), successor or transferee liability, *de facto* merger or substantial continuity, labor and employment (including, but not limited to, WARN) or products liability law, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing. The Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

17.    None of the Purchaser or its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the

negotiation, investigation, preparation, execution, delivery of the APA and the entry into and consummation of the sale of the Purchased Assets, except as expressly provided in the APA and this Order. For the avoidance of any doubt, this paragraph shall not release any party for claims arising from intentional fraud, bad faith and gross negligence.

18.    Nothing in this Order or the APA shall require the Purchaser or any of its affiliates to (a) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including, without limitation, benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

19.    No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Order, including, without limitation, the APA and the Sale Transaction.

### Good Faith; Arm's Length Sale

20.    The APA has been negotiated and executed, and the Sale Transaction contemplated by the APA are and have been undertaken, by Debtors and the Purchaser and their respective representatives at arm's length, without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the APA, and shall not permit the unwinding

of the Sale Transaction.  The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

21.    Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the APA or the Sale Transaction to be avoided or costs, or damages or costs, to be imposed, under section 363(n) of the Bankruptcy Code.  The consideration provided by the Purchaser for the Purchased Assets under the APA is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

<u>**Assumption and Assignment of the Assumed Contracts**</u>

22.    Except as otherwise expressly provided in the APA or this Order, upon the Closing Date, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are authorized to (a) assume each of the Assumed Contracts and assign the Assumed Contracts, set forth in <u>Exhibit 2</u> (the "<u>Assumed Contracts Exhibit</u>") attached hereto, which may be subsequently modified in accordance with the Bid Procedures Order and the terms of the APA prior to the Closing Date, to the Purchaser free and clear of all Claims (other than any Permitted Encumbrances) and (b) execute and deliver to the Purchaser such documents or other instruments as may be reasonably requested by Purchaser to assign and transfer the Assumed Contracts to the Purchaser.

23.    The Cure Claims (as defined in the APA) listed on the Assumed Contracts Exhibit are the sole amounts necessary to be paid upon assumption of the Assumed Contracts under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code.  All Cure Claims, if any, shall be paid by the Purchaser.  Upon the payment of the Cure Claims, if any, by the Purchaser, (i) the Assumed Contracts shall remain in full force and effect, and no default shall

exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default; (ii) the Cure Claims shall not be subject to further dispute or audit, including, without limitation, any based on performance prior to the Closing Date, irrespective of whether such Assumed Contract contains an audit clause; and (iii) neither the Debtors nor the Purchaser shall have any further liabilities to the counterparties to the Assumed Contracts other than the Purchaser's obligations under the Assumed Contracts that accrue and become due and payable on or after the Closing Date.

24.    In the event of a dispute as of, or after, the Closing Date regarding assumption and assignment or Cure Claim of any Contract proposed to be an Assumed Contract, the assumption and assignment of such Contract, and payment of any applicable Cure Claims, shall be made following the entry of an order of this Court resolving any such dispute (or upon the consensual resolution of such dispute as may be agreed by the Purchaser and such counterparty and, solely with respect to disputes regarding Cure Claims, the Debtors). Notwithstanding anything to the contrary herein, the Purchaser shall have the right to modify the Assumed Contracts Exhibit at any time following the Closing Date in the event that any such dispute is not resolved to the Purchaser's satisfaction; provided, however, if the only such dispute is in respect of the proposed Cure Claim, Purchaser may determine that such Contract shall be an Assumed Contract on the Closing Date, and the Purchaser shall pay any applicable Cure Claim upon entry of an order of this Court resolving such dispute. Upon an election of the Purchaser to exclude a Contract from the Assumed Contract Exhibit, the Purchaser shall have no liability whatsoever to the counterparty to such Contract that may arise prior to or after the Closing Date.

25.    Any provision in any Assumed Contract that prohibits or conditions the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate,

01:25226999.2

24

recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect/ _with respect to the Sale approved hereby._

26.    Each Assumed Contract constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code and all requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Assumed Contracts have been, or will be, satisfied.  Upon the Purchaser's assumption of the Assumed Contracts in accordance with the terms hereof, in accordance with sections 363 and 365 of the Bankruptcy Code, (a) the Purchaser shall be fully and irrevocably vested with all rights, title and interest of the Debtors under the Assumed Contracts, (b) the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts, and (c) the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.

27.    The Purchaser has demonstrated adequate assurance of future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

28.    There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Debtors or the Purchaser as a result of the assumption, assignment and sale of the Assumed Contracts.  The validity of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts shall not be affected by any dispute between any of the Debtors and another party to an Assumed Contract regarding the payment of any amount.  Upon assignment to the Purchaser, the

Assumed Contracts shall be valid and binding, in full force and effect and enforceable by the Purchaser in accordance with their respective terms.

