## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AVENUE STORES, LLC, *et al.*,[1] | Case No. 19-11842 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. Nos. 12, 31, 32, 33, 49, 160 & 338** |

### *AMENDED* FINAL ORDER AUTHORIZING (I) THE DEBTORS TO ASSUME THE AGENCY AGREEMENT, (II) THE CONDUCT OF THE STORE CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (III) CUSTOMARY BONUSES TO EMPLOYEES OF REMAINING CLOSING STORES, (IV) PAYMENT OF PRE-PETITION BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND (V) RELATED RELIEF

Upon the *Debtors' Motion for Interim and Final Orders Authorizing (I) the Debtors to Assume the Agency Agreement,(II) the Conduct of the Store Closing Sales, with such Sale to be Free and Clear of All Liens, Claim, and Encumbrances, (III) Customary Bonuses to Employees of Remaining Closing Stores, (IV) Payment of Pre-Petition Break-Up Fee and Expense Reimbursement, and (V) Granting Related Relief* (the "Motion"); [2] and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration [D.I. 14]; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and this Court having found that venue of these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Avenue Stores, LLC (0838); Ornatus URG Holdings, LLC (1146); Ornatus URG Real Estate, LLC (9565); and Ornatus URG Gift Cards, LLC (9203).  The Debtors' headquarters are located at 365 West Passaic Street, Suite 230, Rochelle Park, New Jersey 07662.

[2]   All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion or Agency Agreement, as applicable.

pursuant to 28 U.S.C. § 157(b); and this Court having found that due and sufficient notice of the Motion has been given under the particular circumstances and that no other or further notice of the Motion need be given; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and this Court having entered the *Interim Order Authorizing (I) the Debtors to Perform in Accordance with the Agency Agreement, (II) the Conduct of the Store Closing Sales, With Such Sales to Be Free and Clear of all Liens, Claims, and Encumbrances, (III) Customary Bonuses to Employees of Remaining Closing Stores, and (IV) Granting Related Relief* [D.I. 49]; and upon the record of all hearings on the Motion, including the hearing on August 20, 2019, and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interest of the Debtors, their estates and creditors, and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, CONCLUDED AND DETERMINED that:[3]**

A.    The Debtors' decision to (i) enter into the Agency Agreement, a copy of which is attached hereto as <u>Exhibit 1</u>, and (ii) perform under and make payments required by the Agency Agreement, is a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

B.    The consideration to be paid by the Agent under the Agency Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate

---

[3]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

consideration for the Store Closing Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The terms and conditions set forth in the Agency Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws.

C.    The Debtors, their management and their board of directors, and the Agent, its members and its officers, directors, employees, agents and representatives, actively participated in the bidding process and acted in good faith. The Agency Agreement between the Agent and the Debtors was negotiated and entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code. The Agent shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Final Order is reversed or modified on appeal. The Debtors were free to deal with any other party interested in buying or selling on behalf of the Debtors' estates some or all of the Store Closing Assets. Neither the Debtors nor the Agent has engaged in any conduct that would cause or permit the Store Closing Sales, the Agency Agreement, or any related action or the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) or 364(e) of the Bankruptcy Code. The Agent has not violated section 363(n) of the Bankruptcy Code by any action or inaction. The Agent's prospective performance and payment of amounts owing under the Agency Agreement are in good faith and for valid business purposes and uses.

D.    Time is of the essence in effectuating the Agency Agreement and continuing with the Store Closing Sales contemplated therein without interruption. The conduct

01:25276007.1

of the Store Closing Sales will provide an efficient means for the Debtors to dispose of the Store

Closing Assets.  The Store Closing Sales under the Agency Agreement must be permitted to

continue to maximize the value that the Agent may realize from the Store Closing Sales and the

value that the Debtors may realize from assuming the Agency Agreement.

E.      The Agent is not an "insider" as that term is defined in section 101(31) of

the Bankruptcy Code.  No common identity of directors or controlling stockholders exists

between the Agent and the Debtors.

F.      The Sale Guidelines, as described in the Motion and attached as <u>Exhibit 2</u>

hereto, are reasonable and will maximize the returns on the Store Closing Assets for the benefit

of the Debtors' estates and creditors.

G.      The Store Closing Sales, in accordance with the Sale Guidelines and with

the assistance of the Agent, will provide an efficient means for the Debtors to liquidate and

dispose of the Store Closing Assets as quickly and effectively as possible, and are in the best

interests of the Debtors' estates.

