## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Avenue Stores, LLC, *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-11842 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: TBD**<br>**Objection Deadline: TBD** |

### EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (1) FOR AN ORDER, PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE, CONVERTING THE DEBTORS' CASES TO CASES UNDER CHAPTER 7 AND (2) FOR AN ORDER EXTENDING THE PERIOD (A) TO CHALLENGE THE AMOUNT, VALIDITY, ENFORCEABILITY, PRIORITY OR EXTENT OF THE PRE-PETITION SUBORDINATED OBLIGATIONS OR THE LIENS OF THE PRE-PETITION SUBORDINATED LENDER AND (B) TO ASSERT ANY OTHER CLAIMS <u>OR CAUSES OF ACTION AGAINST THE VERSA PARTIES</u>

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Avenue Stores, LLC and its affiliated debtors and debtors-in-possession (the "<u>Company</u>" or "<u>Debtors</u>"), by and through its undersigned counsel, hereby submits this emergency motion (the "<u>Motion</u>") seeking (1) entry of an order, pursuant to section 1112(b) of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") immediately converting the Debtors' chapter 11 cases to cases under chapter 7 and (2) entry of an order pursuant to section 105(a) of the Bankruptcy Code, Bankruptcy Rule 9006(b) and Rule 9006-2 of the Local rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), Section IX, paragraph A of the *Order (I) Authorizing the Debtors, on a Final Basis, to (A) Obtain Post-Petition Financing, (B) Grant Liens and Superpriority Administrative Expense*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Avenue Stores, LLC (0838); Ornatus URG Holdings, LLC (1146); Ornatus URG Real Estate, LLC (9565); and Ornatus URG Gift Cards, LLC (9203). The Debtors' headquarters are located at 365 West Passaic Street, Suite 230, Rochelle Park, New Jersey 07662.

*Claims to Post-Petition Lenders and (C) Utilize Cash Collateral, (II) Providing Adequate Protection to the Pre-Petition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364 and 507* (the "Final DIP Order", Docket No. 223),[2] extending the Initial Challenge Period to allow time for the appointment of a chapter 7 trustee or, in the alternative, to allow the Committee additional time to commence a contested matter or adversary proceeding should a chapter 7 trustee not be appointed.[3]  In support of the Motion, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

Pursuant to §1112(b), the Committee seeks immediate conversion of these cases to chapter 7 in order to avoid continuing losses to and diminution of estate assets, especially as there is no reasonable likelihood of rehabilitation of the Debtors' business, and because the Debtors are unlikely to effectuate the confirmation of a chapter 11 plan.  Conversion of these cases and appointment of a chapter 7 trustee are urgent matters in light of the impending expiration of the Initial Challenge Period and the impact such expiration will have on a chapter 7 trustee's ability to prosecute certain claims and causes of action against Versa Capital Management, LLC and several of its affiliates and other parties, including the Pre-Petition Subordinated Lender (collectively, the "Versa Parties").

Based on information and documents received to date, the Committee believes that a chapter 7 trustee would be empowered to assert good faith allegations supporting several claims and causes of action against the Versa Parties.  Such claims and causes of action may include,

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Final DIP Order.

[3] Any extension of time to commence a contested matter or adversary proceeding, will also extend the time for the Committee or a third party to file a motion for standing as provided in the Final DIP Order.  *See* Section IX, paragraph A of the Final DIP Order.

but are not limited to, avoidance of actual and constructively fraudulent transfers, claims for avoidance of preferential transfers, breach of fiduciary duty, aiding and abetting, corporate waste, equitable subordination and recharacterization, as well as other challenges to the extent and priority of the Pre-Petition Subordinated Lender's liens (collectively, the "Versa Actions"). In light of certain hurdles the Committee may face in seeking standing to prosecute some or all of these claims, which hurdles may not apply to a chapter 7 trustee, it is imperative that a chapter 7 trustee be appointed to continue the work the Committee has begun in seeking to maximize the value of these claims for the benefit of the creditors of these estates.

Given that the sale of the Debtors' E-Commerce Business Assets is complete and the store closing sales have ceased, remaining in chapter 11 is simply not in the best interests of the estates or their unsecured creditors.  The Debtors filed these cases approximately three months ago with the intent to sell substantially all of their assets.  The sales are largely complete and the estates' only remaining tasks are to wind-down their remaining business, distribute the proceeds of their asset sales, and monetize and distribute contingent assets.  A chapter 7 trustee is well positioned to conduct those activities in these cases, and to determine how and whether to prosecute the claims and causes of action that the Committee has identified as among the remaining assets of the estates.  Chapter 7 is therefore the most logical and prudent path forward to conclusion of these matters in a way that maximizes value and serves the best interests of unsecured creditors.

## JURISDICTION AND STATUTORY PREDICATES

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief requested herein are sections 105(a) and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 9006(b).