29.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assumed Contracts are forever barred and prohibited from raising or asserting against the Debtors or the Purchaser any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of and including the Closing Date under the APA or arising by reason of the consummation of transactions contemplated by the APA, including, without limitation, the Sale Transaction, the assumption and assignment of the Assumed Contracts, and any party that may have had the right to consent to the assignment of an Assumed Contract is deemed to have consented to such assignment for purposes of sections 365(c)(1)(B) and 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if such party failed to object to the assumption and assignment of such Assumed Contract.

30.    All counterparties to the Assumed Contracts shall cooperate, upon the reasonable requests of the Purchaser, in connection with the Sale of the Purchased Assets.

**Payment of Certain Indebtedness**

31.    Notwithstanding anything to the contrary in this Order or the APA, at Closing, Sale Proceeds sufficient to ~~repay~~ indefeasibly the Obligations (as defined in the DIP Credit Agreement) (the "Payoff Proceeds") shall be paid in cash by wire transfer to PNC to be applied to the Obligations in accordance with the terms of the Final DIP Order and DIP Financing Documents. In addition, notwithstanding anything to the contrary in this Order or the APA, at Closing, certain remaining Sale proceeds as determined by the Parties (defined below) or this Court as set forth herein (the "Limited Excess Proceeds") shall be paid in cash by wire transfer to

Ornatus URG Funding, LLC ("Ornatus Funding") to be applied by Ornatus Funding to the Pre-Petition Subordinated Obligations in accordance with the terms of the Final DIP Order. Prior to Closing, the Debtors, Ornatus Funding, PNC and the Committee (collectively, the "Parties") shall work in good faith to agree on the amount of the Limited Excess Proceeds after accounting for all senior secured claims and administrative priority claims provided for under the Final DIP Order and DIP Budget (collectively, the "Wind Down Expenses") and any other necessary reserves. If the parties are unable to agree on the amount of Limited Excess Proceeds, the matter will be presented to this Court for decision prior to or on the Closing date. At Closing, any obligations or liabilities of PNC and the DIP Lenders with respect to any Carve-Out and any other unpaid administrative claims (including Stub Rent and claims under 11 U.S.C. 503(b)(9), if any) and Senior Liens under the Final DIP Order shall be deemed satisfied, released and extinguished. The payment of the Limited Excess Proceeds to Ornatus Funding shall be subject to disgorgement by Ornatus Funding in the event of successful Challenges (as defined in the Final DIP Order) or other relief ordered by this Court. All proceeds of the Sale remaining in the Debtors' estates after the payment of the Obligations to PNC and the Limited Excess Proceeds to Ornatus Funding shall constitute Cash Collateral (as defined in the Final DIP Order) and may not be used by the Debtors or any other party absent the consent of PNC and/or Ornatus Funding, as applicable. After the Closing of the Sale, PNC, Ornatus Funding and the Debtors shall work in good faith to agree upon an order that provides for the Debtors' consensual use of Cash Collateral (as defined in the Final DIP Order) and if those parties cannot reach agreement (or in the event the Committee objects to any agreement reached by those parties), this Court will resolve any such disputes on appropriate notice to parties in interest. Pending such resolution,

however, and absent the agreement of PNC and/or Ornatus Funding (as applicable), the Debtors shall not be permitted to use Cash Collateral.

32.     For the avoidance of doubt, nothing contained herein shall effect the rights granted under the Final DIP Order to the Committee, including the right to assert Challenges (as that term is defined in the Final DIP Order) against either the Pre-Petition ABL Agent, any other Pre-Petition ABL Secured Party, and/or the Pre-Petition Subordinated Lender during the Initial Challenge Period (as defined in the Final DIP Order), which period may be extended by further order of this Court, solely as provided in the Final DIP Order.

## Related Relief

33.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the APA.

34.     Nothing in this Order or the APA releases, nullifies, or enjoins the enforcement of any liability (including, but not limited to, for reclamation and mitigation and any associated long-term protection requirements) by a governmental unit under police and regulatory statutes and regulations that any entity would be subject to as the owner or operator of property that is sold or transferred pursuant to this Order, provided, however, that the Purchaser shall not be liable for penalties for days of violation on or prior to the consummation of the Sale Transaction. Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.

35.    No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the sale of the Purchased Assets.

36.    Notwithstanding anything to the contrary in the foregoing, in the event of termination of the Program Agreement, Comenity Bank ("Comenity") shall be permitted to use the Debtors' trademarks and service marks through the later of (i) June 1, 2020 or (ii) nine (9) months after the last date on which Comenity is required to operate under the existing Program Agreement (as defined in the Final DIP Order) solely as necessary to administer the private label open-ended credit card accounts and collect the balances due on any accounts pursuant to the Program Agreement.

37.    Notwithstanding anything to the contrary in the foregoing, Comenity, or its successor in interest, shall be permitted to continue the use of the Debtors' un-stylized name in order to process, service, and collect any remaining balances on the private label open-ended credit card accounts until such time as the accounts are fully processed, collected and closed.