H.      The Resolution Procedures are fair and reasonable, and comply with

applicable law.

I.      The Debtors have represented that, pursuant to the Motion, they are not

seeking to either sell or lease personally identifiable information during the course of the Store

Closing Sales at the Remaining Closing Stores; *provided*, *however*, that the Agent will be

authorized to distribute emails and promotional materials to the Debtors' customers consistent

with the Debtors' existing policies on the use of consumer information.

J.      A sale of the Store Closing Assets other than one free and clear of liens,

claims, encumbrances, defenses (including, without limitation, rights of setoff and recoupment)

and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre- petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances") pursuant to the terms provided in the Agency Agreement and without the protections of this Final Order would hinder the Debtors' ability to obtain the consideration provided for in the Agency Agreement and, thus, would impact materially and adversely the value that the Debtors' estates would be able to obtain for the sale of such Store Closing Assets. But for the protections afforded to the Agent under the Bankruptcy Code and this Final Order, the Agent would not have offered to pay the consideration contemplated in the Agency Agreement. The Debtors and the Agent may sell the Store Closing Assets free and clear of all Encumbrances as provided for herein (provided the proceeds owed to the Debtors under the Agency Agreement are paid to PNC Bank, National Association, in its capacity as both

prepetition lender and DIP lender to the Debtors ("PNC") until the obligations owed to PNC are indefeasibly paid in full) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.   Those holders of any such Encumbrances who did not object, or who withdrew their objections, to the entry of this Final Order are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of any such Encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having such Encumbrances attaching to the proceeds of the sale of the applicable Store Closing Assets with the same validity and priority and to the same extent and amount that any such Encumbrances had with respect to such Store Closing Assets.   Therefore, approval of the Agency Agreement and the consummation of the Store Closing Sales free and clear of Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtors' estates, their creditors and other parties in interest.

K.      No sale, transfer or other disposition of the Store Closing Assets pursuant to the Agency Agreement or entry into the Agency Agreement will subject the Agent to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Store Closing Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories.  The Agent is not a successor to the Debtors or their respective estates.

L.      The security interests and liens provided for in the Agency Agreement and this Interim Order to secure the obligations of the Debtors under the Agency Agreement to the Agent are necessary to induce the Agent to agree to terms for the Agency Agreement that

maximize value for the Debtors' estates. The absence of such protections would impact materially and adversely the value available to the Debtors in the liquidation of their stores in partnership with a liquidation agent. But for the protections afforded to the Agent under the Bankruptcy Code, this Interim Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtors the compensation provided for under the Agency Agreement. In addition, PNC, which holds a first priority security interest in and lien on the property to which the Agent's security interests attach, has consented to the security interests and liens provided for in the Agency Agreement, subject to the satisfaction of the terms and conditions set forth in the Agency Agreement and this Interim Order, including, without limitation, the Agent's (i) payment of the Initial Guaranty Payment and, if applicable, Initial E-Commerce Guaranty Payment (each as defined in the Agency Agreement), and (ii) issuance of the Letter of Credit.

M.     The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

N.     The entry of this Final Order is in the best interest of the Debtors, their estates and creditors, and all other parties in interest herein.

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED on a final basis, as set forth herein.

2.     The Debtors are authorized to take all actions necessary to implement the relief granted in this Final Order. The failure to specifically include any particular provision of the Agency Agreement in this Final Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Agency Agreement and all of its provisions,

01:25276007.1

payments, and transactions, be and hereby are authorized and approved as and to the extent provided for in this Final Order.

3.    To the extent there is any conflict between this Final Order, the Sale Guidelines, and the Agency Agreement, the terms of this Final Order shall control over all other documents, and the Sale Guidelines shall control over the Agency Agreement.

**A.    Assumption of the Agency Agreement**

4.    The Agency Agreement is hereby assumed pursuant to section 365 of the Bankruptcy Code.  The Debtors are authorized to act in accordance with the terms of the Agency Agreement, including, but not limited to, making payments required by the Agency Agreement to the Agent (and to PNC, with respect to the Initial Guaranty Payment and, if applicable, the Initial Guaranty E-Commerce Payment) without the need for any application of the Agent or a further order of this Court.  Notwithstanding this or any other provision of this Final Order, nothing shall prevent or be construed to prevent any of the Agent (individually, as part of a joint venture, or otherwise) or any of their affiliates from bidding on the Debtors' other assets pursuant to an agency agreement or otherwise, and Agent is hereby authorized to bid on and guarantee or otherwise acquire such assets notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such guarantee, transaction or acquisition is approved by separate order of this Court.