## BACKGROUND

### A.    The 2014 Dividend Transaction

2.    In February of 2012, the Debtors' predecessor, United Retail Group, filed for bankruptcy in the Southern District of New York (the "Prior Bankruptcy").  In connection with the Prior Bankruptcy, United Retail Group was sold as a going concern to Ornatus URG Holdings, LLC ("Ornatus Holdings"), an affiliate of Versa Capital Management, LLC (the "Sponsor" or "Versa").

3.    In September of 2014, the Company executed ███████████████████ (the "2014 Dividend Transaction") ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████ of the dividends went to ████████████.

### B.    The Versa Management Agreement

4.    Concurrent with execution of the 2014 Dividend Transaction, the Company executed that certain Amended and Restated Management Services Agreement dated September 19, 2014 (the "Versa Management Agreement").  Pursuant to the Versa Management Agreement, ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████.

214818295 v8

5.      Pursuant to the Versa Management Agreement, ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████.

6.      Upon information and belief, the Debtors have ████████████████

███████████████████████████████████████████████████, under the

Versa Management Agreement, and ██████████████████████████.

## C.      The Pre-Petition Subordinated Note

7.      On or about April 12, 2019, Ornatus Holdings issued that certain Master
Subordinated Note (as amended from time to time, the "Pre-Petition Subordinated Note") in
favor of Ornatus URG Funding, LLC (the "Pre-Petition Subordinated Lender"), another affiliate
of Versa, which secures a loan in the principal amount of approximately $38.4 million plus
additional amounts advanced by Versa and certain of its affiliates (collectively, the "Pre-Petition
Subordinated Obligations").  The Pre-Petition Subordinated Note is guaranteed by the Debtors
and is purportedly collateralized by a security interest in substantially all of the Debtors' assets.

## D.      The Bankruptcy Cases

8.      On August 16, 2019 (the "Petition Date"), the Debtors filed voluntary petitions
for relief under the Bankruptcy Code.  Pursuant to sections 1107 and 1108 of the Bankruptcy
Code, the Debtors are continuing to operate their businesses and their properties as debtors-in-
possession.  No trustee or examiner has been appointed in these cases.

---

4 ███████████████████████████████████████████████████████████.

9.     On August 27, 2019, the Committee was appointed in these cases by the Office of the United States Trustee, consisting of the following three members: (i) Jiangsu Guotai Litian Enterprises; (ii) Land 'N Sea, Inc.; and (iii) Valentine USA, Inc.  That same day, the Committee met and determined to employ the firms of Cooley LLP and Potter Anderson & Corroon LLP as its counsel to advise and represent it in this proceeding *nunc pro tunc* to August 27, 2019.  The Committee subsequently selected CBIZ Accounting, Tax & Advisory of New York, LLC and CBIZ, Inc. to serve as its financial advisor.

10.    On September 13, 2019, the Court entered the Final DIP Order.  Pursuant to the Final DIP Order, the Committee must commence any Challenge with respect to the Pre-Petition Subordinated Lender no later than 90 days from the appointment of the Committee (the "Initial Challenge Period") or such later date ordered by the Court following a motion filed by this deadline.  *See* Final DIP Order, Sec. IX.A.  At the September 13, 2019 hearing, the Court also stated that the Challenge Period would be subject "to coming back and asking for additional time."  *See* Hr'g Tr. 74:23-24, Sep. 13, 2019.

11.    Pursuant to the Final DIP Order, should these cases be converted to chapter 7 or a trustee appointed prior to the expiration of the Initial Challenge Period, "any such estate representative or trustee shall receive the full benefit of the later of (a) the expiration of the Initial Challenge Period and (b) thirty (30) days from the appointment of such estate representative or trustee," subject to certain limitations set forth therein.  *See* Final DIP Order, Sec. IX.A.

12.    The Final DIP Order further makes clear that the various stipulations and admissions made by the Debtors (collectively, the "Paragraph D Stipulations") "shall be binding upon the Debtors and any successors thereto (other than with respect to a successor trustee

6

appointed *before the expiration of the Initial Challenge Period*, which successor trustee shall be bound by the Paragraph D Stipulations upon expiration of the Challenge Period …) in all circumstances." *See* Final DIP Order, Sec. IX.A (emphasis added).

13.     The Paragraph D Stipulations include a stipulation that "[t]he Pre-Petition Subordinated Obligations constitute allowed, legal, valid, binding, enforceable, and non-avoidable obligations of the Ornatus Holdings and Pre-Petition Subordinated Guarantors, and are not subject to any offset, deduction, defense, counterclaim, avoidance, recovery, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors do not possess and shall not assert any claim, counterclaim, setoff, deduction, or defense of any kind, nature or description which would in any way impair, reduce, or affect the validity, enforceability, and nonavoidability of any of the Pre-Petition Subordinated Obligations." Final DIP Order, ¶ D.5(b).

14.     The Initial Challenge Period is set to expire on November 25, 2019.[5]

## JURISDICTION AND STATUTORY PREDICATES

15.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rules 2004 and 9006(b).