38.    Notwithstanding anything to the contrary in this Order, the APA or any other document, the Program Agreement is not being assumed or assigned pursuant to this Order and all rights and objections of Comenity relating to potential assumption and assignment of the Program Agreement are fully preserved.

39.    The Purchaser is responsible for the payment of any customs-related charges, such as duties, that are payable to U.S. Customs and Border Protection ("CBP") or the United States on account of any Acquired Asset that is, when or after the Sale closes, in transit to the United States, on a dock in the United States, in a port in the United States, in a customs house in

the United States, or in the custody or subject to the control of the United States or CBP, but only

to the extent that the Debtors or their estates have not paid or satisfied any such charges.

40.    Proceeds from the Sale in the amount of $300,000 shall be deposited into a

segregated account (the "Surety Security"), which funds shall be subject to any valid, perfected

(as applicable), unavoidable, or otherwise enforceable senior   lien or other interest that

Westchester Fire Insurance Company and its affiliates (collectively, the "Surety") or an obligee

of the Surety has or will have in the proceeds of the Sale, and shall be subject to any right of

setoff or recoupment that the Surety or one of its obligees has or will have against the Debtors or

their estates, and any claim arising from such an interest or right that the Surety or one of its

obligees has or will have, but only to the extent that any such interest, right, or claim is valid,

perfected, unavoidable, and senior to the interests of PNC and Ornatus Funding in the applicable

Acquired Assets or the proceeds of the Sale.  If no claims are made by the Surety or an obligee of

the Surety within 60 days from Sale Closing, the Surety Security shall be returned to the

Debtors' estates, PNC or Ornatus Funding, subject to and consistent with any other provision of

this Order or, as applicable, further order of this Court.  For the avoidance of doubt, paragraph 8

hereof shall preserve any interest, right, or claim held by the Surety or one or more of its obliges

as provided thereby.

41.    The Purchaser and its affiliates hereby waive any and all actions related to, and

hereby release, the Debtors and their post-Closing property from any and all Claims or causes of

action of any kind, whether known or unknown, now existing or hereafter arising, asserted or

unasserted, mature or inchoate, contingent or non-contingent, liquidated or unliquidated, material

or nonmaterial, disputed or undisputed, and whether imposed by agreement, understanding, law,

equity, or otherwise, related to or arising out of these Chapter 11 Cases, the formulation,

preparation, negotiation, execution, delivery, implementation or consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts or any other contract, instrument, release, agreement, settlement or document created modified, amended, terminated or entered into in connection with the APA, except to the extent specifically assumed or established under the APA or this Order.

42.     Except as expressly provided in the APA, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any Excluded Asset.

43.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby authorized to surrender possession of the Purchased Assets to the Purchaser on the Closing Date.

44.     To the extent there is any inconsistency between the terms of this Order and the terms of the APA, the terms of this Order shall govern.

45.     This Order and the APA shall be binding in all respects upon all pre-petition and post-petition creditors of the Debtors, all interest holders of the Debtors, all non-Debtor parties to the Assumed Contracts, the Official Committee of Unsecured Creditors appointed by the U.S. Trustee on August 27, 2019, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in these Chapter 11 Cases or upon a conversion of the Debtors' cases to those under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the APA and Sale Transaction shall not be subject to rejection or avoidance under any circumstances. If any order under section 1112 of the

Bankruptcy Code is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Order and the rights granted to the Purchaser hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.

46.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction, including any and all disputes with any counterparty to any Contract of the Debtors (including, without limitation, disputes with respect to assumption and assignment of any Assumed Contracts or any cure disputes) and any party that has, or asserts, possession, control or other rights in respect of any of the Purchased Assets; provided, however, that, in the event that this Court abstains from exercising or declines to exercise such jurisdiction with respect to the APA, the Bid Procedures Order, or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.  This Court retains jurisdiction to compel delivery of the Purchased Assets, to protect the Debtors and their assets, including the Purchased Assets, against any Claims and successor and transferee liability and to enter orders, as appropriate, pursuant to sections 105(a) or 363 of the Bankruptcy Code (or other applicable provisions) necessary to transfer the Purchased Assets to the Purchaser.

47.     At any time prior to the Closing Date, the Purchaser, the Debtors may terminate the APA pursuant to the terms thereof without any penalty or liability to the Purchaser, the Debtors (or their estates), except as set forth in the APA.

01:25226999.2

48.     The APA and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court.

49.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rule 6004(h), this Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

50.     The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code, to give any notice permitted by the APA or to enforce any of its remedies under the APA or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

51.     The provisions of this Order are non-severable and mutually dependent.

52.     The requirements set forth in Bankruptcy Rule 6004 and Local Bankruptcy Rule 6004-1 have been satisfied or otherwise deemed waived.

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

Dated: _October 7th, 2019_
**Wilmington, Delaware**