5.    Subject to the restrictions set forth in this Final Order and the Sale Guidelines, the Debtors and the Agent are authorized to take any and all actions as may be necessary or desirable to implement the Agency Agreement and the Store Closing Sales; and each of the transactions contemplated by the Agency Agreement, and any actions taken by the Debtors and the Agent necessary or desirable to implement the Agency Agreement and/or the Store Closing Sales prior to the date of this Final Order are approved and ratified.

01:25276007.1

**B.        Authority to Engage in the Store Closing Sales**

6.        The Debtors are authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately continue and conduct the Store Closing Sales in accordance with this Final Order, the Sale Guidelines, the Agency Agreement, and any Side Letter (defined below).

7.        The Sale Guidelines are approved in their entirety.

8.        All entities that are presently in possession of some or all of the Store Closing Assets in which the Debtors hold an interest that are or may be subject to the Agency Agreement or this Final Order hereby are directed to surrender possession of such Store Closing Assets to the Debtors or the Agent.

9.        Except as provided herein, neither the Debtors nor the Agent nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit or any Landlord, to conduct the Store Closing Sales and any related activities in accordance with the Sale Guidelines.

10.        The Debtors are authorized to discontinue operations at the Remaining Closing Stores in accordance with this Final Order, the Sale Guidelines, and the Agency Agreement.

11.        The Debtors shall have the option (the "E-Commerce Option") to be exercised in their business judgment, and in writing as provided in the Agency Agreement no later than forty-nine days after the Sale Commencement Date for the Remaining Closing Stores (such period, the "E-Commerce Option Period") to include the sale of the On-Line Merchandise in Store Closing Sales through the E-Commerce Platform.  If the E-Commerce Option is exercised before the 22nd day following the Sale Commencement Date for the Remaining Closing Stores, the Guaranteed Percentage for the On-line Merchandise shall not be adjusted.  If

the E-Commerce Option is exercised after the 22nd day following the Sale Commencement Date for the Remaining Closing Stores, the Guaranteed Percentage for the On-line Merchandise shall be reduced to 18.18%, which shall be in addition to other adjustments (if any) contemplated by the Agency Agreement.

12.    At any time after the expiration of the E-Commerce Option Period, to the extent that Debtors decide to close the E-Commerce Platform, the Debtors shall appoint the Agent exclusively (and no other liquidator) and the Agent agrees to serve as the exclusive agent to liquidate the On-Line Merchandise through the E-Commerce Platform.  In exchange for providing such services, Agent shall receive 0.75% of gross sales proceeds (sales net of taxes) with respect to On-Line Merchandise sold through the E-Commerce Platform after such election plus reimbursement of out of pocket expense to be agreed to by the Debtors and the Agent.

**C.    Order Binding**

13.    This Final Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Store Closing Assets.

14.    This Final Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Store Closing Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under

01:25276007.1

any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Final Order and the terms and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Final Order and the Agency Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in this case shall be and hereby is authorized, but not required, to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Final Order and the Agency Agreement, and Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court.

D.      **Conducting the Store Closing Sales**

15.      Except as otherwise provided in the Agency Agreement, and subject to the Agent's payment of the Initial Guaranty Payment and delivery of the Letter of Credit, pursuant to section 363(f) of the Bankruptcy Code, the Agent shall be authorized to sell all the Store Closing Assets to be sold pursuant to the Agency Agreement free and clear of any and all Encumbrances, including, without limitation, the liens and security interests, as the same may have been amended from time to time, of PNC whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these Chapter 11 Cases were commenced, with any presently existing liens (which, for the avoidance of doubt, does not include the Agent's

01:25276007.1

11

liens granted under the Agency Agreement) encumbering all or any portion of the Store Closing Assets or the proceeds thereof attaching only to any balance of the Guaranteed Amount and other amounts to be received by the Debtors under the Agency Agreement that are not otherwise (i) paid to PNC to fully satisfy Debtors' indebtedness owed to PNC or (ii) payable to Agent under the Agency Agreement.  For the sake of clarity, however, nothing in this paragraph is intended to diminish the liens in favor of the Agent, as reflected in the Agency Agreement and this Final Order, that attach to, among other things, any remaining Proceeds of the Store Closing Sales after payment in full of the indebtedness owed by Debtors to PNC.