---

[5] Although the Final DIP Order provides that if, during the Initial Challenge Period, the Committee or other third party files a motion for standing with a draft complaint identifying and describing all Challenge(s) consistent with applicable law and rules of procedure, the Initial Challenge Period will be tolled for the Committee or other third party solely with respect to the Challenge(s) asserted in the draft complaint until three (3) business days from the entry of an order granting the motion for standing to prosecute such Challenge(s) described in the draft complaint and permitted by the Court, such tolled period is separately defined as the "Extended Challenge Period."  Any Trustee appointed during this Extended Challenge Period would arguably be bound by the Paragraph D Stipulations under the Final DIP Order at least with respect to claims not raised in the Committee's proposed complaint and for the reasons set forth herein, even if it could raise the challenges asserted by the Committee, it could be potentially limited to the Committee's standing (or lack thereof). .

## RELIEF REQUESTED

16.    The Committee respectfully requests (1) entry of an order, pursuant to section 1112(b) of the Bankruptcy Code converting the Debtors' chapter 11 cases to cases under chapter 7; (2) entry of an order pursuant to section 105(a) of the Bankruptcy Code, Bankruptcy Rule 9006(b), and Section IX, paragraph A of the Final DIP Order, extending the Initial Challenge Period until such time as a trustee may be appointed or, in the alternative, to allow the Committee additional time to commence a contested matter or adversary proceeding should a trustee not be appointed; and (3) for such other and further relief as the Court deems proper.

## BASIS FOR RELIEF

17.    Section 1112(b) of the Bankruptcy Code, provides that, on request of a party in interest, and after notice and a hearing, "the Court shall convert a case to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1).  Under section 1112(b), conversion or dismissal is mandatory upon a finding of "cause."  *See* 11 U.S.C. § 1112(b)(1); *DCNC North Carolina I, LLC v. Wachovia Bank, N.A.*, Case No. 09-3775, 09-3776, 2009 WL 3209728, *6 (E.D. Pa. Oct. 5, 2009); *see also In re The Reserves Resort, Spa & Country Club LLC*, No. 12-13316 (KG), 2013 WL 3523289, *2 (Bankr. D. Del. July 12, 2013).

18.    Although "cause" is not defined, section 1112(b)(4) provides a nonexclusive list of 16 "causes" for conversion.  11 U.S.C. § 1112(b)(4)(A)-(P); *In re Am. Capital Equip., LLC*, 688 F.3d 145, 162 n. 10 (3d Cir. 2012) ("the listed examples of cause are not exhaustive"); *In re Mechanical Maintenance, Inc.*, 128 B.R. 382, 386 (E.D. Pa. 1991).  At least two separate and independent grounds under the subsections of § 1112(b)(4) exist here and demand conversion of these cases.  Specifically, there is both: (A) a substantial or continuing loss to or diminution of

the estate and the absence of a reasonable likelihood of rehabilitation and (M) an inability to effectuate substantial consummation of a confirmed plan.  11 U.S.C. § 1112(b)(4)(A) and (M).

19.    If the movant establishes "cause", the burden then shifts to the debtor to prove it falls within the § 1112(b)(2) "unusual circumstances" exception to §1112(b)(1)'s mandatory conversion.  However, the Third Circuit instructs that "[c]ourts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." *In re Brown*, 951 F.2d 564, 572 (3d Cir.1991)) (citing *In re Canal Place Ltd. Partnership*, 921 F.2d 569, 577 (5th Cir.1991)); *see also In re Woodbrook Assocs.*, 19 F.E. 312, 317 (7th Cir. 1994) ("The very purpose of § 1112(b) is to cut short [the] plan and confirmation process where it is pointless."). If cause to convert or dismiss is present, the Third Circuit has indicated that it then chooses between conversion and dismissal based on "the best interest of creditors and the estate." *In re Am. Capital Equip.*, LLC, 688 F.3d at 161.

20.    This Court should convert the Debtors' chapter 11 cases to chapter 7 cases because cause for conversion exists and conversion is in the best interest of creditors and these estates.

**A.    Cause Exists To Convert These Cases to a Chapter 7 Liquidation under §1112(b)(4)(A).**

   **1.    The Diminution of the Estates Satisfies § 1112(b)(4)(A).**

21.    Conversion is warranted where a debtor is "suffering substantial or continuing losses to or diminution of the estate and there is no reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A).  The inquiry under 1112(b)(4)(A) is twofold.  *In re Gateway*, 374 B.R. at 563.  "First, the Court must look at the track record of the debtor to determine if it is suffering losses or making gains.  Second, the Court must determine whether rehabilitation is likely given the evidence presented at hearing." *Id*.

214818295 v8

22.     With respect to the first prong of the test, "[i]n the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow — including that resulting only from administrative expenses — effectively comes straight from the pockets of the creditors.  This is enough to satisfy the first element of [continuing loss to or diminution of the estate]." *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004).

23.     There can be no reasonable dispute that the Debtors: (i) have ceased or shortly will cease business operations; (ii) have sold substantially all of their assets and have no ongoing business operations; and (iii) currently have a negative cash flow.  The Debtors are or will shortly be a shell with no operations and no prospective ability to produce cash or any other value that offsets their continuing expenses.