16.    Other than filings made by PNC with respect to its liens and security interests in the Store Closing Assets, if any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, lis pendens or other documents or agreement evidencing liens on or interests in the Store Closing Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Store Closing Assets, each such person or entity is hereby directed to deliver all such statements, instruments and releases and the Debtors and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of this Final Order which, upon filing, shall be conclusive evidence of the release and termination of such interest.  Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Store Closing Sales and related transactions.

17.     All newspapers and other advertising media in which the Store Closing Sales may be advertised and all Landlords or licensors, as applicable, of the Remaining Closing Stores are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Agent to conduct the Store Closing Sales and the sale of Store Closing Assets pursuant to the Agency Agreement and the Sale Guidelines, including, without limitation, to conduct and advertise the sale of the Store Closing Assets and the Additional Agent Goods in the manner contemplated by and in accordance with this Final Order, the Sale Guidelines, and the Agency Agreement.

18.     Nothing nullifies or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order. Nothing contained in this Final Order or in the Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation. Moreover, the sale of the Store Closing Assets shall not be exempt from, and the Debtors and the Agent shall be required to comply with laws and regulations of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").  Nothing in this Final Order shall alter or affect the Debtors' and Agent's obligations to comply with all

applicable federal safety laws and regulations.  Nothing in this Final Order shall be deemed to bar any Governmental Unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Final Order, or otherwise, pursuant to paragraph 32 hereunder. Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

19.     In accordance with and subject to the terms and conditions of the Agency Agreement, the Agent shall have the right to use the Remaining Closing Stores and all related store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Store Closing Sales, free and clear of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Final Order.

20.     Subject to the Resolution Procedures provided in paragraph 32 hereof, the Debtors and the Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Store Closing Sales without the need for a further order of this Court, including, but not limited to, advertising the sale as a "store closing," "sale on everything," "everything must go," "liquidation sale," and upon the E-Commerce Sale Commencement Date, "going out of business" or similar themed sale through the posting of signs (including the use of exterior banners at non-enclosed mall Remaining Closing Stores, and at enclosed mall Remaining Closing Stores to the extent the applicable Store

01:25276007.1

14

entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage, in accordance with the Final Order, Agency Agreement, and Sale Guidelines.

21.    Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Store Closing Assets, to the extent that disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners or other advertising and the Debtors and the Agent are unable to resolve the matter consensually with a Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled initially no later than within two (2) business days of such request, or such later date that the Court schedules a hearing.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

22.    Except as expressly provided in the Agency Agreement, the sale of the Store Closing Assets shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease, license, reciprocal easement agreement, restrictive convenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closing Sales, the rejection of leases or licenses, the necessity of obtaining any third party consents, abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Store Closing Sales.  The Agent, along with landlords and licensors, as applicable, of the Remaining Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords or licensors, as applicable, of the Remaining Closing Stores, provided that

01:25276007.1

nothing in such Side Letters affects the provisions of paragraphs 18, 20, 21, and 32 of this Final Order.  In the event of any conflict between the Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

23.    Except as expressly provided for herein or in the Sale Guidelines, and except with respect to any Governmental Unit (as to which paragraphs 18 and 32 of this Final Order shall apply), no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder the continuation of the Store Closing Sales or the sale of Sale Closing Assets, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closing Sales and/or (ii) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords or licensors, as applicable, at the Remaining Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales or sale of the Store Closing Assets or other liquidation sales at the Remaining Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

24.    All sales of all Store Closing Assets shall be "as is" and final.  Conspicuous signs stating that "all sales are final" and "as is" will be posted at the cash register

areas at all Stores.  However, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."  Further, the Debtors and/or the Agent shall accept return of any goods purchased during the Store Closing Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within seven days of purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.

25.     Except as expressly provided for in the Agency Agreement, nothing in this Final Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Store Closing Sales shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees.  Moreover, the Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

26.     The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement, and the Debtors remain responsible for the payment of any and all sales taxes.  The Debtors are directed to remit all taxes accruing from the Store Closing Sales to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute, the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  This Final Order does not enjoin, suspend or restrain the assessment, levy or

collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law

27.     The Debtors shall not sell any personal and/or confidential information about the Debtors' employees and/or customers (the "Confidential Information").  To the extent that the Debtors propose to sell or abandon Store Closing Assets that may contain Confidential Information, the Debtors shall remove all such Confidential Information from such Store Closing Assets before they are sold or abandoned.