24.     Furthermore, the Debtors' use of cash collateral[6] is currently limited to the payment of such claims and expenses as the Pre-Petition Subordinated Lender will allow.  Under the Cash Collateral Stipulation, the Debtors are not permitted to pay a myriad of administrative claims, included certain claims which were included in the Approved Budget filed in connection with the Final DIP Order.  In essence, the Pre-Petition Subordinated Lender's strict limitations on the Debtors' use of cash have left these estates administratively insolvent.

25.     Notwithstanding the financial status and operational dormancy of the Debtors, the Committee has identified the potential Versa Actions and believes that the Versa Actions represent assets that may be of substantial value to the estate.  For the reasons detailed below, however, the interests of efficiency and value maximization will be most effectively served if the

---

[6] The Debtors' use of cash collateral is currently governed by the *Stipulation By and Between the Debtors, PNC Bank, National Association and Ornatus URG Funding, LLC With Respect to the Use of Cash Collateral* (the "Cash Collateral Stipulation", Docket No. 414, Ex. 1).

214818295 v8

Versa Actions are further evaluated and pursued by a chapter 7 trustee following its appointment in these cases.

26.    Delaware law provides that the only proper plaintiff in a derivative suit on behalf of a Delaware LLC is a member of that LLC.  The Delaware LLC Act provides, under the heading "Proper Plaintiff":

> In a derivative action, the plaintiff must be a member or an assignee of a limited liability company interest at the time of bringing the action and:
>
> (1) At the time of the transaction of which the plaintiff complains; or
>
> (2) The plaintiff's status as a member or an assignee of a limited liability company interest had devolved upon the plaintiff by operation of law or pursuant to the terms of a limited liability company agreement from a person who was a member or an assignee of a limited liability company interest at the time of the transaction.

Del. Code Ann. tit. 6, § 18-1002.

27.    As a result, creditors do not generally have standing to bring derivative suits on behalf of Delaware LLCs.  *See CML V, LLC v. Bax*, 6 A.3d 238 (Del. Ch. 2010) (holding creditors lack standing to bring derivative suit on behalf of LLCs under Delaware LLC Act, relying on statutory language copied from Delaware LP Act).   The Bankruptcy Court has held that an official committee of unsecured creditors does not have derivative standing to pursue breach of fiduciary duty claims. *See In re Citadel Watford City Disposal Partners, L.P.*, 603 B.R. 897, 905 (Bankr. D. Del. 2019) (holding that a liquidation trustee did not have standing to pursue claims and causes of action commenced in a complaint filed by a creditors' committee because the creditors' committee, and therefore the liquidation trustee who received assignment of the committee's claims pursuant to the plan of liquidation, lacked standing under Delaware LLC Act); *In re HH Liquidation, LLC*, 590 B.R. 211, 284–85 (Bankr. D. Del. 2018) (a creditors'

committee did not have standing to pursue breach of fiduciary duty claims relating to a limited liability company debtor). However, as Judge Gross recognized in *HH Liquidation*, citing to his prior opinion *In re Golden Guernsey Dairy, LLC*, a "Chapter 7 trustee, which is empowered by statute to act as 'the sole representative of the estate with the authority to sue and be sued'", 590 B.R. at 284, may therefore have standing to bring breach of fiduciary duty claims, "whether direct or derivative in nature," *Golden Guernsey*, 548 B.R. 410, 413 (Bankr. D. Del. 2015). *But see In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 467 (Bankr. D. Del. 2018), Sontchi, J. (holding that a chapter 7 trustee did not have standing to pursue certain claims for breach of fiduciary duties to the creditors. "The Complaint fails to discuss whether the claim sought by the trustee on behalf of creditors is direct or derivative. Creditors cannot seek direct claims for breach of fiduciary duties against LLC and their officers and directors. If the claim is derivative, it fails because derivative claims can only be brought by members or assignees of members."). Nonetheless, a chapter 7 trustee as a sole representative of the estate would be able to bring a direct claim for harm to the limited liability company. Thus, the Committee could face challenges to its standing to bring these claims, but a chapter 7 trustee would not face such challenges to its standing unless it pled claims derivatively or was forced to accede to a deficient standing as the liquidation trustee was in *Citadel*.

28.     Although the Committee does not concede that these cases present an absolute bar to its ability to obtain standing to bring the Versa Actions, the Committee does acknowledge that this developing area of law may present challenges and impediments requiring further motions practice and further expenditure of resources from multiple parties in interest prior to commencement of the Versa Actions by the Committee. There is no need for such an exercise or expense, because such standing issues would not threaten to impede a chapter 7 trustee in

12

bringing the Versa Actions as an estate representative.[7]   Given the estates' present dearth of resources, the Committee submits that the most reasonable path for these estates to proceed involves winding up in the care of a chapter 7 trustee who will be vested with standing to bring the Versa Actions free of complications presented by the cases cited above and their concomitant developments in evolving jurisprudence.   This path is particularly reasonable when neither the Debtors nor the Versa Parties have proposed a viable alternative to address the (i) limited resources in the cases, (ii) the preservation of estate claims in light of the potential standing concern, or (iii) the path forward for these cases absent conversion to chapter 7.