28.     The Debtors and the Agent are authorized and empowered to transfer Store Closing Assets among the Remaining Closing Stores.  The Agent is authorized to sell or abandon, without incurring liability to any person or entity, the Store Closing Assets in accordance with the terms of the Agency Agreement and the Sale Guidelines; *provided*, *however*, to the extent any of the Store Closing Assets remain at a Remaining Closing Store on the effective date of rejection for the underlying lease, such Store Closing Assets shall be deemed abandoned by the Debtors at the time of any rejection of the lease with the right of the Landlord to dispose of such property free and clear of all interests and without notice or liability to any person or entity.

29.     Nothing in this Final Order shall (a) alter or affect the Debtors' obligations to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code; provided that the conduct of the Store Closing Sales in accordance with the Sale Guidelines, as may have been modified by Side Letter, shall not be a violation of section 365(d)(3) of the Bankruptcy Code.

01:25276007.1

30.     During the Sales Term, the Agent shall be granted a limited license and right to use the trade names, logos, e-mail lists, mailing lists, customer lists, and e-commerce sites (including (without limitation) websites and social media sites such as Facebook and Twitter), including a banner on such sites and a store locator to identify the Remaining Closing Stores, relating to and used in connection with the operation of the stores as identified in the Agency Agreement, solely for the purpose of advertising the Store Closing Sales in accordance with the terms of the Agency Agreement; *provided, however,* that the Agent shall not receive Personally Identifiable Information from the Debtors.

**E.      Resolution Procedures for Disputes Regarding Liquidation Laws**

31.     To the extent that the Store Closing Sales at the Remaining Closing Stores are conducted in accordance with this Final Order and the Sale Guidelines, and are therefore conducted under the supervision of this Court, such Store Closing Sales are authorized notwithstanding any federal, state, or local statute, ordinance, rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, bulk sale laws, or Fast Pay laws, including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions (collectively, the "Liquidation Laws"). To the extent the Debtors are subject to any state Fast Pay Laws in connection with the Store Closings, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of (a) the Debtors' next regularly scheduled payroll, and (b) seven calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

01:25276007.1

32.     Provided that the Store Closing Sales are conducted in accordance with the terms of this Final Order, the Agency Agreement and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any Liquidation Laws and, subject to paragraphs 18 and 21 herein, are authorized to conduct the Store  Closing Sales in accordance with the terms of this Final Order and the Sale Guidelines without the necessity of further showing compliance with any such Liquidation Laws.  To the extent that between the Petition Date and the date of the Final Hearing there is a dispute arising from or relating to the Store Closing Sales, this Final Order, the Agency Agreement, or the Sale Guidelines, which dispute relates to any Liquidation Sales Laws (a "Liquidation Dispute"), the following procedures shall apply:

a)   The Court shall retain exclusive jurisdiction to resolve the Liquidation Dispute which such Liquidation Dispute will be heard within fourteen (14) days of service of the Dispute Resolution Motion, absent a party obtaining expedited relief.  Nothing in this Final Order shall constitute a ruling with respect to any issues to be raised with respect to a Liquidation Dispute.  Any Governmental Unit may assert a Liquidation Dispute and shall send a notice (the "Dispute Notice") explaining the nature of the dispute to: (i) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:  Robert S. Brady, Esq. (rbrady@ycst.com), Andrew L. Magaziner, Esq., (amagaziner@ycst.com), and Ashley E. Jacobs, Esq. (ajacobs@ycst.com), (ii) counsel to PNC Bank, National Association, Blank Rome, LLP, 1201 N. Market Street, Suite 800, Wilmington, Delaware 19801, Attn: Regina Stango Kelbon, Esq. (Kelbon@blankrome.com), (iii) counsel to the Pre-Petition Subordinated Lender, Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801 Attn: Adam Landis (landis@lrclaw.com); (iv) counsel to the Agent, Pepper Hamilton LLP, Hercules Plaza, 1313 N. Market Street, Suite 5100, P.O. Box 1709, Wilmington, Delaware 19899, Attn: Douglas Herrmann, Esq. (herrmannd@pepperlaw.com) and Marcy J. McLaughlin, Esq. (mclaughm@pepperlaw.com); and (v) proposed counsel to the Official Committee of Unsecured Creditors, Cooley LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Jay R. Indyke, Esq. (email: jindyke@cooley.com)) and 1299 Pennsylvania Avenue, NW, Suite 700, Washington, DC 20004 (Attn: Cullen Drescher Speckhart, Esq. (email:

cspeckhart@cooley.com)), no later than fourteen (14) days following the service of the Final Order.