## 2. The Versa Actions may constitute valuable assets of the estates.

29.     Each of the Versa Actions and the underlying claims may constitute a valuable asset of the estate.  Pursuant to the Final DIP Order, a trustee's ability to assert claims against the Pre-Petition Subordinated Lender will terminate upon expiration of the Initial Challenge Period.

30.     While the Committee's investigation is ongoing, the Committee has identified sufficient facts by which a chapter 7 trustee could demonstrate that the Pre-Petition Subordinated Lender has failed to properly perfect a purported security interest.  The Committee has also investigated certain insider transactions and identified preferential and/or fraudulent transfers which may be subject to avoidance and recovery.

31.     Specifically, the Committee has identified facts sufficient to support the following claims:

---

[7] Even if the standing issues arising in *Citadel, PennySaver* and *HH Liquidation* were determined to apply to some, but not all of the Versa Actions, and even if the DIP Order were determined to provide a release to some, but not all, of the Versa Parties, no putative plaintiff should be denied the opportunity to bring all Versa Actions against all Versa Parties together in one action, or to argue that the Versa Parties are so closely related as to share in liability under alter ego or other equitable theory.  Moreover, to the extent the Pre-Petiton Subordinated Lender is discovered to be a subsequent transferee of any transfers at issue, it should not be entitled to assert a release from liability under the provisions of the DIP Order.  In other words, because of the related nature of the Versa Parties and the potential that the Versa Actions will be pursued, no Versa Party should be entitled to a release of any kind unless and until the Versa Actions are concluded as to all Versa Parties.

214818295 v8

i.    **Avoidance of unperfected liens and security interests pursuant to 11 U.S.C. §§ 544, 550, and 551**

32.    The Pre-Petition Subordinated Lender failed to properly perfect its purported liens on and security interests in certain assets securing the Pre-Petition Subordinated Obligations (collectively, the "Unencumbered Assets") in compliance with applicable law.  Therefore, any liens or security interests of the Pre-Petition Subordinated Lender in the Unencumbered Assets as of the Petition Date are avoidable pursuant to sections 544(a)(1),(2) and/or (3) of the Bankruptcy Code.

ii.    **Avoidance of transfer of dividends and advisory/management fees, and recovery of value pursuant to 11 U.S.C. §§ 544(b) and 550 (Actual Fraud)**

33.    As noted above, ███████████████████ the 2014 Dividend Transaction, ███ ████████████████████████████████████████████████ (collectively, the "2014 Dividend Transfers"), ██████████████████████████████ ████████████████████████████████████.

34.    The Committee has uncovered certain "badges of fraud" and other facts which weigh in favor of avoiding the 2014 Dividend Transfers as actual fraudulent transfers pursuant to applicable provisions of the Uniform Fraudulent Transfer Act or Uniform Fraudulent Conveyance Act, and Bankruptcy Code sections 544(b) and 550.[8]  On this basis as well as the Committee's information and belief, the estates may recover the 2014 Dividend Transfers from the recipients, including the Versa Parties, as initial, immediate and/or mediate transfers.

35.    Similarly, Debtors' ████████████████████████████████████████ ████████████████████████ were each made at a time when the Sponsor exercised

---

[8] In a letter to counsel for the Versa Parties sent on October 11, 2019, counsel for the Committee provided details of the "badges of fraud" it had identified based on its investigation as of that date.

214818295 v8

domination and control over the Debtors, and fall victim to the same "badges of fraud". These amounts may also be avoided as actually fraudulent transfers.

36.     The Committee believes further that, at the time of the 2014 Dividend Transfers ███████████████████████████████, the Debtors had one or more creditors with an unsecured claim with standing to avoid any transfer of an interest in property or any obligation incurred by the Debtors under applicable law.

### iii.     Avoidance of transfer of dividends and advisory/management fees, and recovery of value pursuant to 11 U.S.C. §§ 544(b) and 550 (Constructive Fraud- Insolvency, Unreasonably Small Capital, Inability to Pay Debts as Matured)

37.     Furthermore, the Committee believes that the 2014 Dividend Transfers ████████ ████████████████████ may be avoided as constructively fraudulent transfers pursuant to applicable provisions of the Uniform Fraudulent Transfer Act or Uniform Fraudulent Conveyance Act, and Bankruptcy Code sections 544(b) and 550.

38.     Both the 2014 Dividend Transfers ███████████████████████████████████ represent transfers of an interest of the Debtors in property for which the Debtors did not receive reasonably equivalent value, and, based on the Committee's investigation, it appears that the Debtors were either insolvent on the date such transfers were made or became insolvent as a result of the same.

39.     In addition, the Debtors were left with what constituted unreasonably small capital in light of their operations, and, as a result of the 2014 Dividend Transfers █████ █████████████████████, appear to have incurred debts which the Debtors could not pay as they matured.