b) If the Debtors, the Agent and the Governmental Unit are unable to resolve the Liquidation Dispute within fourteen (14) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Liquidation Dispute (a "<u>Dispute Resolution Motion</u>").

c) Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Final Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Final Order and the Agency Agreement, absent further order of this Court.

33.     Within two (2) business days of the entry of this Final Order, the Debtors shall serve copies of this Final Order, which includes the Agency Agreement and the Sale Guidelines, by email, facsimile, or regular mail on the Applicable Governmental Units and the Landlords.

**F.      The Grant of Security Interests, Liens, and Superpriority Claim to the Agent**

34.     Effective upon payment by Agent of the Initial Guaranty Payment and issuance to PNC and the Debtors as co-beneficiaries of the Store Letter of Credit, Debtors grant to Agent first priority, senior security interests in and liens (subject to the subordination provisions set forth in the Agency Agreement) in: (i) the Merchandise (other than the On-Line Merchandise); (ii) the Additional Agent Goods; (iii) all Proceeds (including, without limitation, credit card Proceeds); (iv) the commission regarding the sale or other disposition of Debtors' Consignment Goods under Section 5.4 of the Agency Agreement; (v) if Debtors exercise the option under section 7.1, FF&E and all FF&E Proceeds or, if Merchant does not exercise such option, the commission regarding the sale or other disposition of Owned FF&E under Section 7 of the Agency Agreement; (vi) any Sharing Amount, but only up to the amount of Agent's percentage share of such Sharing Amount under Section 3.2(a) of the Agency Agreement; and (vii) all "proceeds" (within the meaning of Section 9-102(a)(64) of the Code) of each of the

01:25276007.1

foregoing (all of which are collectively defined as the "Agent Collateral").  Upon entry of the Final Order, payment of the Initial Guaranty Payment, and issuance of the Letter of Credit to PNC and the Debtors as co-beneficiaries, the security interests and liens granted to the Agent in the Agent Collateral shall be deemed properly perfected without the necessity of filing UCC-1 financing statements or any other documentation.

35.    Effective upon the exercise of the E-Commerce Option and payment by Agent of the Initial E-Commerce Guaranty Payment and issuance of the E-Commerce Letter of Credit to PNC and the Debtors as co-beneficiaries, Debtors grant to Agent first priority, senior security interests in and liens upon the On-Line Merchandise.  Upon entry of this Final Order, payment of the Initial Guaranty Payment, and, if Debtors exercise the option under section 7.1 of the Agency Agreement, the Additional Guaranteed Amount, and issuance of the Letter of Credit, the security interests and liens granted to the Agent in the On-Line Merchandise shall be deemed properly perfected without the necessity of filing UCC-1 financing statements or any other documentation.

36.    Without any further act by or on behalf of the Agent or any other party (including, without limitation, the Debtors or PNC), the Agent's security interests in and liens upon the Agent Collateral are (i) validly created, (ii) effective upon entry of this Final Order, perfected, and (iii) senior to all other liens and security interests, *provided, however,* that (x) until the Debtors receive payment in full: (a) of the Guaranteed Amount, (b) if the Debtors exercise the option under section 7.1, the Additional Guaranteed Amount, and (c) other amounts due to Debtors under the Agency Agreement, the security interests and liens granted to Agent in Agent Collateral shall be junior and subordinate in all respects to the security interests of PNC in the Agent Collateral (other than the Additional Agent Goods and proceeds thereof in which the

Debtors have no property or other interest and PNC has no security interest or other lien), in the amount of the unpaid portion of the any of the Guaranteed Amount, if the Debtors exercise the option under section 7.1, the Additional Guaranteed Amount, and other amounts due to Debtors under the Agency Agreement, and (y) upon payment in full of: (a) the Guaranteed Amount, (b) if the Debtors exercise the option under section 7.1, the Additional Guaranteed Amount, and (c) other amounts due to Debtors under the Agency Agreement, any security interest or lien of PNC in the Agent Collateral shall be junior and subordinate in all respects to the security interests and liens of Agent.  Debtors shall cooperate with Agent with respect to all filings (including, without limitation, UCC-1 financing statements) and other actions to the extent reasonably requested by Agent in connection with the security interests and liens granted under the Agreement.