15

40.    On this basis, the Committee believes that the 2014 Dividend Transfers  may be avoided and preserved for the benefit of creditors and that such actions constitute potentially valuable assets of the estates.

### iv.    Breach of Fiduciary Duty; Self-Dealing against various individuals owing such duties

41.    The Committee believes that the 2014 Dividend Transfers ▉▉▉ ▉▉▉ were approved and authorized by various individuals owing fiduciary duties to Avenue Stores, LLC and the other Debtors.  Those individuals include ▉▉▉ ▉▉▉ who had a significant financial interest in the 2014 Dividend Transaction, and the resulting 2014 Dividend Transfers, ▉▉▉ ▉▉▉ by causing the Company to lien up its assets and blow out its cash.  This positional conflict, and the actions that were taken by Company fiduciaries during all relevant times, may give rise to breach of fiduciary duty claims assertable by a chapter 7 trustee on behalf of creditors who received no portion of the monetary transfers at issue, but who were harmed by the Company's subsequent decline.



42.    Even if certain individuals who authorized the 2014 Divided Transfers ▉▉▉ ▉▉▉ are found not to have owed fiduciary duties to the Company, such parties may nonetheless be liable for aiding and abetting breach of fiduciary duty by their conduct and participation in allowing these transfers to be made.

### v.    Corporate Waste and Conspiracy

43.    The payment of the 2014 Dividend Transfers and ▉▉▉ ▉▉▉ to the Sponsor and ▉▉▉ had no rational business purpose and was so one-sided that no business person of ordinary sound judgment could believe that the Debtors received adequate consideration in exchange for these payments and/or transfers.  As such, the

214818295 v8

transactions at issue may give rise to claims of corporate waste.  To the extent these transactions were made as a result of an agreement between the Versa Parties and insiders who exercised dominion and control over the Debtors, claims sounding in conspiracy may provide viable sources of recovery for damages in favor of the estate.

<strong>vi.    Preferences – advisory/management fees</strong>

44.    On or within one year of the Petition Date, the Debtors transferred substantial amounts (the "<u>Preferential Transfers</u>") by way of ███████████████████████ and other amounts to or for the benefit of the Sponsor.

45.    These Preferential Transfers may be avoidable pursuant to section 547(b) of the Bankruptcy Code, and under Bankruptcy Code section 550, and the estates may recover a monetary judgment from the Sponsor and/or its affiliates, including the Pre-Petition Subordinated Lender, for immediate and/or mediate transfers in an amount to be determined at trial.

<strong>vii.    Recharacterization</strong>

46.    The Versa Parties appear to have been well aware that there was no source of repayment for the Pre-Petition Subordinated Note because of the Company's financial state when the loan was made.  Indeed, the Pre-Petition Subordinated Note replaced a similar note issued by the Pre-Petition Subordinated Lender in 2017 (the "<u>2017 Subordinated Note</u>").  In fact, of the $38.4 million in obligations incurred in connection with the  Pre-Petition Subordinated Note, ███████████████████████████ made available to the Debtors.  The inadequacy of capitalization is further made clear given the █████████████████ into the Company's business operations through ongoing cash infusions made by the Versa Parties in the seven months leading up to issuance of the Pre-Petition Subordinated Note.

17

47.     The Versa Parties were, at all relevant times, insiders of the Company, whose 99% equity holding gave them dominion and control over the Company's financial and operational affairs.  Since the Company's emergence from its first bankruptcy case in 2012 through its second bankruptcy filing on August 16, 2019, the Versa Parties have, upon information and belief, controlled the board of the Company and nearly all of the Company's equity.  Simply put: the Pre-Petition Subordinated Note was not an arms'-length transaction.

48.     Furthermore, upon information and belief, the Company did not pledge any new collateral to support the Pre-Petition Subordinated Note but rather pledged the same collateral securing the 2017 Subordinated Note.

49.     To allow the Versa Parties to characterize the Pre-Petition Subordinated Obligations as debt would result in injury to the creditors of these estates.  It would also confer an unfair advantage on the Versa Parties by allowing them to reap the fruits of the inequitable conduct in which they engaged.  For these reasons, a strong argument can be made that the Pre-Petition Subordinated Note should be recharacterized as equity.

### viii.    Equitable Subordination

50.     The equities in these cases demand that any amounts allegedly owed to the Versa Parties on account of Pre-Petition Subordinated Note should be subordinated to all other claims under 11 U.S.C. § 510(c)(1).

51.     The conduct of the Versa Parties constitutes inequitable conduct which gave rise to an unfair advantage in favor of the Versa Parties as claimants in these chapter 11 cases.  In part by reason of the conduct of the Versa Parties, the Company was undercapitalized, drowning in debt, and unable to satisfy its obligations to its other creditors, including unsecured creditors.

214818295 v8

52.     Allowing the Versa Parties to be paid prior to or with the general unsecured creditors would allow the Versa Parties to reap the benefits of such inequitable conduct in direct contravention of the Bankruptcy Code.