37.    Subject to the Agent having satisfied its payment obligations under the Agency Agreement, the Agent shall have a superpriority administrative expense claim against the Debtors for any amounts owed by the Debtors to the Agent under the Agency Agreement pursuant to section 364(c) of the Bankruptcy Code, which claim shall be junior only to the superpriority claims granted to PNC.

38.    Until such time as PNC has notified Agent and Debtors that PNC has been indefeasibly paid in full, PNC shall be constituted as each Debtor's attorney-in-fact with power at any time to endorse Debtor's name upon any draw request to be submitted with respect to the Letter of Credit and receive all proceeds of the Letter of Credit, which shall be applied to the outstanding obligations owed by Debtors to PNC, all in accordance with the terms and conditions of the Agency Agreement.

01:25276007.1

G.    **Store Closing Bonuses**

39.    The Debtors shall have the authority, but not the obligation, to pay store closing bonuses (the "<u>Store Closing Bonuses</u>") to the Retained Employees as provided for in the Agency Agreement.  The Agent shall have the authority to determine the individual amounts of each Store Closing Bonus, except that the total aggregate cost of the Store Closing Bonus program will not exceed ten percent (10%) of the base payroll for all Retained Employees.

H.    **Sections 363(m) and 364(e)**

40.    Entry into the Agency Agreement is undertaken by the parties thereto in good faith, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and Agent shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Final Order is modified, amended or vacated by subsequent order of the Court or any other court. The Agent is entitled to all of the benefits and protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code. The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

I.    **Additional Agent Goods**

44.    In accordance with Section 8.10 of the Agency Agreement, the Agent is authorized to supplement the Merchandise in the Store Closing Sales with additional goods procured by Agent which are of like kind, and no lesser quality to the Merchandise in the Store Closing Sales (the "<u>Additional Agent Goods</u>").  The Additional Agent Goods shall be purchased by Agent as part the Store Closing Sales at Agent's sole expense (and such purchase price shall constitute an Expense).  Sales of Additional Agent Goods shall be run through the Debtors' cash register systems, *provided however,* Agent shall mark the Additional Agent Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Agent Goods from the sale of Merchandise.  Agent and the Debtors shall also

cooperate so as to ensure that the Additional Agent Goods are marked in such a way that a reasonable consumer could identify the Additional Agent Goods as non-Debtor goods. Additionally, Agent shall provide signage in the Remaining Closing Stores notifying customers that the Additional Agent Goods have been included in the Store Closing Sales.

41.    The Additional Agent Goods shall be consigned to the Debtors as a true consignment under Article 9 of the Uniform Commercial Code (as the same may be in effect from time to time in the State of Delaware).  Subject solely to Agent's obligations to pay to the Debtors their portion of the Proceeds from the sale of the Additional Agent Goods, at all times and for all purposes the Additional Agent Goods and their proceeds shall be the exclusive property of Agent, and no other person or entity shall have any claim against any of the Additional Agent Goods or their proceeds. The Additional Agent Goods shall at all times remain subject to the exclusive control of Agent, and the Debtors shall, as an Expense, insure the Additional Agent Goods and, if required, promptly file any proofs of loss with regard thereto with the Debtors' insurers. Agent is hereby granted a first priority security interest in and lien upon (i) the Additional Agent Goods and (ii) the Additional Agent Goods proceeds, which security interest shall be deemed perfected pursuant to this Final Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Goods as consigned goods thereunder and the Debtors as the consignee therefor, and Agent's security interest in and lien upon such Additional Agent Goods and Additional Agent Goods proceeds).

01:25276007.1

**J.      Miscellaneous**

42.     Notwithstanding anything herein to the contrary, nothing set forth in this Order shall (i) alter the priority of any liens held by PNC, in its capacity as administrative agent under the Debtors' pre-petition or post-petition financing facility, except with respect to liens granted in favor of Agent as provided in the Agency Agreement and this Order, or (ii) alter the right of any party to challenge the liens or claims of PNC solely consistent with the terms and provisions of any order of this Court approving debtor in possession financing.