### 3. As There Is No Likelihood of Rehabilitation, The Second Prong of §1112(b)(4)(A) is Satisfied.

53.     The Debtors also fail the second prong of the section 1112(b)(4)(A) test because they are not seeking to rehabilitate.  When considering a motion under Bankruptcy Code section 1112(b), "rehabilitation" means an ability to re-establish the debtor-entity on a firm sound financial basis.  *See In re BH S&B Holdings, LLC*, 439 B.R. at 347 ("rehabilitation means to put back in good condition and reestablish on a sound basis.").

54.     An intention to "liquidate (rather than rehabilitate), demonstrates that there is no likelihood of rehabilitation."  *In re BH S&B Holdings, LLC*, 439 B.R. at  347; *see also Loop Corp. v. U.S. Trustee*, 379 F.3d 511 (granting U.S. Trustee's motion after last round negotiations with lenders failed, and the debtors were cash flow negative, there mounting costs to the estate, and the plan of liquidation was evidence of a lack of likelihood of rehabilitation).  The *BH S&B* court discussed that though a liquidation plan is permissible, courts have converted or dismissed cases on facts similar to *Loop* and *BH S&B*.  *Id.* at 348 (citing *In re Natrl Plants & Lands Mgmt. Co., Ltd.,* 68 B.R. 394, 395 (Bankr.S.D.N.Y.1986) (converting chapter 11 case, in part, because the debtor's proposed liquidating plan conceded that the business would be terminated and the debtor was losing $60,000 per month in chapter 11).

55.     Here, the Debtors entered bankruptcy with the intent to liquidate, not rehabilitate. And now, with the store closing sales having concluded and the Court-authorized sale of the Debtors' E-Commerce Business Assets having closed, the remaining duties in these cases —

214818295 v8

wind-down, contingent asset monetization, claims reconciliation and distribution — can all be done more cheaply and fairly by an independent and disinterested chapter 7 trustee.

56.    Moreover, due to the potential standing issues the Committee may face in pursuing the Versa Actions, conversion of these cases and appointment of a chapter 7 trustee would allow these estates the opportunity to pursue what are likely some of the most valuable remaining assets and potentially the only source of real recovery for creditors: claims against the Sponsor and its affiliates, including the Pre-Petition Subordinated Lender, and other insiders.

57.    Accordingly, cause exists to convert these cases to cases under chapter 7 of the Bankruptcy Code.

**B.    Cause Also Exists to Convert These Cases to a Chapter 7 Liquidation under §1112(b)(4)(M).**

58.    Conversion is warranted where a debtor presents an "inability to effectuate substantial consummation of a confirmed plan." 11 U.S.C. § 1112(b)(4)(M). A "debtor's ability to effectuate a plan may well turn on practical considerations, including whether confirmation can be achieved." *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011); *see Loop Corp.*, 379 F.3d 511, n. 2 (8th Cir. 2004) (discussing bankruptcy court's skepticism about whether any plan would be confirmable as grounds for cause to convert) (citing *In re Fossum,* 764 F.2d 520, 521-22 (8th Cir. 1985) ("A finding that the [debtors] were unable to effectuate any plan which would be confirmable is a proper basis for dismissal of the [debtors'] chapter 11 case."); *see also In re Lamar Estates, Inc.*, 6 B.R. 933 (Bankr. E.D. N.Y. 1980) (debtors' inability to effectuate plans of reorganization sufficient cause to convert); *In re DCNC North Carolina I, LLC,* 407 B.R. 651, 665 (Bankr. E.D. Pa. 2009) (same).

59.    One of the purposes of section 1112(b) is to weed out inappropriate chapter 11 cases at  the earliest  possible time.  As the Seventh Circuit explained, "The very purpose of

§ 1112(b) is to cut short [the] plan and confirmation process where it is pointless." *In re Woodbrook Assocs.*, 19 F.R. 312, 317 (7th Cir. 1994) (citations omitted).  Further, the Supreme Court has noted "[t]he preservation of business enterprises must not be at the expense of creditors." *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 119 n.14 (1939) (internal citations omitted); *see also In Re Gonic Realty Trust*, 909 F.2d 624, 626-27 (1st Cir. 1990) ("The court [in exercising its discretion under section 1112(b)] must exercise its sound judgment in reaching a determination and must ascertain that the decision is in the best interest of the creditors.").  "The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. . . . '[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, Chapter 11 has lost its *raison d'être.*'" *In re Whiteshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985) (internal citations omitted).

60.     The only plan that could be confirmed under the facts of these cases would be a simple liquidating plan whereby all litigation claims are liquidated post-confirmation, any remaining assets are reduced to cash, and that cash is distributed to holders of allowed claims. Such a plan is nothing more than a chapter 7 liquidation.  No advantage is gained by conducting this process through a chapter 11 plan. Instead, meaningful disadvantages may present if potentially valuable assets in the form of the Versa Actions are prejudiced by the continuation of these cases in chapter 11.