43.     Any purchase of Additional Agent Goods or FF&E purchased with Avenue branded cards issued under the program with Comenity Bank (the "Branded Card Program") shall be deemed to be sales by Avenue for purposes of the Branded Card Program.

44.     The Debtors are authorized to pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse.

45.     Any transfers by the Debtors to the Agent prior to the Petition Date (including, without limitation, any Proceeds under the Agency Agreement and the valid, binding, and enforceable security interests granted to the Agent) are not subject to avoidance.

46.     Non-material modifications, amendments, or supplementations to the Agency Agreement and related documents by the parties may be made in accordance with the terms thereof without further order of this Court, but notice of such modification, amendment or supplement shall be filed with the Court.

47.     From and after payment of the Initial Guaranty Payment and delivery of the Letter of Credit, all amounts due to the Agent under the Agency Agreement shall be earmarked and paid by the Debtors from proceeds of the Store Closing Sales and shall not be reduced or capped by the terms or conditions of any pre- or post-petition financing facilities or orders related thereto.

01:25276007.1

48.     Nothing contained in any plan confirmed in these Chapter 11 Cases or any order of this Court confirming such plan or in any other order in these Chapter 11 Cases (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or the terms of this Final Order.

49.     The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement.  The Agent shall have no successor liability whatsoever with respect to any Encumbrances or claims of any nature that may exist against the Debtors, including, without limitation, the Agent shall not be, or to be deemed to be: (i) a successor in interest or within the meaning of any law, including any revenue, successor liability, pension, labor, ERISA, bulk- transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories; or (ii) a joint employer, co-employer or successor employer with the Debtors, and the Agent shall have no obligation to pay the Debtors' wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of the Debtors, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the Agency Agreement.

50.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes arising from or relating to the implementation, interpretation, or enforcement of this Final Order or the Agency Agreement, including, but not limited to, any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit the Store Closing

Sales in accordance with the Sale Guidelines, including but not limited to any efforts to prohibit, restrict or limit banner and signwalker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, or any other disputes related to the Store Closing Sales or the assertion of Encumbrances related to the Store Closing Assets..  No parties or person shall take any action against the Debtors, the Agent, or the Store Closing Sales until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

51.    Notwithstanding any provisions of any interim or final orders pertaining the postpetition financing or use of cash collateral, or any agreements approved thereby, except as provided for in the following sentence, the liens currently held by Bell County Tax Appraisal District, The County of Williamson, Texas, Lubbock Central Appraisal District, Arlington Independent School District, Pasadena Independent School District, Clear Creek Independent School District, Fort Bend Independent School District, Fort Bend County Levee Improvement District #2, Bexar County,  Hidalgo County, City of McAllen,  Harris County, Cypress-Fairbanks ISD, Collin County, Tom Green CAD,  Denton County,  Nueces County,  Ft. Bend County,  El Paso, Lewisville ISD, the City of Frisco, Tarrant County, and Dallas County (collectively, the "Texas Taxing Authorities"), shall not be primed by nor made subordinate to any liens granted to any party hereby to the extent such liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Tax Authorities are fully preserved.  Furthermore, from the proceeds received by the Debtors for the Store Closing Sales (if any), or any other amounts payable pursuant to the Agreement, on account of the sale of any of the Debtors' assets located

in the state of Texas shall be treated as provided in the Final DIP Order; *provided, however*, that nothing in the paragraph shall in any way prime or otherwise affect the first priority, senior liens and security interests granted to the Agent pursuant the Agreement and this Final Order, of which the segregated account that serves as adequate protection for the Texas Tax Authorities is not included.

52.    The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of payments made in accordance with this Final Order that are dishonored or rejected.

53.    Each of the Debtors' banks and financial institutions is authorized, but not directed, to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Final Order and any other order of this Court.

54.    Notwithstanding the relief granted herein and any actions taken hereunder, except with respect to the Agent, nothing contained herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

55.    Nothing in this Final Order is intended to affect any rights of any Applicable Governmental Unit to enforce any law affecting the Debtors' conduct of the Store Closing Sales prior to the Petition Date.

56.    Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

57.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

01:25276007.1

58.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

**Dated: October 8th, 2019**
**Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**