61.     Furthermore, pursuant to the Cash Collateral Stipulation, it is an event of default if the Debtors even propose a chapter 11 plan that does not provide for the indefeasible payment in full of the Pre-Petition Subordinated Obligations without the express prior written consent of the Pre-Petition Subordinated Lender.  *See* Cash Collateral Stipulation ¶8.k.  Given that the Pre-Petition Subordinated Lender has asserted a secured claim of over $37.5 million, and

understanding that there is likely to be little funding available for distribution to creditors, at best these estates are marching toward a plan that will pay nothing to unsecured creditors. Confirmation of such a plan is not a legitimate purpose for continuation of a chapter 11 case.

62.     An independent chapter 7 trustee should be appointed to oversee the ultimate liquidation of remaining assets, claim reconciliation, prosecution of the Versa Actions, and eventual distributions which will likely result from the same.  Only with an independent chapter 7 trustee will the remaining assets of the estates be preserved and distributed equitably to all of the creditors of the estates.

**C.      Basis for Extending the Initial Challenge Period**

63.     The Final DIP Order, the Bankruptcy Code, and the Bankruptcy Rules authorize the Court to extend the Initial Challenge Period.  Section IX, paragraph A of the Final DIP Order specifically provides that the Initial Challenge Period may be extended by the Court following a motion filed prior to the 90-day deadline from the appointment of the Committee.  *See* Final DIP Order Sec. IX.A.

64.     Section 105(a) of the Bankruptcy Court, which codifies the Bankruptcy Court's broad equitable powers, authorizes the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  *In re Owens Corning*, 419 F.3d 195, 208 n.14 (3d Cir. 2005) (citing section 105 of the Bankruptcy Code).

65.     In addition, Bankruptcy Rule 9006(b) provides, in pertinent part:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order …

214818295 v8

Fed. R. Bankr. P. 9006(b)(1).

66.     It is well settled that Bankruptcy Rule 9006(b) empowers the Court to extend time periods set forth in its own orders.  *See, e.g.*, *In re Sharon Steel Corp.*, 110 B.R. 205, 208 (Bankr. W.D. Pa. 1990) (holding that claims bar date established by court order may be extended under Bankruptcy Rule 9006(b)(1)).

67.     Here, good cause exists to extend the Initial Challenge Period, as the Versa Actions represent potentially valuable estate assets and the ability of a trustee to pursue such claim will be curtailed upon expiration of the Initial Challenge Period, at which point any trustee appointed will become bound by the Paragraph D Stipulations.

68.     The tying of a trustee's hands in this manner is especially problematic where, as here, formal discovery is needed to bear out the relationship between Versa and the Ornatus URG Funding entities and whether they should be considered alter egos of one another for purposes of joint liability.

69.     Alternatively, should the Court find that conversion of these cases to chapter 7 and/or the appointment of a trustee is not warranted at this time, the Committee requests a short extension of the Initial Challenge Period so that it may seek standing to pursue the Versa Actions in light of the extenuating circumstances presented by these cases.

70.     Although the Committee has been vigilant in its investigation with respect to the 2014 Dividend Transaction and other potential causes of action, only recently has it received documents which are fundamental to demonstrating the validity of the Versa Actions and the underlying claims.  As the Versa Actions currently represent the only asset of these estates which may enable a meaningful distribution for unsecured creditors, the Committee requests that this Court appoint a chapter 7 trustee to wind down the affairs of these estates and who will be vested

with the legal standing necessary to evaluate and prosecute the Versa Actions for the benefit of unsecured creditors in this case.

## NOTICE AND PRIOR MOTION

71.    Notice of the Motion is being served upon the following parties: (i) the Office of the U.S. Trustee; (ii) Young Conaway Stargatt & Taylor, LLP, as counsel to the Debtors; (iii) Blank Rome LLP, as counsel to the PNC; (iv) Landis Rath & Cobb LLP, as counsel to Ornatus Holdings and Versa; and (vi) any other party having filed with the Court a request for notice. Notice of the hearing on the Motion will be served in accordance with Rule 2002(a)(4) once the Court sets a hearing date.  The Committee respectfully submits that in light of the nature of the relief requested, no further notice of the relief requested is necessary or required.

72.    No previous motion for the relief sought herein has been made to this or any other court.

24

**WHEREFORE** the Committee respectfully request entry of an order granting the relief requested herein, and such other and further relief as is just and proper.

Dated:    November 15, 2019

**POTTER ANDERSON & CORROON LLP**

*/s/ D. Ryan Slaugh*
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
D. Ryan Slaugh (No. 6325)
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801-3700
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: csamis@potteranderson.com
        kgood@potteranderson.com
        astulman@potteranderson.com

- and -

**COOLEY LLP**
Jay Indyke
Cullen Speckhart
Summer McKee
Olya Antle
55 Hudson Yards
New York, New York 10001
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: jindyke@cooley.com
        cspeckhart@cooley.com
        smckee@cooley.com
        oantle@cooley.com

*Co-Counsel for the Official Committee of
Unsecured Creditors of Avenue Stores, LLC, et al.*